**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | |
|---|---|
| RAYMOND HAWKINS, and ROBIN LUNG, individually and on behalf of all others similarly situated,<br><br>                            Plaintiffs,<br><br>                v.<br><br>CINTAS CORPORATION, BOARD OF DIRECTORS OF CINTAS CORPORATION, SCOTT D. FARMER, INVESTMENT POLICY COMMITTEE, and JOHN DOES 1-30.<br>                         Defendants. | Case No.:  1:19-cv-01062-TSB |

**MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL**
**ARBITRATION AND STAY THE PROCEEDINGS**

## <u>TABLE OF CONTENTS</u>

Page

I.  INTRODUCTION…………………………………………………………………...1

II. STATEMENT OF FACTS……………………………………………………….....2

      A.     This Action Was Filed on Behalf of the Plan…………………………………2

      B      The Employment Agreements………………………………………………3

         1.   The 2014 and 2016 Hawkins Employment Agreements and 2013 through 2017 Lung Agreements Contain Identical Language………………………………...3

         2.   The August 8, 2011 Hawkins Employment Agreement Omitted The Purported Class Action Waiver Provision Present in the Other Employment Agreements ................... ..4

III  ARGUMENT…………………………………………………………………………5

      A.     Standard…………………………………………………………………………5

      B.    The Claims Asserted in the Complaint Fall Outside the Scope of the Employment Agreements………………………………………………...................6

         1.   The Employment Agreements Do Not Cover Claims Brought on Behalf of the Plan…6

         2.   The Claims Asserted in the Complaint Are Outside The Scope of the Employment Agreements For Additional Reasons....................................................6

            a.  "Covered" Claims Under the Employment Agreements Do Not Contemplate Claims Concerning Mismanagement of Plan Assets…....................................6

            b.  The Claims Asserted in the Complaint Fall Outside the Time Period Contemplated by the Employment Agreements………………….………9

            c.  The Class Action Claims Asserted By Mr. Hawkins for the Time Period Between December 13, 2013 and July 31, 2014 Are Outside the Scope of His Employment Agreement……………………………………………….10

      C.  The Request for Arbitration is Untimely………………………………………10

    IV  CONCLUSION ……………………………………………………………....…..11

i

## <u>TABLE OF AUTHORITIES</u>

PAGE(S)

**Statutes**

Employee Retirement Income Security Act of 1974 ("ERISA") ............................. 1, 2, 3, 6, 7, 8

29 U.S.C. § 1002(21)(A)............................................................................................................. 2

29 U.S.C. §§ 1109 and 1132 .................................................................................................... 1

**Cases**

*Bridges v. American Elec. Power Co., Inc.* 498 F.3d 442 (6th Cir. 2007) ..................................... 9

*Brown, on Behalf of the Henny Penny Corp Employee Stock Ownership Plan v. Wilmington Trust, N.A.*, 2018 WL 3546186 (S.D. Ohio July 24, 2018)................................................................. 5, 8

*Cryer v. Franklin Res., Inc.*, 2017 WL 4410103 (N.D. Cal. Oct. 4, 2017)............................. 7, 10

*Dorman v. Charles Schwab & Co. Inc.,* 780 Fed.Appx. 510 (9th Cir. 2019)............................... 7

*Leber, et al. v. Citigroup 401(k) Plan Inv. Comm.*, 323 F.R.D. 145 (S.D.N.Y. 2017) .................. 6

*Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624 (6th Cir. 2004) ............................................. 1

*Munro v. Univ. of S. California*, 896 F.3d 1088 (9th Cir. 2018) ............................................. 6, 7

*Prachum v. CBIZ Benefits & Ins. Servs.*, *Inc.*, 2015 WL 5162522 (S.D. Ohio Sept. 3, 2015)...... 1

*Shirk v. Fifth Third Bancorp*, No. 05-cv-049-TSB, 2008 WL 4425535 .................................... 1, 9
(S.D. Ohio Sept. 30, 2008)

*Simon v. Pfizer, Inc.*, 398 F.3d 765 (6th Cir. 2005)........................................................... 5, 9

*Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000)............................................................. 5

*Taylor v. Visteon Corp.*, 2005 WL 2108333 (6th Cir. 1989)…………..…………………………9

*Torres v. Greystar Management Services, L.P.*, 2020 WL 1428462 (W.D. Tex. Jan. 23, 2020)... 9

*Tibble v. Edison Int'l*, 135 S. Ct. 1823(2015) ............................................................................ 10

*University of Southern California v. Munro*, 139 S.Ct. 1239 (2019) ……………………………6

*Yost et al. v. First Horizon National Corp.*, *et al.* 2011 WL 2182262………………………….. 6

## I.    INTRODUCTION

Defendants' motion to compel arbitration and stay proceedings falls short both on facts and the law.[1] Lawsuits filed by individuals pursuant to §§ 409 and 502 of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1109 and 1132 are unique in that they are actually representative actions brought on behalf of a retirement plan.[2] *See Shirk v. Fifth Third Bancorp*, No. 05-cv-049-TSB, 2008 WL 4425535, at * 2 (S.D. Ohio Sept. 30, 2008) ("ERISA fiduciary cases are brought in a representative capacity under ERISA § 502(a)(2), which authorizes a participant in an employee retirement plan to seek recovery on behalf of the plan as a whole.") Indeed, the Complaint makes clear that this action is brought on "behalf of the Cintas Partners' Plan (the 'Plan')" and "pursuant to ERISA § 409, and the law interpreting it, the relief requested in this action is for the benefit of the Plan and its participants." Compl. p.1 and fn 1.  Accordingly, proposed class representatives and named plaintiffs Raymond Hawkins and Robin Lung lacked the authority to agree to arbitrate the Plan's claims; only the Plan could do that expressly.[3]  For this reason alone Defendants' motion to compel arbitration must fail.

---

[1] The Memorandum of Law in Support of Defendants' Motion to Compel Arbitration and Stay the Proceedings is referred to herein as "Defs. Mem."

[2]  Tellingly, none of the cases Defendants rely on concern arbitration agreements in representative actions, let alone ERISA actions, where plaintiffs seek recoupment of retirement plan benefits on behalf of a plan.  *See, e.g, Simon v. Pfizer, Inc.*, 398 F.3d 765, 768 (6th Cir. 2005) (complaint "contain[ing] counts for retaliatory discharge and discrimination in violation of ERISA § 510)); *Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 625 (6th Cir. 2004) (concerning "arbitration clause in an insurance policy, where the underlying dispute between the parties revolved around policy coverage that neither party intended, but that was imposed on the contract by law as determined by subsequent Ohio Supreme Court opinions."); *Prachum v. CBIZ Benefits & Ins. Servs., Inc.*, 2015 WL 5162522, at * 1 (S.D. Ohio Sept. 3, 2015) (suit brought because plaintiff "advised that [he] was not eligible to enroll in Medicare Part B because he was not 'actively employed,'" with his prior employer).

[3]  As alleged in the Complaint, the Plan is a legal entity that can sue and be sued.  ERISA § 502(d)(1), 29 U.S.C. § 1132(d)(1).  Accordingly, it can enter into in its own agreements.

To be sure, the motion is infirm for other reasons. For starters, "covered" claims under the employment agreements do not encompass mismanagement of Plan benefits. Second, Plaintiffs' claims related to fiduciary breaches that occurred *after* they left employment are by definition not related to Plaintiffs' "employment" and hence are outside the scope of the employment agreements. Third, the class action waiver provision (invalid regardless) appears for the first time in Mr. Hawkins' August 1, 2014 employment agreement making the provision inapplicable to claims of fiduciary breaches between December 13, 2013 and July 31, 2014. Lastly, by the terms of the employment agreement, Defendants should have submitted a request for arbitration "within one year of when the Employee's employment ends," or at the latest, by December 13, 2019, the last date of the statute of limitations. Either deadline has expired.

For the foregoing reasons, Defendants' motion should be denied, including the request for a stay of proceedings.

## II.   STATEMENT OF FACTS

### A.  This Action Was Filed On Behalf of the Plan

Cintas sponsors the Plan (a retirement plan) which it established in 1991. Compl., ¶ 35. Cintas employees are generally eligible to participate in the Plan after three months of service. *Id.* at ¶ 38. Although employees are automatically enrolled in the Plan, participation in the Plan is not a condition or part of employment. An employee may affirmatively decline to participate in the Plan. *Id.* at ¶ 5.

Plaintiffs allege that during the putative Class Period (December 13, 2013 to the present) Defendants, as "fiduciaries" of the Plan, as that term is defined under ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), breached the duties they owed to the Plan, to Plaintiffs, and to the other participants of the Plan by, *inter alia*, (1) failing to objectively and adequately review the Plan's investment

portfolio with due care to ensure that each investment option was prudent, in terms of cost; and (2) maintaining certain funds in the Plan despite the availability of identical or similar investment options with lower costs and/or better performance histories. *Id*. at ¶ 6. Defendants' mismanagement of the Plan cost the Plan millions of dollars. *Id*. at ¶ 8.

The Complaint was filed as a representative action on behalf of the Plan. *Id*., at p. 1. As the Complaint states, "pursuant to ERISA § 409, and the law interpreting it, the relief requested in this action is for the benefit of the Plan and its participants." *Id.* at fn 1. In the prayer for relief, the Complaint asks for *inter alia*, "[a]n Order compelling the Defendants to make good to the Plan all losses to the Plan resulting from Defendants' breaches of their fiduciary duties, including losses to the Plan resulting from imprudent investment of the Plan's assets, and to restore to the Plan all profits the Defendants made through use of the Plan's assets, and to restore to the Plan all profits which the participants would have made if the Defendants had fulfilled their fiduciary obligations." *Id*. p. 45.

### B. The Employment Agreements

#### 1. The 2014 and 2016 Hawkins Employment Agreements and 2013 through 2017 Lung Agreements Contain Identical Language

Mr. Hawkins' 2014 and 2016 employment agreements and Robin Lung's 2013 through 2017 employment agreements contained identical pertinent language. The "Employee's Acknowledgements and Covenants" section, the crux of the agreement, made clear the type of employment-related topics the agreement was intended to cover. This section described five areas of concern for Cintas: (1) Non-Disclosure Covenant; (2) Non-Competition Covenant; (3) Non-Solicitation of Customers; (4) Non-Solicitation of Employees; and (5) Return of Confidential Material and Information. *See* employment agreements, Section 4. To underscore the materiality of Section 4, the employment agreements state:

> Employee, having carefully considered the nature and extent of the restrictions upon Employee and the rights and remedies conferred upon Employer by this Section 4, hereby acknowledges and agrees **that the terms of this Section 4 ae a material inducement for Employer to enter into this Agreement**, **are reasonable in time and scope to prevent only unfair competition and to protect Employer's Confidential Material and Information**, do not prevent Employee's fair use of Employee's general skill and experience, and are appropriate and reasonably necessary to protect Employer's legitimate business interests.

Employment agreements, Section 4(h) (emphasis added).

Section 8 of the employment agreements contain the following pertinent language:

- "The rights and claims of Employee covered by this Section 8, including the arbitration provisions below, specifically include but are not limited to all of Employee's rights or claims arising out of or in any way related to Employee's **employment** with Employer…." (emphasis added).

- "Should any dispute or difference arise between Employee and Employer concerning whether either party at any time violated any duty, right, law, regulation, public policy, or provision of this Agreement, the parties will confer and attempt in good faith to resolve promptly such dispute or difference….If any dispute or difference remains unresolved after the parties have conferred in good faith, either party desiring to pursue a claim against the other party will submit to the other party a written request to have such claim, dispute or difference resolved through impartial and confidential arbitration…. **Any such request for arbitration must be submitted within one year of the date when the dispute or difference first arose or within one year of when the Employee's employment ends, whichever occurs first, unless a party claims a violation of a specific statue having its own specific statute of limitations, in which event that statutory time limit will apply**." (emphasis added).

- "Except as otherwise required under applicable law, Employee and Employer expressly intend and agree that class action and representative action procedures shall not be asserted, nor will they apply, in any arbitration pursuant to this Section 8; Employee and Employer agree that each will not assert class action or representative action claims against the other in arbitration or otherwise; and Employee and Employer shall only submit their own, individual claims in arbitration and will not seek to represent the interests of any other person."

### 2. The August 8, 2011 Hawkins Employment Agreement Omitted the Purported Class Action Waiver Provision Present in the Other Employment Agreements

The August 8, 2011 employment agreement executed by Mr. Hawkins did not include a

4

provision forbidding either the Employee or Employer from asserting "class action or representative action claims against the other in arbitration or otherwise." *See* Exhibit 1 to Declaration of Jennifer Mueller in Support of Defendants' Motion to Compel Arbitration and Stay the Proceedings ("Mueller Declaration"). The first time the class action waiver provision appears was in Mr. Hawkins' August 1, 2014 employment agreement. *See* Exhibit 2 to Mueller Declaration. Cintas does not claim that Mr. Hawkins executed employment agreements in 2012 or 2013. *See* Mueller Declaration, at ¶ 5.

### III. ARGUMENT

#### A. Standard

"When considering a motion to stay proceedings and compel arbitration under the [FAA], a court has four tasks: first, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.'" *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000) (citation omitted). "No matter how strong the federal policy favors arbitration, 'arbitration is a matter of contract between the parties, and one cannot be required to submit to arbitration a dispute which it has not agreed to submit to arbitration.' " *Brown, on Behalf of the Henny Penny Corp Employee Stock Ownership Plan v. Wilmington Trust, N.A.*, 2018 WL 3546186, at * 4 (S.D. Ohio July 24, 2018) (quoting *Simon v. Pfizer, Inc.*, 398 F.3d 765 (6th Cir. 2005). Contrary to Defendants' arguments, Defs Mem. at 5, they fail to satisfy the first and second prongs, thus dooming their motion.

**B. The Claims Asserted in the Complaint Fall Outside The Scope of the Employment Agreements**

**1. The Employment Agreements Do Not Cover Claims Brought on Behalf of the Plan**

The arbitration agreements signed by Plaintiffs do not govern claims brought on behalf of the Plan which is, in fact, the real party Defendants seek to force into arbitration. This flows from the well-established body of law holding that an individual cannot release a plan's claims by signing a release. *See*, *e.g.*, *Yost et al. v. First Horizon National Corp.*, *et al.* 2011 WL 2182262 at * 11 (W.D. Tenn. 2011) ("Plaintiffs' claims under ERISA § 502(a)(2) are actually the claims of the Plan itself. In such cases many courts have concluded that a plan participant has no authority to release a claim belonging to the plan") (collecting cases).[4] The only appellate court decision in the country, to the best of counsel's knowledge, relevant to the facts of this case is *Munro v. Univ. of S. California*, 896 F.3d 1088 (9th Cir. 2018).[5]

These were the facts in *Munro*:

- Each of the individual Employees was required to sign an arbitration agreement as part of her employment contract. The nine Employees signed five different iterations of USC's arbitration agreement. Consistent among the various agreements is an agreement to arbitrate all claims that either the Employee or USC has against the other party to the agreement. The agreements expressly cover claims for violations of federal law.

- In their putative class action lawsuit, the Employees sought financial and equitable remedies to benefit the Plans and all affected participants and beneficiaries, including but not limited to: a determination as to the method of calculating losses; removal of breaching fiduciaries; a full accounting of Plan losses; reformation of the Plans; and an order regarding appropriate future investments.

---

[4] *See also Leber, et al. v. Citigroup 401(k) Plan Inv. Comm.*, 323 F.R.D. 145, 161 (S.D.N.Y. 2017) ("In cases brought on behalf of a plan, most courts have held that 'individuals do not have the authority to release a defined contribution plan's right to recover for breaches of fiduciary duty'; the consent of the plan is required for a release of 29 U.S.C. § 1132(a)(2) claims.")

[5] The Supreme Court denied defendants' petition for writ of *certiorari*. *See University of Southern California v. Munro*, 139 S.Ct. 1239 (2019).

*Id*. at 1090. "USC moved to compel arbitration, arguing that the Employees' agreements bar the Employees from litigating their claims on behalf of the Plan [and] … also requested the district court to compel arbitration on an individual, rather than class, basis because the parties did not specifically agree to class arbitration." *Id*. at 1090-91. The district court denied USC's motion.

In upholding the district court decision, the Ninth Circuit held that the "ERISA § 409(a) claims in this suit are not claims an 'Employee may have against the [defendant]'… and the arbitration agreements cannot be stretched to apply to them." 896 F.3d at 1094. The takeaway from *Munro* is that employees cannot sign away the rights of an ERISA plan — whether they relate to the forum of choice, the type of recovery, or anything else. Comparing an "ERISA § 502(a)(2) plaintiff" to a "*qui tam* relator," the Ninth Circuit found that neither "may alone settle a claim because that claim does not exist for the individual relator or plaintiff's primary benefit." *Munro*, 896 F.3d at 1093. Hence, the arbitration agreements here are inapplicable given that this is a representative action brought pursuant to ERISA §§ 409 and 502(a)(2) on behalf of the Plan.

Consequently, Defendants also fail to satisfy the first prong in the analysis of the applicability of an arbitration agreement under the FAA. The Plan never consented to arbitrate its claims. In *Dorman v. Charles Schwab & Co. Inc.*, 780 Fed.Appx. 510, 513 (9th Cir. 2019), the Ninth Circuit held that "[t]he relevant question is whether the Plan agreed to arbitrate the § 502(a)(2) claims," and in the case before it found "the Plan expressly agreed in the Plan document that all ERISA claims should be arbitrated." *Id*. No such facts exist in this case where the arbitration clause appears in an employment agreement and not a Plan document. Nor does the employment agreement expressly include mismanagement of plan assets.

Lastly, for the same reasoning discussed above, "[t]he decision whether to file a § 502(a)(2) claim as **a class action** is a right that belongs to the plan, and it cannot be bargained away without

the plan's consent." *Cryer v. Franklin Res., Inc.*, 2017 WL 4410103, at \*4 (N.D. Cal. Oct. 4, 2017) (emphasis added). Accordingly, the "class action waiver" provision in the employment agreements cannot be enforced against Plaintiffs, "who brought § 502(a)(2) claims in this case [on] behalf of the plan. *Id.* That is because "if individual participants' class action waivers could affect their ability to bring a § 502(a)(2) claim as a class action, then this could prevent fiduciaries from being held accountable in court for potential wrongdoing. *Id.*

### 2. The Claims Asserted in the Complaint are Outside the Scope of the Employment Agreements for Additional Reasons

#### a. "Covered" Claims Under the Employment Agreements Do Not Contemplate Claims Concerning Mismanagement of Plan Assets

The claims asserted in the Complaint have nothing to do with the type of claims covered or contemplated by the employment agreements. Section 4 of the employment agreements is tantamount to the "covered" claims section of an agreement. This section describes five areas of concern for Cintas: (1) Non-Disclosure Covenant; (2) Non-Competition Covenant; (3) Non-Solicitation of Customers; (4) Non-Solicitation of Employees; and (5) Return of Confidential Material and Information. *See supra* Section II.B. Nowhere in Section 4 do the covered claims concern an employee's participation in the Plan, which was not a condition or part of employment. *See supra* Section II.A. By contrast, in *Brown v. Wilmington Trust*, the covered claims the company attempted, but failed, to compel arbitration of, nonetheless specifically stated that covered claims encompass:

> Any claim by a Claimant which arises out of, relates to, or concerns this Plan, the Trust, or the Trust Fund, including without limitation, any claim for benefits under the Plan, Trust, or Trust Fund; any claim asserting a breach of, or failure to follow, the Plan or Trust; and any claim asserting a breach of, or failure to follow, any provision of ERISA or the Code, including without limitation claims for breach of fiduciary duty, ERISA § 510 claims, and claims for failure to timely provide notices or information required by ERISA

8

> or the Code (collectively, "Covered Claims"), shall be settled by binding arbitration administered in accordance with the National Rules for the Resolution of Employment Disputes of the American Arbitration Association ("AAA") then in effect....

*Brown, on Behalf of the Henny Penny Corp Employee Stock Ownership Plan v. Wilmington Trust, N.A.*, 2018 WL 3546186, at * 2.[6]  Moreover, the claims that the employment agreements are concerned with are "claims arising out of or in any way related to Employee's **employment** with Employer."  *See* employment agreement, Section 8.  Here, because participation in the Plan was not a requirement of employment (and in fact, as discussed below, the Complaint alleges misconduct that occurred long after Plaintiffs' employment ended), the claims alleged in the Complaint have nothing to do with Plaintiffs' employment as *contemplated* under Section 4 of the employment agreements.  "When an arbitration clause by its terms extends only to a specific type of dispute, then a court cannot require arbitration on claims that are not included."  *Simon*, 398 F.3d at 775.  Breach of fiduciary duty claims (either brought on behalf of the Plan or individually), are accordingly, not included in the employment agreements and the Court cannot compel arbitration of Plaintiffs' (or the Plan's) claims.

### b. The Claims Asserted in the Complaint Fall Outside the Time Period Contemplated by the Employment Agreements

Because the Complaint alleges a Class Period of December 13, 2013 to the present day (and continuing), a significant portion of the events constituting fiduciary breaches (the thrust of the Complaint) took place ***after*** Plaintiffs' employment ended and years after signing their last employment agreement.[7]  Accordingly, any claims in the Complaint concerning Defendants'

---

[6] *See also Torres v. Greystar Management Services, L.P.*, 2020 WL 1428462, at *1 (W.D. Tex. Jan. 23, 2020) (where the arbitration agreement at issue referenced "stock option plans, team member pension and/or welfare benefit plans.")

[7] Even as former employees, Plaintiffs have standing to bring an ERISA representative action.  *See Bridges v. American Elec. Power Co., Inc.* 498 F.3d 442, 445 (6th Cir. 2007).

breaches of fiduciary duty after Plaintiffs' left their employment are outside the scope of the employment agreements. In an analogous situation, Your Honor noted in *Fifth Third* that "the release [plaintiff] signed in 1998 cannot as a matter of law be a release of future claims under ERISA, as are the claims he asserts here." *Shirk*, 2008 WL 4425535, at * 2 (*citing Taylor v. Visteon Corp*., 2005 WL 2108333, at 426-27 (6th Cir. 1989); *see also Simon*, 398 F.3d at 775 ("court cannot require arbitration on claims that are not included.")

### c. The Class Action Claims Asserted By Mr. Hawkins for the Time Period Between December 13, 2013 and July 31, 2014 are Outside the Scope of His Employment Agreement

The clause in Mr. Hawkins' employment agreement purportedly forbidding individual class action claims first appears in Mr. Hawkins' August 1, 2014 agreement. It does not purport to be effective retroactively. Accordingly, to the extent the waiver is even applicable, and it is not,[8] this provision cannot apply to any class claims asserted by Mr. Hawkins for breaches of fiduciary duty from the time period of December 13, 2013 to July 31, 2014.

### C. The Request For Arbitration is Untimely

Lastly, the employment agreements require that any "request for arbitration must be submitted within one year of the date when the dispute or difference first arose or within one year of when the Employee's employment ends, which occurs first." Defendants have met neither timeline. The "dispute" arose on December 13, 2013 (the start of the Class Period) and Plaintiffs terminated their employment with Cintas more than a year before filing suit. However, the employment agreement does make an exception to these timelines but it is unhelpful to Defendants. The employment agreement states that these timelines apply "unless a party claims a

---

[8] *See Cryer*, 2017 WL 4410103, at *4 (individual participants cannot waive a plan's class action claims).

violation of a specific statue having its own specific statute of limitations, in which event that statutory time limit will apply." Here, the relevant statute of limitations under ERISA is six years. *See generally Tibble v. Edison Int'l*, 135 S. Ct. 1823, 1826 (2015). Accordingly, Defendants would have had to request arbitration by December 13, 2019, the last day of the statute of limitations.

## IV.     CONCLUSION

For the foregoing reasons this Court should deny Defendants' motion to compel arbitration and deny the motion to stay proceedings.


Dated:  March 31, 2020                          Respectfully Submitted,

                                                **CAPOZZI ADLER, P.C.**


                                                */s/ Mark K. Gyandoh*
                                                Mark K. Gyandoh (*admitted pro hac vice*)
                                                CAPOZZI ADLER, P.C.
                                                312 Old Lancaster Rd
                                                Merion Station, Pennsylvania 19066
                                                 (610) 890-0200
                                                 markg@capozziadler.com

                                                Donald R. Reavey (*admitted pro hac vice*)
                                                2933 North Front Street
                                                Harrisburg, Pennsylvania 17100
                                                 (717) 233-4101
                                                 donr@capozziadler.com

                                                Counsel for Plaintiffs and
                                                the Putative Class

### CERTIFICATE OF SERVICE

I hereby certify that on March 31, 2020, a true and correct copy of the foregoing document was filed with the Court utilizing its ECF system, which will send notice of such filing to all counsel of record.

*/s/ Mark K. Gyandoh*_____
Mark K. Gyandoh, Esq.