**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| RAYMOND HAWKINS, and ROBIN LUNG, individually and on behalf of all others similarly situated, | )<br>)<br>)<br>) Case No. 1:19-cv-01062-TSB<br>) |
| Plaintiffs, | )<br>) |
| v. | ) Honorable Timothy S. Black<br>)<br>) |
| CINTAS CORPORATION, BOARD OF DIRECTORS OF CINTAS CORPORATION, SCOTT D. FARMER, INVESTMENT POLICY COMMITTEE, and JOHN DOES 1-30, | )<br>)<br>)<br>)<br>) |
| Defendants. | )<br>)<br>) |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION TO
<u>COMPEL ARBITRATION AND STAY THE PROCEEDINGS</u>**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ..................................................................................................................1

ARGUMENT ......................................................................................................................2

      I.     The Arbitration Agreements Are Valid And Govern Plaintiffs' ERISA
Claims, Which They Have Brought Individually And On Behalf Of A
Class Of Participants. ...........................................................................................2

            A.     Plaintiffs Bring ERISA Claims On Their Own Behalf. .............................2

            B.     The Plan Has Consented To Arbitration. .....................................................6

            C.     The Class Action Waivers Are Enforceable. .............................................10

      II.    Plaintiffs' Claims Fall Within The Scope Of The Arbitration Agreements. .........11

            A.     The Arbitration Agreements Cover ERISA Fiduciary Breach
Claims Involving Alleged Mismanagement Of Plan Assets.....................12

            B.     The Arbitration Agreements Cover Claims Post-Dating Plaintiffs'
Employment. .............................................................................................13

            C.     Hawkins's Class Action Waivers Cover The Entire Putative Class
Period, Including December 13, 2013 To July 31, 2014. ..........................15

      III.   Defendants' Motion Is Timely. .............................................................................16

CONCLUSION .................................................................................................................17

i

## TABLE OF AUTHORITIES

**Cases**                                                                **Page(s)**

*Andrews v. Columbia Gas Transmission Corp.*,
   544 F.3d 618 (6th Cir. 2008) ...........................................................................12

*Bird v. Shearson Lehman/Am. Exp., Inc.*,
   926 F.2d 116 (2d Cir. 1991)................................................................................7

*Bridges v. Am.Elec. Power Co.*,
   498 F.3d 442 (6th Cir. 2007) ...........................................................................14

*Brown ex rel. Henny Penny Corp. Emp. Stock Ownership Plan v. Wilmington Tr., N.A.*,
   No. 17-cv-250, 2018 WL 3546186 (S.D. Ohio July 24, 2018).........................11, 13

*Brown-Davis v. Walgreen Co.*,
   No. 19-cv-5392, slip op. (N.D. Ill. Mar. 16, 2020)...................................................5

*Caltagirone v. N.Y. Cmty. Bancorp, Inc.*,
   257 F. App'x 470 (2d Cir. 2007) .........................................................................4

*Casey v. Reliance Tr. Co.*,
   No. 18-cv-424, 2019 WL 7403931 (E.D. Tex. Nov. 13, 2019)................................5

*Cryer v. Franklin Resources, Inc.*,
   No. C-16-4265, 2017 WL 4410103 (N.D. Cal. Oct. 4, 2017) .........................10, 11

*Deck v. Miami Jacobs Bus. Coll. Co.*,
   No. 12-CV-63, 2013 WL 394875 (S.D. Ohio Jan. 31, 2013) ...................................9

*Dietrich v. Bell, Inc.*,
   554 F. App'x 418 (6th Cir. 2014) .........................................................................13

*Dorman v. Charles Schwab Corp.*,
   780 F. App'x 510 (9th Cir. 2019) ................................................................. *passim*

*Ducharme v. DST Sys., Inc.*,
   No. 4:17-cv-22, 2017 WL 7795123 (W.D. Mo. June 23, 2017)..........................5, 7

*Epic Sys. Corp. v. Lewis*,
   138 S. Ct. 1612 (2018)...........................................................................11

*Exp.-Imp. Bank of U.S. v. Advanced Polymer Scis., Inc.*,
   604 F.3d 242 (6th Cir. 2010) ...........................................................................13

*Flanagan Lieberman Hoffman & Swaim v. Transamerica Life & Annuity Co.*,
   228 F. Supp. 2d 830 (S.D. Ohio 2002) ..................................................................7

*Fleet Owners Ins. Fund v. Superior Dairy, Inc.*,
    No. 16-CV-750, 2016 WL 9409020 (N.D. Ohio Nov. 10, 2016) ..............................7

*Heimeshoff v. Hartford Life & Accident Ins. Co.*,
    571 U.S. 99 (2013) ...........................................................................................10

*Huffman v. Hilltop Cos., LLC*,
    747 F.3d 391 (6th Cir. 2014) .............................................................................6

*Hughes Aircraft Co. v. Jacobson*,
    525 U.S. 432 (1999) ..........................................................................................3

*In re Mathias*,
    867 F.3d 727 (7th Cir. 2017) ...........................................................................10

*In re Meridian Funds Grp. Sec. & ERISA Litig.*,
    917 F. Supp. 2d 231 (S.D.N.Y. 2013) ...............................................................5

*LaRue v. DeWolff, Boberg & Associates, Inc.*,
    552 U.S. 248 (2008) ...................................................................................1, 3, 4

*Leber v. Citigroup 401(k) Plan Inv. Comm.*,
    323 F.R.D. 145 (S.D.N.Y. 2017) .......................................................................9

*Line Constr. Benefit Fund v. Allied Elec. Contractors, Inc.*,
    591 F.3d 576 (7th Cir. 2010) .............................................................................7

*Local 1982, Int'l Longshoremen's Ass'n v. Midwest Terminals of Toledo Int'l, Inc.*,
    694 F. App'x 985 (6th Cir. 2017) ....................................................................14

*Marshall v. Northrop Grumman Corp.*,
    No. CV 16-06794, 2017 WL 2930839 (C.D. Cal. Jan. 30, 2017) .......................5

*Munro v. University of Southern California*,
    896 F.3d 1088 (9th Cir. 2018) ...........................................................................9

*Pencil v. Ohio Masonic Home Pension Plan*,
    No. 3:12-CV-377, 2013 WL 753863 (S.D. Ohio Feb. 27, 2013) ........................3

*Pilger v. Sweeney*,
    725 F.3d 922 (8th Cir. 2013) .............................................................................4

*Sanders v. Shadow Mountain Behavioral Health Sys., LLC*,
    No. 18-CV-574, 2019 WL 404984 (N.D. Okla. Jan. 31, 2019)........................16

*Shirk v. Fifth Third Bancorp*,
    No. 05-cv-49, 2008 WL 4425535 (S.D. Ohio Sept. 30, 2008) ....................10, 14

*Smith v. Aegon Cos. Pension Plan*,
    769 F.3d 922 (6th Cir. 2014) ............................................................................8, 10

*Torres v. Greystar Management Services, L.P.*,
    No. SA-19-CA-510, 2020 WL 1428462 (W.D. Tex. Jan. 23, 2020).......................13

*United States ex rel. Hicks v. Evercare Hosp.*,
    No. 12-CV-887, 2015 WL 4498744 (S.D. Ohio, July 23, 2015).......................9, 11

*Van Slyke v. Commercial Credit Corp.*,
    No. 95-CV-923, 1995 WL 766399 (N.D.N.Y. Dec. 29, 1995)...............................16

*Wilcox v. Georgetown Univ.*,
    No. CV 18-422, 2019 WL 132281 (D.D.C. Jan. 8, 2019) .......................................5

*Yost v. First Horizon Nat'l Corp.*,
    No. 08-2293, 2011 WL 2182262 (W.D. Tenn. June 3, 2011) .............................5, 9

**Statutes**

29 U.S.C. § 1002(7) ...........................................................................................................14

29 U.S.C. § 1002(16)(B)......................................................................................................7

29 U.S.C. § 1110(a) ...........................................................................................................14

29 U.S.C. § 1132(d)(1) ........................................................................................................6

## <u>INTRODUCTION</u>

Plaintiffs' contention that they should not be required to arbitrate their claims—as they expressly agreed to do—relies mainly on two faulty premises.

First, Plaintiffs contend that the arbitration agreements do not apply here because they are seeking relief "on behalf of the Plan" and the Plan was not a party to those agreements.  Dkt. 18, Pls.' Mem. Opp. ("Opp.") at 6–7.  That argument is meritless because the Plan is a defined contribution plan in which each participant controls his or her own individual account.  As the Supreme Court held in *LaRue v. DeWolff, Boberg & Associates, Inc.*, 552 U.S. 248, 256 (2008), participants in a defined contribution plan who bring ERISA claims for breach of fiduciary duty seek *individualized* relief for losses associated with their individual accounts.  Though the monetary relief Plaintiffs seek would flow into their Plan accounts, and in that technical sense is relief "on behalf of the Plan," any recovery that Plaintiffs receive would affect only their individual Plan accounts.  As a result, such claims are owned and controlled by Plaintiffs individually, and the Plan does not need to be a party to any agreement by Plaintiffs to arbitrate those claims.

Second, Plaintiffs contend that the "Plan never consented to arbitrate its claims."  Opp. at 7. The Plan's consent is irrelevant because the claims belong to Plaintiffs, but even if it did matter, the Plan plainly consents to arbitration.  The Plan is not a living, breathing entity; it is controlled by the Plan sponsor, which here is Cintas.  Cintas expressed its consent both by signing the agreements requiring Plaintiffs' ERISA claims to be arbitrated and by moving to compel arbitration in this case.  Because Cintas has consented to arbitration, so has the Plan, and therefore even if Plan consent were required, the Plan has given it.

Plaintiffs make a handful of additional arguments about the scope of their arbitration agreements, *see id.* at 8–10, but those are meritless too.  All of them ignore the plain terms of the

employment contracts. Contrary to Plaintiffs' assertions, their contracts expressly require the parties to arbitrate "*all*" claims or rights arising under ERISA. Dkt. 16, Defs.' Mem. Supp. Mot. Compel Arb. ("Mem."), Exs. 1–8, § 8 (emphasis added). Nothing in the contracts limits their arbitration provisions or class action waivers to claims involving the period after the contracts were signed or before Plaintiffs' employment at Cintas was terminated. And no provision in the contracts governs the time within which Defendants were required to move to compel arbitration. Defendants' motion should be granted.

## ARGUMENT

### I. The Arbitration Agreements Are Valid And Govern Plaintiffs' ERISA Claims, Which They Have Brought Individually And On Behalf Of A Class Of Participants.

#### A. Plaintiffs Bring ERISA Claims On Their Own Behalf.

Plaintiffs argue that their agreements to arbitrate their ERISA claims cannot be enforced because they are bringing their claims "on behalf of the Plan" and the Plan was not a party to the agreements. Opp. at 6–8. This argument misses the point because, while it is certainly true that any monetary relief in this case would flow through the Plan, and therefore in that limited sense would be "on behalf of the Plan," the relief would benefit Plaintiffs alone, and so they control the claims. There is therefore no need for the Plan to separately agree to arbitration (although it has done so, as explained in the next section).

These conclusions are driven by the nature of the plan at issue. The Plan is a defined contribution plan. Compl. ¶¶ 2, 35. In a defined contribution plan, the plan maintains and holds money in an individual account for each individual participant. *Id.* ¶¶ 3, 35. As a result, the gains and losses in that individual account determine the value of the participant's balance in the plan. *Id.* A different participant who chooses a different mix of investments will have a completely different value in his or her account. By contrast, participants in a defined benefit

plan do not have individual accounts and their benefits do not depend on the success of any investment they choose. Rather, in a defined benefit plan, the employer chooses the investments and pays a fixed amount of benefits (a "defined benefit") based on a percentage of each employee's salary, and that amount does not vary with the performance of the plan's assets. *See, e.g.*, *LaRue*, 552 U.S. at 255 (describing the differences between defined contribution plans and defined benefit plans); *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 439–40 (1999) (same).

As a result of a defined contribution plan's features, a participant in such a plan can pursue his own individualized claim affecting his own individual account when alleged misconduct diminishes the value of the amount the plan holds in that account. As the Supreme Court has made clear in a case that Plaintiffs never cite in their response, when such a participant brings claims under § 502(a)(2) of ERISA, he seeks "recovery for fiduciary breaches that impair the plan assets in [the] participant's *individual* account." *LaRue*, 552 U.S. at 256 (emphasis added). Such a claim is "inherently individualized." *Dorman v. Charles Schwab Corp.*, 780 F. App'x 510, 514 (9th Cir. 2019) (enforcing arbitration clause for ERISA claims relating to a defined contribution plan).

To be sure, not all kinds of individual losses are compensable under § 502(a)(2). In particular, a participant cannot recover under § 502(a)(2) for injuries that are wholly "distinct from plan injuries" in the sense that they do not affect his individual account at all. *LaRue*, 556 U.S. at 256; *see also Pencil v. Ohio Masonic Home Pension Plan*, No. 3:12-CV-377, 2013 WL 753863, at *4 (S.D. Ohio Feb. 27, 2013) (citing *LaRue*, 552 U.S. at 256) (dismissing claim arising from injuries that did not affect the plan). But if the participant alleges losses to his individual plan account, he can pursue a claim to recover them under § 502(a)(2), as Plaintiffs seek to do here. *See LaRue*, 556 U.S. at 256. In other words, while the recovery Plaintiffs are

seeking in this action would flow through the Plan, the Plan is simply a pass-through—Plaintiffs' injuries and their claims are individualized and belong to them.[1] *Id.*; *see also Dorman*, 780 F. App'x at 514 ("Although § 502(a)(2) claims seek relief on behalf of a plan, the Supreme Court has recognized that such claims are inherently individualized when brought in the context of a defined contribution plan like that at issue."); *Pilger v. Sweeney*, 725 F.3d 922, 926 n.4 (8th Cir. 2013) ("[W]hen a defined-contribution plan is at issue, a § 1132(a)(2) plaintiff may recover individualized relief."). That conclusion holds true even though Plaintiffs also purport to bring claims on behalf of similarly situated participants. To the extent any putative class member has a claim, that claim arises from an alleged injury to his or her individual account and thus belongs to that putative class member individually.

The individualized nature of ERISA claims involving defined contribution plans is one reason why courts have held that a plaintiff only has standing to challenge fiduciaries' selection of investment options in which the plaintiff actually invested. Claims relating to investment options in which a plaintiff did not invest could not affect a plaintiff's individual plan account. In other words, though any recovery for a fiduciary breach claim may be "on behalf of the plan" in the sense that recovery must flow through the plan into the plaintiff's individual account, a plaintiff can seek this recovery only if he has an individual claim that he can bring on his own behalf. *See, e.g.*, *Caltagirone v. N.Y. Cmty. Bancorp, Inc.*, 257 F. App'x 470, 473 (2d Cir. 2007)

---

[1] The Complaint confirms that Plaintiffs are ultimately seeking individualized recovery for their own benefit. They allege that they bring their claims "individually," Compl. at 1, and "on behalf of themselves." *Id.* ¶ 47; *see also id.* ¶¶ 1–9, 13–14, 134, 142 (alleging that Defendants' selection of investment options impaired the value of Plan assets in Plaintiffs' individual accounts); *id.* ¶ 15 (alleging Plaintiffs are "entitled to receive benefits in the amount of the difference between the value of their accounts currently, or as of the time their accounts were distributed, and what their accounts are or would have been worth" but for Defendants' alleged breach); *id.* at 1 n.1 ("the Plan is *not* a party" to this action) (emphasis added).

(a plaintiff who did not personally invest in a challenged investment option is "not within the group she defines as injured as a result of the alleged fiduciary breaches" relating to that fund and thus "lacks standing"); *Yost v. First Horizon Nat'l Corp.*, No. 08-2293, 2011 WL 2182262, at *6 (W.D. Tenn. June 3, 2011) (plaintiff "never had any holdings" in the challenged option, so he "[did] not have standing to sue for any breach of fiduciary duty as to the selection or retention of" that option); *Brown-Davis v. Walgreen Co.*, No. 19-cv-5392, slip op. at 3–4 (N.D. Ill. Mar. 16, 2020) ("Plaintiffs lack standing to sue regarding funds in which they did not personally invest."); *Wilcox v. Georgetown Univ.*, No. CV 18-422, 2019 WL 132281, at *9 (D.D.C. Jan. 8, 2019) ("Plaintiffs clearly cannot allege an individual violation of ERISA as to the Vanguard funds, which is an investment option neither Plaintiff selected."); *Marshall v. Northrop Grumman Corp.*, No. CV 16-06794, 2017 WL 2930839, at *8 (C.D. Cal. Jan. 30, 2017) (plaintiffs lacked standing to challenge a fund because the complaint "simply [did] not allege that any of the named Plaintiffs invested in" that fund); *In re Meridian Funds Grp. Sec. & ERISA Litig.*, 917 F. Supp. 2d 231, 235 (S.D.N.Y. 2013) ("[Plaintiff] is only permitted to pursue claims relating to the Meridian fund in which it actually invested.").

Because Plaintiffs have brought individualized ERISA claims involving their individual Plan accounts, Plaintiffs control those claims and had authority to enter into binding agreements to arbitrate them, just as they have authority to enter into agreements to arbitrate any other claims that belong to them. *See, e.g.*, *Casey v. Reliance Tr. Co.*, No. 18-cv-424, 2019 WL 7403931, at *32–35 (E.D. Tex. Nov. 13, 2019) (holding that whether ERISA fiduciary breach claims were arbitrable turned on whether the individual plaintiffs had agreed to arbitrate them); *Ducharme v. DST Sys., Inc.*, No. 4:17-cv-22, 2017 WL 7795123, at *1 (W.D. Mo. June 23, 2017) (enforcing individual employee's agreement to arbitrate claims under § 502(a)(2) of ERISA). Plaintiffs'

argument that they "lacked the authority to agree to arbitrate the Plan's claims" (Opp. at 1) is therefore beside the point: the Plan's rights as distinct from their own claims are not at issue here, because their claims concern their individual Plan accounts. These claims belong to Plaintiffs and they must arbitrate them as they agreed to do. Any other conclusion not only would be inconsistent with the nature of Plaintiffs' claims, but also would contravene binding, settled authority holding that there is a "strong presumption" in favor of enforcing arbitration agreements. *Huffman v. Hilltop Cos., LLC*, 747 F.3d 391, 395 (6th Cir. 2014) (citing *Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 204, 209 (1991)).

Even if Plaintiffs wanted to bring some other type of claim that was not individualized and belonged solely to the Plan or to different participants (as Plaintiffs seek to do by filing their complaint as a class action), there would still have to be a representative to bring the claim on the Plan's behalf, and Plaintiffs expressly agreed not to do that either. The contracts provide that the parties "will not assert . . . representative action claims against the other in arbitration or otherwise." Mem., Exs. 2–8, § 8. That agreement prohibits Plaintiffs from bringing claims as a representative of any other person or entity in any forum, including in arbitration. That commitment does not give up any rights that belong to the Plan or other participants; it just precludes Plaintiffs from being their representatives.

### B. The Plan Has Consented To Arbitration.

The Plan does not have to consent because Plaintiffs control any claims relating to their individual Plan accounts. But even if the Plan's consent mattered, the Plan plainly did consent to arbitration of claims affecting the Plan.

Though a plan is an entity that can "sue and be sued," 29 U.S.C. § 1132(d)(1), it is not an entity that acts or makes decisions on its own. In the same way that corporate officers and the board of directors act for a corporation, plan sponsors act for ERISA plans. The plan sponsor

6

establishes and maintains the plan, and can delegate authority to others to administer the plan. *See, e.g.*, 29 U.S.C. § 1002(16)(B) (defining "plan sponsor"). "Any and all actions taken by a plan are done by the administrators who act on its behalf," *Line Constr. Benefit Fund v. Allied Elec. Contractors, Inc.*, 591 F.3d 576, 579 (7th Cir. 2010), and "the Plan represents no more than the will of its administrators and trustees." *Flanagan Lieberman Hoffman & Swaim v. Transamerica Life & Annuity Co.*, 228 F. Supp. 2d 830, 840 (S.D. Ohio 2002); *see also, e.g.*, *Fleet Owners Ins. Fund v. Superior Dairy, Inc.*, No. 16-CV-750, 2016 WL 9409020, at *2 (N.D. Ohio Nov. 10, 2016) (quoting *Saramar Aluminum Co. v. Pension Plan for Emps. of Aluminum Indus.*, 782 F.2d 577, 581 (6th Cir. 1986)) ("'The Plan . . . necessarily includes those who must act for the Plan to administer it and to effectuate its policies.'").

As a result, it is the Plan sponsor—Cintas—who decides whether the Plan "consents" to have Plan-related claims arbitrated. That consent can take various forms. One way is for the plan sponsor to add an arbitration provision to the plan document. *See Dorman*, 780 F. App'x at 513 (enforcing arbitration agreement where "the Plan expressly agreed in the Plan document that all ERISA claims should be arbitrated"). Another way is for the plan sponsor to execute an agreement to arbitrate claims relating to the plan. *See Bird v. Shearson Lehman/Am. Exp., Inc.*, 926 F.2d 116, 117–22 (2d Cir. 1991) (agreement to arbitrate ERISA fiduciary breach claims was enforceable where a benefit plan's trustee executed an agreement to arbitrate certain claims relating to the plan). A plan sponsor can also consent by including an arbitration clause in an employment contract that expressly covers claims under ERISA. *See Ducharme*, 2017 WL 7795123, at *1 (holding that arbitration agreement in employment contract governed ERISA claims under § 502(a)(2)).

Here, Cintas expressed the Plan's consent to arbitrate ERISA claims in two ways. First, Cintas entered into multiple agreements with each Plaintiff that expressly covered claims brought under ERISA. In each of those agreements, Plaintiffs and Cintas agreed to arbitrate "all of [Plaintiffs'] rights or claims arising out of or in any way related to [Plaintiffs'] employment with [Cintas], such as rights or claims arising under . . . the Employee Retirement Income Security Act." Mem., Exs. 1–8, § 8. Nothing in those agreements suggests that the parties intended to carve out claims brought under § 502(a)(2) of ERISA or claims seeking relief that happens to flow through the Plan. To the contrary, the agreements provide for arbitration of "*all*" ERISA claims, which include § 502(a)(2) fiduciary breach claims. *Id.* (emphasis added).

Second, Cintas, along with the other Defendants who are alleged to be fiduciaries of the Plan with the power to act on its behalf, has expressed its consent by filing this motion to compel arbitration of Plaintiffs' claims. Because the Plan sponsor acts for the Plan, the fact that Cintas and the other Plan fiduciaries are seeking to compel arbitration confirms that those who act on behalf of the Plan have consented to arbitration of the claims.

In addition, Cintas is the entity that determines which provisions are in the Plan document, and it has the power to amend the Plan at any time. *See* Ex. A, Second Declaration of Jennifer Mueller, Ex. 9, § 12.1 (Cintas's board of directors has the right "at any time . . . to amend in whole or in part any of the provisions of this Plan"); *id.* § 1.1 (describing Cintas's prior establishment of and amendments to the Plan); *see also Smith v. Aegon Cos. Pension Plan*, 769 F.3d 922, 930 (6th Cir. 2014) (quoting *Coomer v. Bethesda Hosp., Inc.*, 370 F.3d 499, 508 (6th Cir. 2004)) ("[E]mployers 'are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans.'"). Thus, Cintas could reiterate its consent at any time by amending the Plan document to consent to arbitration of any claim relating to the Plan. But

8

given that Cintas already consents to arbitration, requiring a Plan amendment would be a needless formality.

The main case on which Plaintiffs rely, *Munro v. University of Southern California*, 896 F.3d 1088 (9th Cir. 2018), does not help them because the court in that case never considered whether the plan sponsor had consented to arbitrate the claims at issue. A subsequent decision from the same court, *Dorman*, makes clear that agreements to arbitrate ERISA claims are enforceable when the plan has consented to arbitration. *See* 780 F. App'x at 514. Plaintiffs have offered no basis for their conclusory assertion that consent is lacking. *See* Opp. at 7.

Moreover, the conclusion in *Munro* was based upon a predicate that courts in this circuit have not adopted. The *Munro* court concluded that the plaintiff's agreement to arbitrate ERISA claims was unenforceable by analogizing to Ninth Circuit cases holding that a *qui tam* plaintiff who brings claims under the False Claims Act ("FCA") is bringing claims on behalf of the United States, rather than on his own behalf. *See Munro*, 896 F.3d at 1092–93 (citing *United States ex rel. Welch v. My Left Foot Children's Therapy, LLC*, 871 F.3d 791 (9th Cir. 2017)). FCA cases in this jurisdiction, however, take a different approach, and hold that the United States can give implied consent to arbitration of FCA claims in various ways, including by declining to object to arbitration, *see United States ex rel. Hicks v. Evercare Hosp*., No. 12-CV-887, 2015 WL 4498744, at *3 (S.D. Ohio, July 23, 2015), or by declining to intervene in the case, *see Deck v. Miami Jacobs Bus. Coll. Co*., No. 12-CV-63, 2013 WL 394875, at *6 (S.D. Ohio Jan. 31, 2013). This precedent confirms that the Plan has consented to arbitrate Plaintiffs' claims, regardless of whether they are claims for which Plan consent is required.

The other cases Plaintiffs cite, which concern releases of ERISA claims, are likewise inapposite. *See* Opp. at 6, 10 (citing *Yost*, 2011 WL 2182262, at *11); *Leber v. Citigroup 401(k)*

9

*Plan Inv. Comm.*, 323 F.R.D. 145, 161 (S.D.N.Y. 2017); *Shirk v. Fifth Third Bancorp*, No. 05-cv-49, 2008 WL 4425535, at * 2 (S.D. Ohio Sept. 30, 2008)). Defendants are not arguing that Plaintiffs or the Plan have agreed to release any claims—Defendants are simply pointing out that Plaintiffs must pursue their claims in the proper forum, which is arbitration. It is well established that forum-selection clauses and other agreements to modify procedures for resolving ERISA claims are enforceable. *See, e.g.*, *Smith*, 769 F.3d at 931–33 (venue-selection clause was enforceable with regard to ERISA claims); *In re Mathias*, 867 F.3d 727, 733–34 (7th Cir. 2017) (same); *Heimeshoff v. Hartford Life & Accident Ins. Co.*, 571 U.S. 99, 105–16 (2013) (plan's limitations period was enforceable with regard to ERISA claims). Plaintiffs' arbitration agreements are simply a "specialized kind of forum-selection clause," *Smith*, 769 F.3d at 932 (quotation marks omitted), and they should likewise be enforced.

In the end, Plaintiffs are asking for an anomalous result. Plaintiffs are asking the Court to hold that the claims asserted belong to the Plan, and that they, rather than Cintas or the Plan fiduciaries, make the decision about whether those claims will be arbitrated—even though they already agreed that their own claims would be arbitrated. The Court should reject that position.

### C. The Class Action Waivers Are Enforceable.

Plaintiffs also contend that the class action waivers in the agreements are unenforceable for the same reason: the Plan did not consent. Opp. at 7–8. But that argument fails for the same reasons as above; consent was not needed, and even if it were, the Plan gave its consent through the Plan sponsor.

The reasoning of the sole case Plaintiffs cite in support of this contention, *Cryer v. Franklin Resources, Inc.*, No. C-16-4265, 2017 WL 4410103 (N.D. Cal. Oct. 4, 2017), has been rejected. *Cryer* held that the arbitration provisions, which included a class action waiver, should not be enforced because then the defendants could not be "held accountable in court for potential

wrongdoing." *Id.* at \*4. In other words, the use of arbitration could not be trusted; only courts would suffice. *See id.* But subsequent case law in that jurisdiction—as well as from this court—holds that class action waivers are indeed enforceable, including in the ERISA context. *See Dorman*, 780 F. App'x at 514 (holding that "waiver of class-wide and collective arbitration must be enforced according to its terms" with regard to ERISA claims); *Brown ex rel. Henny Penny Corp. Emp. Stock Ownership Plan v. Wilmington Tr., N.A.*, No. 17-cv-250, 2018 WL 3546186, at \*3 (S.D. Ohio July 24, 2018) (citing *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 236–37 (2013)) ("[C]lass waivers in arbitration agreements are enforceable even if the statute at issue expressly permits collective actions.").

Moreover, decisions both before and after *Cryer* soundly reject the distrust of arbitration on which *Cryer* was based. Arbitration does not allow anyone to escape liability; it simply offers an alternative forum with "quicker, more informal, and often cheaper resolutions for everyone involved." *Dorman*, 780 F. App'x at 513 (citation omitted); *see also Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (by passing the FAA, "Congress directed courts to abandon their hostility" to arbitration and established "a liberal federal policy favoring arbitration agreements"); *Evercare Hosp.*, 2015 WL 4498744, at \*2–3 ("The FAA was designed to override judicial reluctance to enforce arbitration agreements").

## II. Plaintiffs' Claims Fall Within The Scope Of The Arbitration Agreements.

Plaintiffs make several other scattershot arguments about the scope of their agreements to arbitrate. None has merit. The arbitration agreements plainly govern ERISA claims for alleged mismanagement of plan assets, apply to claims involving time periods after Plaintiff ended their employment at Cintas, and cover the entire putative class period.

### A.  The Arbitration Agreements Cover ERISA Fiduciary Breach Claims Involving Alleged Mismanagement Of Plan Assets.

Plaintiffs assert that their ERISA claims have "nothing to do" with the types of claims covered or contemplated in their employment contracts.  Opp. at 8.  But this argument simply ignores the express language of Section 8 of the agreements, which requires arbitration of "all of [Plaintiffs'] rights or claims arising out of or in any way related to [Plaintiffs'] employment with [Cintas], such as rights or claims arising under . . . the *Employee Retirement Income Security Act*."  Mem., Exs. 1–8, § 8 (emphasis added).  Plaintiffs' claims fall squarely within the scope of this provision:  the claims arise under ERISA, and they relate to Plaintiffs' employment with Cintas because Plaintiffs participated in the defined contribution plan that Cintas established for its employees.  *See, e.g.*, Compl. ¶¶ 1–3, 13–14, 35.

Plaintiffs' response never addresses this language in Section 8.  Instead, Plaintiffs point to Section 4, which is titled "Employee's Acknowledgments and Covenants."  Mem., Exs. 1–8, § 4.  But nothing in Section 4 limits the terms of Section 8.  In fact, Section 8 carves out several categories of claims from the arbitration provisions' scope, but claims under ERISA is not one of them.  *Id.* § 8.  The fact that the parties chose not to include ERISA fiduciary breach claims in this list of carve-outs confirms that they intended such claims to be arbitrated.  *Cf. Andrews v. Columbia Gas Transmission Corp.*, 544 F.3d 618, 632 (6th Cir. 2008) ("the expression of one thing" listed in a contractual provision is "the exclusion of another").  Plaintiffs' reading would treat the above-quoted language from Section 8 as a nullity.

Neither of the cases Plaintiffs rely on supports their view that the plain terms of Section 8 can be simply ignored.  *See* Opp. at 9 & n.6.  In *Brown*, the court declined to enforce an arbitration provision because the plaintiff had cashed out of the plan before the arbitration provision was added and thus was not a "Participant" or "Claimant" within the meaning of the

arbitration clause. 2018 WL 3546186, at *6–8. The summary order in *Torres v. Greystar Management Services, L.P.*, No. SA-19-CA-510, 2020 WL 1428462 (W.D. Tex. Jan. 23, 2020), does not help Plaintiffs either because it compelled arbitration of an ERISA claim that the plaintiff brought "individually and as a representative of a class of participants and beneficiaries on behalf of the [participants'] 401(k) plan," *id.* at *1 (capitalization altered), just like the ERISA claims Plaintiffs have brought here.

### B. The Arbitration Agreements Cover Claims Post-Dating Plaintiffs' Employment.

Plaintiffs also argue that, to the extent their claims involve alleged fiduciary breaches that took place after their employment at Cintas ended, a portion of their claims is outside the scope of their arbitration agreements. Opp. at 9–10. But nothing in the agreements suggests that the provisions apply only during Plaintiffs' employment. Plaintiffs' argument should be rejected because it reads a limitation into the contracts that simply is not there. *See Dietrich v. Bell, Inc.*, 554 F. App'x 418, 425 (6th Cir. 2014) (quotation marks omitted) ("To read in an extra term . . . would be to dishonor the written agreement . . . [and] is contrary to the bedrock principle of American contract law that parties are free to contract as they see fit.").

Moreover, other provisions in the employment contracts show that the parties intended the terms, including the arbitration provisions, to extend past Plaintiffs' employment. For example, the contracts provide that Plaintiffs may not "reproduce, publish, disclose, use, reveal, show, or otherwise communicate to any person or entity any Confidential Material and Information" at any time while employed at Cintas, as well as "*after such employment ends* for any reason." Mem., Exs. 1–8, § 4(a) (emphasis added). That provision makes sense only if the contract is read to remain in effect after Plaintiffs' employment at Cintas was terminated. *Cf. Exp.-Imp. Bank of U.S. v. Advanced Polymer Scis., Inc.*, 604 F.3d 242, 248 (6th Cir. 2010)

13

(courts must read contracts to "give effect to each term"). In addition, when the parties wanted to limit the duration of certain obligations under the employment contracts, they expressly did so. Some obligations are expressly limited to the 12 or 24 months after Plaintiffs left their employment at Cintas. *See* Mem., Exs. 1–8, § 4(b)–(d). If the parties had wanted to write a similar limitation into the arbitration provisions in Section 8, they could have done so.

The time period limitation that Plaintiffs say should be read into their contracts also makes no sense from a practical standpoint. It would be unworkable to split up an ERISA fiduciary breach claim by sending to arbitration the claims that pre-dated Plaintiffs' termination while litigating claims relating to the post-termination period in court. *Cf. Local 1982, Int'l Longshoremen's Ass'n v. Midwest Terminals of Toledo Int'l, Inc.*, 694 F. App'x 985, 990 (6th Cir. 2017) (collecting cases holding that splitting claims between different arbitral forums undermines "the goals of practicality and efficiency"). Furthermore, as Plaintiffs acknowledge (Opp. at 9 n.7), a person can be a plan participant with standing to seek relief under § 502(a)(2) regardless of whether the person is a current or former employee of the plan sponsor. *See* 29 U.S.C. § 1002(7) (defining "participant" to include current and former employees); *Bridges v. Am.Elec. Power Co.*, 498 F.3d 442, 445 (6th Cir. 2007). Because § 502(a)(2) does not distinguish between current and former employees, it would make no sense for an arbitration agreement to draw that distinction.

The sole authority that Plaintiffs rely on for their argument—*Shirk v. Fifth Third Bancorp*—is distinguishable because it involved a release of claims, not an agreement to arbitrate. *Shirk* held that an employee could not release future ERISA claims because any agreement that "purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty" is void under ERISA. 29 U.S.C. § 1110(a) (cited in *Shirk*,

2008 WL 4425535, at *3 n.2). That holding has no bearing here, because Defendants are not arguing that Plaintiffs have released any claims. Plaintiffs have merely agreed that their claims should be heard in a different forum.

> ### C. Hawkins's Class Action Waivers Cover The Entire Putative Class Period, Including December 13, 2013 To July 31, 2014.

Plaintiffs also assert that the class action waivers in Hawkins's employment contracts do not prevent him from pursuing claims on behalf of a class for the period from December 13, 2013 to July 31, 2014, because the first employment contract in which Hawkins agreed to a class action waiver is dated August 1, 2014. Opp. at 10. The Court should reject this argument, too.

Nothing in Hawkins's (or Lung's) employment contracts limits the class action waiver or any other provision in Section 8 to claims that post-date the contracts. To the contrary, Section 8 of Hawkins's employment contracts from 2014 and 2016 unambiguously cover "*all*" of his rights and claims arising under ERISA—including his right to proceed on behalf of a class, which he chose to give up by agreeing to the class action waiver at the end of Section 8. Mem., Exs. 2–3, § 8 (emphasis added).

For the avoidance of doubt, Hawkins's 2014 and 2016 employment contracts also provide that "aside from the amounts of [Hawkins's] compensation and [Hawkins's] entitlement to benefits, this agreement contains the entire agreement between [Cintas] and [Hawkins] regarding subjects addressed herein." *Id.* § 10. That provision confirms that the class action waiver and other provisions of Section 8 apply to all of Hawkins's ERISA claims, even to the extent the claims involve periods pre-dating Hawkins's employment contracts.

### III.     Defendants' Motion Is Timely.

Finally, Plaintiffs' argument that Defendants filed this motion too late (Opp. at 10–11) is groundless.  This argument is based on a tortured misreading of a contractual limitations period in Section 8 that provides as follows:

> Either party desiring to pursue a claim against the other party will submit to the other party a written request to have such claim, dispute or difference resolved through impartial and confidential arbitration. . . .  Any such request for arbitration must be submitted within one year of the date when the dispute or difference first arose or within one year of when the Employee's employment ends, whichever occurs first, unless a party claims a violation of a specific statute having its own specific statute of limitations, in which event that statutory time limit will apply.

Mem., Exs. 1–8, § 8.

This clause provides a limitations period that applies to *the party asserting a claim*— here, Plaintiffs.  It says nothing about when one party must move to compel arbitration if the other has improperly filed its claim in court.

Plaintiffs' own arguments show why such a reading of this clause would be nonsensical. According to Plaintiffs, Defendants were required somehow to know as of December 13, 2013 that Plaintiffs would raise a dispute six years later.  And under Plaintiffs' reading of this clause, by the time Plaintiffs filed this lawsuit, it was already too late to enforce the arbitration provisions.  Opp. at 11.  This reading of Section 8 makes no sense and should be rejected.  As another court held in rejecting a similar argument it branded "frivolous," it would be "absurd" to require any of the Defendants "essentially to initiate an arbitration proceeding against itself, as plaintiff[s] suggest[]."  *Van Slyke v. Commercial Credit Corp*., No. 95-CV-923, 1995 WL 766399, at *2 (N.D.N.Y. Dec. 29, 1995); *see also Sanders v. Shadow Mountain Behavioral Health Sys., LLC*, No. 18-CV-574, 2019 WL 404984, at *4 n.7 (N.D. Okla. Jan. 31, 2019) (requiring defendants to "initiate arbitration against themselves . . . without being absolutely

certain that plaintiff actually planned to follow through on her threat to seek recovery" would be an "absurdity").

## <u>CONCLUSION</u>

For the reasons stated above, Defendants respectfully request that the Court enter an Order requiring that should Plaintiffs wish to pursue their ERISA claims, such claims must be brought as individual, binding arbitrations limited to seeking relief with respect to each Plaintiff's own individual account, and staying this action pending arbitration pursuant to 9 U.S.C. § 3.


Dated:  April 14, 2020                        Respectfully submitted,

                                             By: */s/ Jacob D. Rhode*
                                             Jacob D. Rhode (0089636), Trial Attorney
                                             KEATING MUETHING & KLEKAMP PLL
                                             One E. 4th Street, Suite 1400
                                             Cincinnati, OH  45202
                                             Tel:  (513) 579-6400
                                             Fax:  (513) 579-6457
                                             jrhode@kmklaw.com

                                             and

                                             */s/ Mark B. Blocker*
                                             Mark B. Blocker *(pro hac vice)*
                                             Chris K. Meyer *(pro hac vice)*
                                             Caroline A. Wong *(pro hac vice)*
                                             SIDLEY AUSTIN LLP
                                             One South Dearborn St.
                                             Chicago, IL 60603
                                             Tel: (312) 853-7000
                                             Fax: (312) 853-7036
                                             mblocker@sidley.com
                                             cmeyer@sidley.com
                                             caroline.wong@sidley.com

                                             *Attorneys for Defendants*

17

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 14, 2020, I caused copies of the foregoing document to be

served via the CM/ECF system upon:

Michael J. Connick (0046624)
Michael J. Connick Co., LPA
301 Main Street, Suite H
Zanesville, OH 43701
Telephone: (216) 924-2010
mconnick@MJConnick.com

Mark K. Gyandoh
Capozzi Adler, P.C.
2933 North Front Street
Harrisburg, PA 17110
Telephone: (717) 233-4101
Facsimile: (717) 233-4103
markg@capozziadler.com

*/s/* Mark B. Blocker