# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | | |
|---|---|---|
| RAYMOND HAWKINS and ROBIN LUNG, *individually and on behalf of all others similarly situated*, | : : : | Case No. 1:19-cv-1062 |
| | : | Judge Timothy S. Black |
| Plaintiffs, | : : | |
| vs. | : : | |
| CINTAS CORPORATIONS, *et al.*, | : | |
| Defendant. | | |

## ORDER DENYING MOTION TO COMPEL ARBITRATION

This civil case is before the Court on Defendants Cintas Corporation, Board of Directors of Cintas Corporation, Scott D. Farmer, and the Investment Policy Committee's (collectively, "Cintas") motion to compel arbitration and stay proceedings and supporting memorandum (Docs. 15, 16), and the parties' responsive memoranda (Docs. 18, 19).

## I.  BACKGROUND

Plaintiffs Raymond Hawkins and Robin Lung (collectively, the "Participants") bring this action pursuant to § 409 and § 502(a)(2) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1109, 1132(a)(2).  (Doc. 1 at ¶ 1). Participants, both former Cintas employees, pursue this action individually and on behalf of other similarly situated participants in the Cintas Partners' Plan (the "Plan").  (*See generally*, *id*.).

The Plan is a defined contribution retirement plan, established by Cintas in 1991. (*Id*. at ¶¶ 35–36).  Each participant in the Plan is provided an individual account and the

benefits derived for each participant are based "solely upon the amount contributed to those [individual] accounts." (*Id*. at ¶ 35).

Participants contend that Cintas breached fiduciary duties of loyalty and prudence by mismanaging and failing to investigate and select better cost options for the Plan from December 13, 2013 to the present. (*Id*. at ¶¶ 12–35). Participants also contend that Cintas failed to monitor the decision-making of the Plan's committee groups and/or individual fiduciaries. (*Id*. at ¶¶ 136–42).

Related to this motion to compel arbitration and stay proceedings, Participants' employment agreements read:

> 8. EXCLUSIVE METHOD OF RESOLVING DISPUTES OR DIFFERENCES.
>
> Should any dispute or difference arise between Employee and Employer concerning whether either party at any time violated any duty, right, law, regulation, public policy, or provision of this Agreement, the parties may[1] confer and attempt in good faith to resolve promptly such dispute or difference. . . . The rights and claims of Employee covered by this Section 8, including the arbitration provisions below, include Employee's rights or claims for damages as well as reasonable costs and attorneys' fees, caused by Employer's violation of any provision of this Agreement or any law, regulation or public policy. The rights and claims of Employee covered by this Section 8, including the arbitration provisions below, specifically include but are not limited to all of Employee's rights or claims arising out of or in any way related to Employee's employment with Employer, such as rights or

---

[1] The Court notes that in Hawkins' first employment agreement, dated August 11, 2011, this sentence reads: "*will* confer and attempt in good faith . . .." (Doc. 16-2, Sec. 8) (emphasis added). This change is not determinative of the motion to compel arbitration, nor do the parties assert such.

> claims arising under . . . the Employment Retirement Income Security Act. . . .
>
> Either party desiring to pursue a claim against the other party will submit to the other party a written request to have such claim, dispute or difference resolved through impartial and confidential arbitration. . . .[2] Any such request for arbitration must be submitted within one year of the date when the dispute or difference first arose or within one year of when the Employee's employment ends, whichever occurs first, unless a party claims a violation of a specific statute having its own specific statute of limitations, in which event that statutory time limit will apply.

(Docs. 16-3–16-9 (the "Agreements"), § 8). The Agreements also state:

> Except as otherwise required under applicable law, Employee and Employer expressly intend and agree that class action and representative action procedures shall not be asserted, nor will they apply, in any arbitration pursuant to Section 8; Employee and Employer agree that each will not assert class action or representative action claims against the other in arbitration or otherwise; and Employee and Employer shall only submit their own, individual claims in arbitration and will not seek to represent the interests of any other person.

(*Id.* at § 8).[3]

Accordingly, the Court now addresses here Cintas' motion to compel individual arbitration and stay this proceeding under the Agreements.

---

[2] Hawkins' first employment agreement reads: "If any dispute or difference remains unresolved after the parties have conferred in good faith, either party desiring to pursue a claim against the other party will submit to the other party a written request to have such claim, dispute or difference resolved through impartial and confidential arbitration." (Doc. 16-2, § 8). This is again immaterial to the Court's decision on the motion to compel.

[3] This provision is not in Hawkins' first employment agreement. (*See* Doc. 16-2, § 8).

3

## II. STANDARD OF REVIEW

When asked by a party to compel arbitration under a contract, a federal court must determine whether the parties agreed to arbitrate the dispute at issue. *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000). Any ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration. *Id.* Courts are to examine the language of the contract in light of the strong federal policy in favor of arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (stating that the FAA "is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural polices to the contrary"). The "primary purpose" of the Federal Arbitration Action ("FAA") is to ensure "that private agreements to arbitrate are enforced according to their terms." *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford, Jr. Univ.*, 489 U.S. 468, 479 (1989).

Section 3 of the FAA provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. Section 3 thus requires a court in which suit has been brought "'upon any issue referable to arbitration under an agreement in writing for such arbitration' to stay

4

the court action pending arbitration once it is satisfied that the issue is arbitrable under the agreement." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 400 (1967) (quoting 9 U.S.C. § 3).[4]

In considering a motion to compel arbitration under the FAA, a court has four tasks: (1) it must determine whether the parties agreed to arbitration; (2) it must determine the scope of the arbitration agreement; (3) if federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and (4) if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration. *Stout*, 228 F.3d at 714.

In determining the scope of an arbitration agreement, it is proper "to ask if an action could be maintained without reference to the contract or relationship at issue." *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 395 (6th Cir. 2003). The Sixth Circuit applies "the cardinal rule that, in the absence of fraud or willful deceit, one who signs a contract which he has had an opportunity to read and understand, is bound by its provisions." *Allied Steel & Conveyors, Inc. v. Ford Motor Co.*, 277 F.2d 907, 913 (6th Cir. 1960). It is settled authority that doubts regarding the applicability of an arbitration clause should be resolved in favor of arbitration. *Id.* Indeed, "any doubts are to be resolved in favor of arbitration 'unless it may be said with positive assurance that the arbitration clause is not

---

[4] *See also Santos v. Am. Broad. Co.*, 866 F.2d 892, 894 (6th Cir. 1989) ("Where the parties to a contract that provides for arbitration have an arbitrable dispute, it is crystal clear that Congress has mandated that federal courts defer to contractual arbitration.").

5

susceptible of an interpretation that covers the asserted dispute.'" *Nestle Waters N. Am., Inc. v. Bollman*, 505 F.3d 498, 504 (6th Cir. 2007) (quoting *Masco Corp. v. Zurich Am. Ins. Co.*, 382 F.3d 624, 627 (6th Cir. 2004)). If parties contract to resolve their disputes in arbitration rather than in the courts, a party may not renege on that contract absent extreme circumstances. *Allied Steel & Conveyors*, 277 F.2d at 913. Furthermore, a district court's duty to enforce an arbitration agreement under the FAA is not diminished when a party bound by the agreement raises claims arising from statutory rights. *Stout*, 228 F.3d at 715.

## III. ANALYSIS

Participants bring this action under ERISA § 409 and § 502(a)(2), 29 U.S.C. §§ 1109, 1132(a)(2), and contend the action is brought on behalf of the Plan. (Doc. 18 at 5). Because the action is on behalf of the Plan, and there is no arbitration agreement between the Plan and Cintas, Participants contend that the motion to compel should be denied. (*Id.*) Cintas responds that because the Plan is a defined contribution plan with individual accounts, Participants' claims are inherently individualized. (Doc. 19 at 2–6). Because the claims are inherently individualized, Participants' Agreements mandating arbitration govern this dispute and Participants should be compelled to individually arbitrate. (*Id.*)

As explained in further detail, the Court finds that Participants may bring this action on behalf of the Plan and there is no agreement between the Plan and Cintas to arbitrate Plan disputes. Thus, the motion to compel arbitration and stay proceedings is denied.

### A. ERISA Claim on Behalf of the Plan

ERISA § 409 provides that a fiduciary will be liable and required to restore a benefit plan for losses caused by the fiduciary's breach of duties. 29 U.S.C. § 1109. Under ERISA § 502(a)(2), a civil action may be brought "by the secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of [ERISA]." 29 U.S.C. § 1132(a)(2).

As explained by the Supreme Court, these sections read together "authorize[] the Secretary of Labor as well as plan participants, beneficiaries, and fiduciaries, to bring actions *on behalf of a plan* to recover for violations of the obligations defined in § 409(a)." *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 253 (2008) (emphasis added). "The principal statutory duties imposed on fiduciaries by that section 'relate to the proper management, administration, and investment of fund assets,' with an eye toward ensuring that 'the benefits authorized by the plan' are ultimately paid to participants and beneficiaries." *Id.* (citing *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 (1985)). The Supreme Court has "stressed that the text of § 409(a) characterizes the relevant fiduciary relationship as one 'with respect to a plan,' and repeatedly identifies the 'plan' as the victim of any fiduciary breach and the recipient of any relief." *Id.* at 254 (citing *Russel*, 473 U.S. at 140).

The misconduct alleged by Participants falls "squarely within this category." *Id.* at 253. Similarly, the relief sought by Participants is to benefit the Plan, not individual accounts. For example, Participants seek relief including "accounting for profits, imposition of a constructive trust," restoring to the Plan profits lost from Defendants'

7

breach of duties, and other forms of equitable relief. (Doc. 1 at Prayer for Relief). Thus, Participants are correct when asserting the claims brought are alleged on behalf of the Plan.

However, Cintas asks this Court to read the Supreme Court's decision in *LaRue* as limiting claims under these sections to individual claims. (Docs. 16, 18). Cintas suggests that the dispute relates to a defined contribution plan and the claims are inherently individualized because of each participant's individual account. (Doc. 18 at 2–5). Cintas asserts that because the claims are inherently individualized, the claims are not brought "on behalf of the plan" and the individual participant's arbitration agreements should govern. (*Id*.)

*LaRue* concerned an individual plaintiff, suing only on his own behalf, against his former employer for breach of fiduciary duty for mismanaging his own individual retirement savings account. *Id*. at 250–51. In *LaRue*, the Supreme Court drew a distinction between defined benefit plans – which provide a fixed, pre-established benefit to participants – and defined contribution plans – which provide varying benefits based on the individual's contributions to an account, plan management, employer matching, and more. *Id*. at 252–56.

The Supreme Court went on to discuss fiduciary misconduct claims in each type of plan. "Misconduct by the administrators of a defined benefit plan will not affect an individual's entitlement to a defined benefit unless it creates or enhances the risk of default by the entire plan." *Id*. at 255. Thus, an individual in a defined benefit plan cannot bring an individual injury claim because the fiduciary relationship is between the

8

plan and the fiduciary. *Id*. at 254 (citing *Russel*, 473 U.S. at 140–41). *See also Thole v. U. S. Bank N.A*, 140 S. Ct. 1615, 1616 (2020) (defined benefit plan participants lack standing both individually and as representatives).

"For defined contribution plans, however, fiduciary misconduct need not threaten the solvency of the entire plan to reduce benefits below the amount that participants would otherwise receive." *Id*. at 255–56. "Whether a fiduciary breach diminishes plan assets payable to all participants and beneficiaries, or only to persons tied to particular individual accounts, it creates the kind of harms that concerned the draftsmen of § 409." *Id*. at 256. Thus, finding that an individual in a defined contribution plan could assert an individual injury claim for breach of fiduciary duty, the Supreme Court concluded: "We therefore hold that although § 502(a)(2) does not provide a remedy for individual injuries distinct from plan injuries, that provision does authorize recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account." *Id*.

Cintas would have this Court read *LaRue* as precluding plan claims in a defined contribution plan, such as the one in this case, and requiring only individual injury claims when a defined contribution plan is at issue. The Court declines to do so.

First, this reading is contrary to both the ERISA statute and the Supreme Court's recognition in *LaRue* that § 409 and § 502(a)(2) authorize plan participants and beneficiaries to bring breach of fiduciary duty claims, including those for mismanagement, on behalf of the plan. *Id*. at 253. Second, *LaRue* concerned an individual bringing a suit for mismanagement of his individual account and only for individual injuries, which is not the case here. As already discussed, Participants seek

9

Plan-wide relief. Finally, this Court reiterates the Supreme Court's holding: "§ 502(a)(2) does not provide a remedy for individual injuries distinct from plan injuries." *Id*. at 256. Thus, when a claimant's cause of action is focused on mismanagement of the entire plan, not specific individual accounts, the proper and only avenue of recourse is remedies under § 409 for the entire plan.

### B. Agreement to Arbitrate

Finding that Participants claims are brought on behalf of the Plan, the Court must determine whether there is a valid agreement to arbitrate between the Plan and Cintas. Cintas first suggests that the Participants' Agreements evidence a valid agreement to arbitrate between the parties. (Doc. 16). Participants respond that the individual employment agreement cannot bind the entire Plan to arbitration. (Doc. 18). Alternatively, Cintas argues, as manager of the Plan, the Plan consents to arbitration by filing the motion and/or Cintas can modify Plan documents to require Plan claims to proceed to arbitration. (Doc. 19).

As noted by the parties, there are few cases discussing whether an individual employment agreement can compel claims on behalf of a benefits plan to proceed to arbitration. However, the distinguishing factor in these cases is based in general contract principles: whether the plan itself agreed to arbitrate or was a party to the arbitration agreement.

For example, in *Munro v. Univ. of S. California*, employee participants alleged breach of fiduciary duty claims on behalf of benefits plans. 896 F.3d 1088 (9th Cir. 2018). The University moved to compel arbitration based on the employees' contracts

which required "all claims . . . that Employee may have against the University or any of its related entities . . . and all claims that the University may have against Employee." *Id*. at 1092. The Ninth Circuit affirmed the district court's denial of the motion to compel, first concluding that this agreement did not "extend to claims that other entities have against the University," such as the plans. *Id*.

The University also asserted a similar argument to Cintas – that *LaRue* stands for the proposition that only individuals can recover in the context of a defined contribution plan. *Id*. at 1093. The Ninth Circuit disagreed, finding the *LaRue* court made clear that "it is the plan, and not the individual beneficiaries or participants, that benefit from a winning claim for breach of fiduciary duty, even when the plan is a defined contribution plan." *Id*. (citing *LaRue*, 552 U.S. at 256). Similarly, because the plaintiffs were seeking "financial and equitable remedies to benefit the Plans and all affected participants and beneficiaries," the plaintiffs' claims were clearly on behalf of the plans, not individual accounts. *Id*. at 1094. Thus, the claims were outside the scope of the individual employment contracts. *Id*. at 1094.

Following *Munro*, the Ninth Circuit considered the same issue in *Dorman v. Charles Schwab Corp.*, 780 F. App'x 510 (9th Cir. 2019), *facts at* 934 F.3d 1107 (9th. Cir. 2019). In *Dorman*, the Ninth Circuit reversed the district court's denial of a motion to compel arbitration. 780 F. App'x at 514. The plaintiff initiated an action on behalf of a plan. However, the plan's documents at the time of plaintiff's employment required that "[a]ny claim, dispute or breach arising out of or in any way related to the Plan shall be settled by binding arbitration," and that any claim be arbitrated on an individual basis.

11

934 F.3d at 1110. Thus, because the Plan and the company consented to individual arbitration, the plaintiff should have been compelled to individually arbitrate. 780 F. App'x at 514.

The Sixth Circuit and other courts have reached similar conclusions in different scenarios. *See VanPamel v. TRW Vehicle Safety Sys., Inc.*, 723 F.3d 664, 669 (6th Cir. 2013) (ERISA claims on behalf of plan subject to arbitration because ERISA claims fell within scope of collective bargaining agreement); *Tennessee Tractor, LLC v. WH Administrators, Inc.*, No. 117CV02829STAEGB, 2018 WL 1277751, at *4 (W.D. Tenn. Mar. 12, 2018) (employees' claims on behalf of the plan not subject to arbitration provision in agreement between employer and plan administrator); *Smith v. Greatbanc Tr. Co.*, No. 20 C 2350, 2020 WL 4926560, at *4 (N.D. Ill. Aug. 21, 2020) (following *Munro*); *Ramos v. Natures Image, Inc.*, No. CV 19-7094 PSG (ASX), 2020 WL 2404902, at *7 (C.D. Cal. Feb. 19, 2020) (same).

This case is akin to *Munro*. Participants' Agreements contain similar provisions that "the rights and claims of Employee" will be arbitrated. (Agreements at Sec. 8). This provision is limited to the employee and does not extend to nonentities, such as claims on behalf of the Plan.[5] Further, unlike *Dorman*, Cintas provides no evidence that a Plan

---

[5] "Under certain circumstances a party may be bound to arbitrate disputes under the terms of a contract that the party did not sign." *MJR Int'l, Inc. v. Am. Arbitration Ass'n*, No. 06-CV-0937, 2009 WL 2824102, at *4 (S.D. Ohio Aug. 26, 2009), *aff'd sub nom.*, 398 F. App'x 115 (6th Cir. 2010) (citing *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 629 (6th Cir.2003) ("[A] nonsignatory may be bound to an arbitration agreement under ordinary contract and agency principles.")). "There are five recognized theories for binding nonsignatories to arbitration agreements: '(1) incorporation by reference, (2) assumption, (3) agency, (4) veil-piercing/alter ego, and (5) estoppel.'" *Id*. (quoting *Javitch*, 315 F.3d at 629). Cintas does not argue that one of these exceptions applies, nor does the Court find that the Plan falls under one of these theories.

12

document existed binding the Plan to arbitration. Thus, there is no valid agreement between the Plan and Cintas consenting to an arbitrable forum.

The Court also takes issue with Cintas' contention that the Plan either consents to arbitration by filing the motion to compel, or, alternatively, Cintas will simply amend the Plan documents to include an arbitration provision. This theory was rejected in *Brown on behalf of Henny Penny Corp. Employee Stock Ownership Plan v. Wilmington Tr., N.A.*, No. 3:17-CV-250, 2018 WL 3546186 (S.D. Ohio July 24, 2018) (Rice, J.) (overruling motion to compel arbitration and strike class allegations). "Although plan administrators and employers have broad discretion to modify the terms of a plan, those modifications do not necessarily bind individuals like Plaintiff, who have ceased all participation in the plan and whose cause of action accrued prior to the modification." *Id*. at *5. Here, "[a]llowing the fiduciary to unilaterally require plan participants to arbitrate claims for breach of fiduciary duty 'would, in a sense, be allowing the fox to guard the henhouse.'" *Id*. (quoting *Munro v. Univ. of S. California*, 2017 WL 1654075, at *6 (C.D. Cal. Mar. 23, 2017)).

Finally, because there is no arbitration agreement between the Plan and Cintas, Cintas' argument that the Plaintiffs should be compelled to arbitrate individually fails. (Doc. 19 at 10-11). "No party can be compelled under the FAA to arbitrate on a class-wide or collective basis unless it agrees to do so by contract." *Dorman*, 780 F. App'x 510, 514 (9th Cir. 2019) (citing *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 684 (2010)) (plan document's arbitration provision included class waiver). *See also*

*Brown*, 2018 WL 3546186 at *3 (plaintiff not prohibited from bringing class action because arbitration provision did not apply).[6]

Accordingly, finding that there is no valid agreement to arbitrate between the Plan and Cintas, the Court denies Cintas' motion to compel arbitration. Because there is no agreement, the Court need not reach whether Participants' claims are within the scope of any purported agreement.

## IV. CONCLUSION

Based upon the foregoing, Defendants' motion to compel arbitration (Doc. 15) is **DENIED**.

**IT IS SO ORDERED.**

Date:   1/27/2021                                                         *s/Timothy S. Black*
                                                                                       Timothy S. Black
                                                                                       United States District Judge

---

[6] Other courts have also taken issue with agreements requiring individual claims under § 502(a)(2) because these claims are inherently "brought in a representative capacity on behalf of the plan as a whole," in the interest of "the financial integrity of the plan." *Russell*, 473 U.S. at 142 n.9. *See, e.g., Smith*, 2020 WL 4926560, at *4 (N.D. Ill. Aug. 21, 2020) (arbitration agreement limiting § 502(a)(2) losses to individualized relief does "not comport with ERISA's remedial scheme, which goes beyond an individual participant's account and extends to the entire plan"); *Cryer v. Franklin Res., Inc.*, No. C 16-4265 CW, 2017 WL 4410103, at *4 (N.D. Cal. Oct. 4, 2017) (quotation omitted) ("The ability to file a § 502(a)(2) claim as a class action is an important one. Participants bringing a § 502(a)(2) claim act in a representative capacity on behalf of the plan and are bound to employ procedures to protect effectively the interests they purport to represent."). Because there is no valid agreement to arbitrate, the Court need not reach whether the arbitration agreement and class waiver at issue are unenforceable as a "prospective waiver of a party's right to pursue statutory remedies." *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 229 (2013).