**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

Deborah S. Hunt
Clerk

100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed: April 27, 2022

Mr. Mark Bruce Blocker
Mr. Robert N. Hochman
Mr. Christopher Kenneth Meyer
Ms. Caroline A. Wong
Ms. Mary Caroline Wood
Sidley Austin
One S. Dearborn Street
Chicago, IL 60603

Mr. Mark K. Gyandoh
Ms. Gabrielle P. Kelerchian
Mr. Donald R. Reavey
Capozzi Adler
2933 N. Front Street
Harrisburg, PA 17110

Re: Case No. 21-3156, *Raymond Hawkins, et al v. Cintas Corporation, et al*
Originating Case No.: 1:19-cv-01062

Dear Counsel,

The court today announced its decision in the above-styled case.

Enclosed is a copy of the court's published opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

Yours very truly,

Deborah S. Hunt, Clerk

Cathryn Lovely
Deputy Clerk

cc: Mr. Richard W. Nagel

Enclosures

Mandate to issue.

RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 22a0089p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

---

RAYMOND HAWKINS and ROBIN LUNG, individually and on behalf of all others similarly situated,

    *Plaintiffs-Appellees*,

  *v.*

CINTAS CORPORATION; INVESTMENT POLICY COMMITTEE; SCOTT D. FARMER, BOARD OF DIRECTORS OF CINTAS CORPORATION,

    *Defendants-Appellants*.

No. 21-3156

---

Appeal from the United States District Court for the Southern District of Ohio at Cincinnati.
No. 1:19-cv-01062—Timothy S. Black, District Judge.

Argued: December 9, 2021

Decided and Filed: April 27, 2022

Before: BOGGS, GIBBONS, and NALBANDIAN, Circuit Judges.

---

## COUNSEL

**ARGUED:** Robert N. Hochman, SIDLEY AUSTIN LLP, Chicago, Illinois, for Appellants. Mark K. Gyandoh, CAPOZZI ADLER, P.C., Harrisburg, Pennsylvania, for Appellees. **ON BRIEF:** Robert N. Hochman, Mark B. Blocker, Chris K. Meyer, Caroline A. Wong, M. Caroline Wood, SIDLEY AUSTIN LLP, Chicago, Illinois, for Appellants. Mark K. Gyandoh, Donald R. Reavey, Gabrielle Kelerchian, CAPOZZI ADLER, P.C., Harrisburg, Pennsylvania, for Appellees.

---

**OPINION**

---

BOGGS, Circuit Judge.  In deciding whether a case belongs in arbitration, a court typically asks whether the party bringing the claim has agreed to arbitrate.  But sometimes it is difficult to discern exactly *who* is bringing *what claim*.  Here, individual would-be plaintiffs agreed to arbitrate certain claims, but the claim they seek to adjudicate is brought through an unusual procedure on behalf of an abstract entity.

Plaintiffs-Appellees Raymond Hawkins and Robin Lung alleged that their former employer, Appellant Cintas Corporation, breached the fiduciary duties it owed to the company's retirement plan.  They brought a putative class action pursuant to § 502(a)(2) of the Employment Retirement Income Security Act of 1974 ("ERISA").  But the Plaintiffs had each signed employment agreements that contained arbitration provisions.  Cintas moved to compel arbitration, arguing that the Plaintiffs were bringing individual claims covered by those provisions.

This case presents issues of first impression for this court.  The weight of authority and the nature of § 502(a)(2) claims suggest that these claims belong to the plan, not to individual plaintiffs.  Therefore, the arbitration provisions in these individual employment agreements—which only establish the Plaintiffs' consent to arbitration, not the plan's—do not mandate that these claims be arbitrated.  Further, the actions of Cintas and the other defendants do not support a conclusion that the plan has consented to arbitration.  We therefore affirm the district court's denial of the motion to compel arbitration.

**I. BACKGROUND**

Appellant Cintas is a national uniform and business-supply company.  As with many companies, Cintas has established a retirement plan—the Cintas Partners' Plan (the "Plan")—for its employees.  The Plan is a "defined contribution" plan, meaning that the Plan's sponsor selects a "menu" of investment options in which each participant can invest.  Cintas is the Plan's

No. 21-3156                *Hawkins, et al. v. Cintas Corp., et al.*                Page 3

sponsor.  Each participant in the Plan maintains an individual account, the value of which is based on the amount contributed, market performance, and associated fees.[1]

Under § 402(a)(1) of ERISA, all plans must have one or more fiduciaries responsible for managing and administrating the plan.[2]  29 U.S.C. § 1102(a)(1).  ERISA imposes several duties on these fiduciaries.  Two are at issue in this appeal: (1) the duty of loyalty—managing the plan for the best interests of its participants and beneficiaries—and (2) the duty of prudence—managing the plan with the care and skill of a prudent person acting under like circumstances.

Plaintiffs Raymond Hawkins and Robin Lung, who were Cintas employees participating in the Plan, contend that Cintas breached both duties.  First, they argue that Cintas offered participants the ability to invest only in actively managed funds, rather than more cost-effective passively managed funds.  Second, they claim that Cintas charged the Plan imprudently expensive recordkeeping fees.

Hawkins and Lung sued Cintas, as well the Cintas Investment Policy Committee (which is tasked with administering the Plan) and the Cintas Board of Directors (which appoints members to the committee).[3]  The suit was brought as a putative class action; Plaintiffs seek to represent all participants in or beneficiaries of the Plan during the class period.

But Plaintiffs entered into multiple employment agreements with Cintas during the course of their employment.  While the various agreements differ slightly, all contained

---

[1]Defined-contribution plans differ from defined-benefit plans.  The Supreme Court has summarized the difference between the two kinds of plans:

> As its names imply, a "defined contribution plan" or "individual account plan" promises the participant the value of an individual account at retirement, which is largely a function of the amounts contributed to that account and the investment performance of those contributions. A "defined benefit plan," by contrast, generally promises the participant a fixed level of retirement income, which is typically based on the employee's years of service and compensation.

*LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 250 n.1 (2008) (citations omitted).

[2]Cintas does not dispute that it, as the Plan's sponsor, is such a fiduciary.  The Plaintiffs allege that each defendant is a fiduciary.

[3]Additional defendants include several John Does, who are members of the committee and other Cintas employees and officers.

No. 21-3156 *Hawkins, et al. v. Cintas Corp., et al.* Page 4

materially similar arbitration provisions and a provision preventing class actions.**[4]** A representative example of Section 8—the relevant section—includes the following language (with added emphasis):

> **The rights and claims of Employee covered by this Section 8, including the arbitration provisions below, specifically include but are not limited to all of Employee's rights or claims arising out of or in any way related to Employee's employment with Employer, such as rights or claims arising under** the Age Discrimination in Employment Act, as amended, Title VII of the Civil Rights Act of 1964, as amended (including amendments contained in the Civil Rights Act of 1991), the Americans With Disabilities Act, 42 U.S.C. § 1981, the Fair Labor Standards Act, **the Employee Retirement Income Security Act**, state anti-discrimination statutes, other state or local laws regarding employment, common law theories such as breach of express or implied contract, wrongful discharge defamation, and negligent or intentional infliction of emotional distress.
>
> . . .
>
> **Either party desiring to pursue a claim against the other party will submit to the other party a written request to have such claim, dispute or difference resolved through impartial and confidential arbitration.**
>
> . . .
>
> Except for workers' compensation claims, unemployment benefits claims, claims for a declaratory judgment or injunctive relief concerning any provision of Section 4 and claims not lawfully subject to arbitration, **the impartial arbitration proceeding, as provided above in this Section 8, will be the exclusive, final and binding method of resolving any and all disputes between Employer and Employee.**
>
> . . .
>
> Except as otherwise required under applicable law, Employee and Employer expressly intend and agree that class action and representative action procedures shall not be asserted, nor will they apply, in any arbitration pursuant to this Section 8; Employee and Employer agree that each will not assert class action or representative action claims against the other in arbitration or otherwise; and Employee and Employer shall only submit their own, individual claims in arbitration and will not seek to represent the interests of any other person.

---

**[4]**Hawkins signed employment agreements in 2011, 2014, and 2016. Lung signed employment agreements in 2013, 2014, 2015, 2016, and 2017. The parties agree that the agreements are functionally the same, except for Hawkins's 2011 agreement, which did not contain a class-action waiver.

Arguing that those agreements required Hawkins and Lung to arbitrate these claims, Cintas moved to compel arbitration and stay the federal proceedings. The district court denied both motions. It concluded that the action was brought on behalf of the Plan, and it was therefore irrelevant that Hawkins and Lung had consented to arbitration through their employment agreements. Because the Plan itself did not consent, the court reasoned, the matter was not subject to arbitration. Cintas now timely appeals.

## II. ANALYSIS

### A

We review a denial of a motion to compel arbitration de novo. *Huffman v. Hilltop Cos., LLC*, 747 F.3d 391, 394 (6th Cir. 2014). The Federal Arbitration Act, 9 U.S.C. §§ 1 et seq., requires district courts to compel arbitration "on issues as to which an arbitration agreement has been signed." *Atkins v. CGI Techs. & Sols., Inc.*, 724 F. App'x 383, 389 (6th Cir. 2018) (quoting *KPMG LLP v. Cocchi*, 565 U.S. 18, 22 (2011) (per curiam)). This requirement reflects "an emphatic federal policy in favor of arbitral dispute resolution." *Ibid.* (quoting *KPMG*, 565 U.S. at 21). Generally, "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The burden of proving that the claims are unsuited to arbitration rests with the party seeking to prevent arbitration. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000). Still, that policy must be balanced with "ERISA's policy . . . to provide 'ready access to the Federal courts.'" *Smith v. Aegon Cos. Pension Plan*, 769 F.3d 922, 931 (6th Cir. 2014) (quoting 29 U.S.C. § 1001(b)).

This court has not yet determined whether statutory ERISA claims are subject to arbitration. But "every other circuit to consider the issue" has held that "ERISA claims are generally arbitrable." *See Smith v. Bd. of Dirs. of Triad Mfg., Inc.*, 13 F.4th 613, 620 (7th Cir. 2021) (collecting cases from the Second, Third, Fifth, Eighth, Ninth, and Tenth Circuits). We need not reach that issue, however, because neither party argues that Plaintiffs' ERISA claims could not, in theory, be subject to arbitration.

"ERISA imposes high standards of fiduciary duty upon administrators of an ERISA plan." *Krohn v. Huron Mem'l Hosp.*, 173 F.3d 542, 547 (6th Cir. 1999). Section 502(a) of the statute authorizes civil enforcement actions. 29 U.S.C. § 1132(a). Relevant here, a civil action for breach of those fiduciary duties may be brought "by the Secretary [of Labor], or by a participant, beneficiary or fiduciary." *Id.* § 1132(a)(2); *see also LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 251 (2008) ("Section 502(a)(2) provides for suits to enforce the liability-creating provisions of § 409, concerning breaches of fiduciary duties that harm plans.").

**B**

Cintas contends that the Plaintiffs agreed to arbitrate all "rights and claims" relating to their employment, including the ERISA claims at issue here. The breach-of-fiduciary-duty claims and the "right" to assert them "belong," it argues, to the Plaintiffs alone, and therefore this case belongs in arbitration. Plaintiffs respond, and the district court agreed, that although Plaintiffs are bringing a putative class action, the claims belong to the Plan itself. It is irrelevant, according to Plaintiffs, that they may have agreed to arbitrate certain claims, since the Plan has not likewise consented to arbitration. We agree that the Plaintiffs' employment agreements do not force this case into arbitration.

1

Section 502(a)(2) suits are "brought in a representative capacity on behalf of the plan as a whole." *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 n.9 (1985). *Russell* featured a participant in a defined-benefit plan seeking damages for the plan administrator's delay in processing a disputed claim. *See id.* at 136-37, 144. The Supreme Court held that such a delay did not give rise to a private right of action and that the statute only contemplated relief for "the plan itself." *Id* at 144. More recently, in *LaRue*, the Court re-evaluated *Russell* in the context of a defined-contribution (as opposed to a defined-benefit) plan. 552 U.S. at 248.

There, the plaintiff alleged that he directed his employer to make certain changes to investments in his individual retirement account. *Id.* at 251. The employer failed to follow through, allegedly causing the plaintiff's account to be depleted. *Ibid.* Arguing that this failure

No. 21-3156                    *Hawkins, et al. v. Cintas Corp., et al.*                    Page 7

constituted a breach of fiduciary duty, the employee sued under § 502(a)(3). *Ibid*. On appeal, he contended that he was also entitled to relief under § 502(a)(2). *Ibid*.

The Court first observed that ERISA imposed statutory duties on plan fiduciaries to "ensur[e] that 'the benefits authorized by the plan' are ultimately paid to participants and beneficiaries." *Id*. at 253 (quoting *Russell*, 473 U.S. at 142). The plaintiff in *Russell*, the Court explained, "received all of the benefits to which she was contractually entitled." *Id.* at 254. She therefore was not entitled to recovery pursuant to § 502(a)(2) because the relevant fiduciary relationship was between the fiduciary and the plan, not the fiduciary and the plaintiff. *Ibid.* (citing *Russell*, 473 U.S. at 140). *Russell* "repeatedly identifies the 'plan' as the victim of any fiduciary breach and the recipient of any relief" in the defined-benefit plan context because misconduct by plan administrators only affects an individual's entitlement to a defined benefit if it risks depleting the entire plan. *Id.* at 254-55.

But with the advent of defined-contribution plans, fiduciary misconduct could "diminish[] plan assets payable to all participants and beneficiaries, or only to persons tied to particular individual accounts." *Id.* at 255-56. Therefore, *Russell*'s "emphasis on protecting the 'entire plan' from fiduciary misconduct" no longer applies in the defined-contribution context. *Id.* at 254. Now, the "victim" could be an individual account, even if the plan as a whole remains secure. *Id.* at 255-56. The Court "therefore [held] that although § 502(a)(2) does not provide a remedy for individual injuries distinct from plan injuries, that provision does authorize recovery for fiduciary breaches that impair the value of plan assets in a participant's individual account." *Id*. at 256.

*LaRue* therefore means that while any claims properly brought under § 502(a)(2) must be for injuries to the plan itself, § 502(a)(2) authorizes suits on behalf of a defined-contribution plan even if the harm is inherently individualized. *LaRue* does not, however, specifically hold that a § 502(a)(2) claim "belongs" to either the plaintiff or the plan itself. Consequently, we must look elsewhere to determine whether an arbitration provision that is binding only on a plan participant draws a § 502(a)(2) suit into arbitration.

No. 21-3156                *Hawkins, et al. v. Cintas Corp., et al.*                Page 8

2

To demonstrate that these claims belong to the Plan, Plaintiffs look to out-of-circuit cases analyzing *LaRue*. Primarily, they rely on *Munro v. University of Southern California.*, 896 F.3d 1088 (9th Cir. 2018).[5] That case presented facts nearly identical to this case. Employees signed arbitration agreements as part of their employment contracts requiring both the employer and employee to "arbitrate all claims that either the Employee or [the Employer] has against the other party." *Id.* at 1090. A group of employees filed a putative class action alleging breaches of fiduciary duty by administrators of two ERISA-governed retirement plans.[6] *Ibid*. The question before the court, as here, was whether the employer could compel the plaintiffs to arbitrate the breach-of-fiduciary-duty claims.

The Ninth Circuit looked to a different case which asked a similar question: "[W]hether a standard employment arbitration agreement covered *qui tam* claims brought by the employee on behalf of the United States under the False Claims Act ('FCA')." *Id.* at 1092 (citing *United States ex rel. Welch v. My Left Foot Children's Therapy, LLC*, 871 F.3d 791 (9th Cir. 2017)). There, "[b]ecause 'the underlying fraud claims asserted in a FCA case belong to the government and not to the relator,' [the Ninth Circuit] held that the claims were not claims that the employee had against the employer and therefore not within the scope of the arbitration agreements." *Ibid*. (quoting *Welch*, 871 F.3d at 800 & n.3). In analyzing whether § 502(a)(2) claims should be treated in the same fashion, the court observed:

> There is no shortage of similarities between *qui tam* suits under the FCA and suits for breach of fiduciary duty under ERISA. Most importantly, both *qui tam* relators and ERISA § 502(a)(2) plaintiffs are not seeking relief for themselves. A party filing a *qui tam* suit under the FCA seeks recovery only for injury done to the government, *Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 771–72, 120 S. Ct. 1858, 146 L.Ed.2d 836 (2000), and a plaintiff bringing a suit

---

[5]Plaintiffs also suggest that a recent Second Circuit opinion, *Cooper v. Ruane Cunniff & Goldfarb Inc.*, 990 F.3d 173 (2d Cir. 2021), supports their position. While the court held that a plaintiff's § 502(a)(2) suit did not fall under an arbitration provision in his employment agreement, it reached this conclusion because the breach-of-fiduciary-duty claims did not "relate to" his employment. *Cooper*, 990 F.3d at 185. That reasoning, therefore, does not assist us in determining whether a § 502(a)(2) claim "belongs to" the Plan or the Plaintiffs.

[6]While the opinion does not expressly state that the plaintiffs brought suit pursuant to § 502(a)(2), it is clear from context that the case concerned that type of suit. *See Munro*, 896 F.3d at 1092.

for breach of fiduciary duty similarly seeks recovery only for injury done to the plan. *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 552 U.S. 248, 256, 128 S. Ct. 1020, 169 L.Ed.2d 847 (2008); *accord id.* at 261, 128 S. Ct. 1020 (Thomas, J., concurring).

*Id.* at 1092–93.

The court in *Munro* interpreted the principle in *Welch* as "compelled by [the] recognition that the government, rather than the relator, stands to benefit most from the litigation." *Id.* at 1093 (citing *Welch*, 871 F.3d at 800). The *qui tam* claims were outside the scope of the arbitration agreement even though "the relator is entitled to more than a nominal share of the government's recovery" and "the FCA provides that the relator brings suit not only for 'the United States Government' but also 'for the person.'" *Ibid.* (quoting *Welch*, 871 F.3d at 800 and 31 U.S.C. § 3730(b)). Critically, the "language [in the arbitration agreements] [did] not extend to claims that other entities have against the [employer.]" *Id.* at 1092.

Nor did *LaRue* compel a different result: "The relief sought demonstrate[d] that the Employees [were] bringing their claims to benefit their respective Plans across the board, not just to benefit their own accounts as in *LaRue*." *Id.* at 1094. Ultimately, then, even though § 502(a)(2) claims "belong" in part to the plaintiffs, *Munro* held that they are not subject to arbitration notwithstanding individual employment agreements because the claims are asserted on behalf of the ERISA plan as a whole.

While *Munro* is not binding on this court, its reasoning is persuasive and supported by the history of § 502(a)(2) suits. The Third Circuit's discussion of statutory standing in *Graden v. Conexant Systems Inc.* sheds light on the representative nature of § 502(a)(2) claims:

> As [§ 502(a)(2)] addresses losses to ERISA plans resulting from fiduciary misconduct, the Supreme Court has held that suits under it are derivative in nature—that is, while various parties are entitled to bring suit (participants, beneficiaries, fiduciaries, and the Secretary of Labor), they do so on behalf of the plan itself. *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 144, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985); *see also In re Schering-Plough Corp. ERISA Litigation*, 420 F.3d 231, 241 (3d Cir.2005). Consequently, the plan takes legal title to any recovery, which then inures to the benefit of its participants and beneficiaries.

496 F.3d 291, 295 (3d Cir. 2007) (footnote omitted).

The derivative nature of these actions comes from common-law trust principles: "[§ 502(a)(2)] merely codifies for ERISA participants and beneficiaries a classic trust-law process for recovering trust losses through a suit on behalf of the trust." *Id*. at 296. Although § 502(a)(2) claims are brought by individual plaintiffs, it is the plan that takes legal claim to the recovery, suggesting that the claim really "belongs" to the Plan. And because § 502(a)(2) claims "belong" to the Plan, an arbitration agreement that binds only individual participants cannot bring such claims into arbitration.

### 3

Cintas stops short of arguing that *Munro* was wrongly decided.**7** Instead, it aims to distinguish the employment agreements in *Munro* from those signed by Hawkins and Lung. While the agreements in *Munro* required the employees to "arbitrate 'all claims'," *Munro*, 896 F.3d at 1092, the agreements here, as Cintas recites, "cover '***all*** of Employee's ***rights or claims*** . . . arising under . . . ***the Employee Retirement Income Security Act***.' By contrast, the agreements in *Munro* covered only 'claims' of the employees—not any 'rights'—and they did not refer to ERISA at all." Appellant Br. at 21 (emphasis and alterations in original) (citations omitted). The "right" to bring the § 502(a)(2) claim, the argument goes, "indisputably belongs to Plaintiffs," because the statute "confers on 'participants,' but not plans, the right to assert claims for breach of fiduciary duty under ERISA." *Ibid*.

But the inclusion of the word "rights" does not render the Plaintiffs' agreements fundamentally different from the agreements in *Munro* and *Welch*. Cintas does not provide any case law interpreting the word "rights." And Plaintiffs' "right," even according to Cintas, is to bring a representative action pursuant to § 502(a)(2). Cintas does not explain how it would be possible to arbitrate such a "right" (or any "right" at all).

---

**7**In arguing that the Plan has consented to arbitration, however, Cintas suggests that *Munro*'s analogy between FCA claims and § 502(a)(2) claims is misguided. FCA claims, according to Cintas, are entirely unlike § 502(a)(2) claims. But Cintas overstates its point. While it does cite differences between the statutory schemes, the fundamental point remains the same: Both statutes require a plaintiff to bring suit in the plaintiff's own name on behalf of a non-party entity, and the remedy is paid out to that non-party entity. In fact, as *Munro* explains, FCA claims "belong" more to the plaintiff than a § 502(a)(2) suit, because in FCA claims the relator is statutorily entitled to a portion of the recovery. *See Munro*, 896 F.3d at 1094. ("If anything, because recovery under ERISA § 409(a) is recovery singularly for the plan, the *qui tam* relator has a stronger stake in the outcome of an FCA case than does a § 502(a)(2) plaintiff in an ERISA claim.") (citations omitted).

Moreover, Cintas's argument glides over the text of the employment agreements, which do not expressly require employees to "arbitrate" all "rights." Instead, the arbitration section contains three key provisions. The first is: "The rights and claims of Employee covered by this Section 8, including the arbitration provisions below, specifically include but are not limited to all of Employee's rights or claims arising out of or in any way related to Employee's employment with Employer, such as rights or claims arising under [ERISA]." The second relevant provision, with added emphasis, is: "Either party desiring to pursue a claim against the other party will submit to the other party a written request to have such *claim, dispute or difference* resolved through impartial and confidential arbitration." The third, finally, is:

> "Except for workers' compensation claims, unemployment benefits claims, claims for a declaratory judgment or injunctive relief concerning any provision of Section 4 and claims not lawfully subject to arbitration, the impartial arbitration proceeding, as provided above in this Section 8, will be the exclusive, final and binding method of resolving any and all disputes between Employer and Employee."

In other words, a "claim, dispute or difference" is subject to arbitration, and the employee's ERISA-related rights and claims are "covered" by the "arbitration provision." So it is not "rights" that are subject to arbitration, but "claims," "disputes," and "differences." The arbitration provisions in Plaintiffs' employment agreements, therefore, are not materially different from the corresponding provisions in *Munro* (employees agreed to arbitrate "all claims") and *Welch* (employees agreed to arbitrate "all disputes"). 896 F.3d at 1092; 871 F.3d at 797-98.

Cintas also argues that, unlike the Plaintiffs in *Munro*, the Plaintiffs here are actually asserting claims on their own behalf, not on behalf of the Plan. First, it distinguishes defined-contribution plans (such as the Plan) from defined-benefit plans and asserts that the former claims belong to the individual participant because "any relief that the participant obtains depends on the value of her individual account and redounds entirely to her." True, the Ninth Circuit has observed, in dicta, that an ERISA claim "belonged to the individual plaintiff" and not the plan. *Comer v. Micor, Inc.*, 436 F.3d 1098, 1103 (9th Cir. 2006). But the context was different—the court was discussing its holding in a prior case where it declined to treat the plan

as the "real plaintiff" because doing so would unfairly bar the plaintiff's claim due to a statute of limitations. *Ibid.* (quoting *Landwehr v. DuPree*, 72 F.3d 726, 732 (9th Cir. 1995)).

Moreover, interpreting the claim as belonging to the individual, rather than the Plan, appears to conflict with *LaRue*, which held that "§ 502(a)(2) does not provide a remedy for individual injuries distinct from plan injuries." 552 U.S. at 256; *accord id.* at 261 ("The plain text of § 409(a), which uses the term 'plan' five times, leaves no doubt that § 502(a)(2) authorizes recovery only for the plan.") (Thomas, J., concurring in the judgment). The fact that the individual Plaintiffs will indirectly benefit from a remedy accruing to the Plan as a whole does not render the claims individualized.

Nor does Cintas's selective quotation of the Complaint persuade otherwise. It is true that Plaintiffs state that they are seeking relief "on behalf of themselves." But the Complaint plainly seeks relief for the Plan as a whole and expressly states that Plaintiffs are suing on behalf of the Plan. It is also true that Plaintiffs are proceeding as a putative class. That appears to be due, however, to the unusual representative nature of a § 502(a)(2) action. There is no indication that Plaintiffs seek relief for actions that affected them individually, as in *LaRue*. Instead, Plaintiffs argue that Cintas breached its fiduciary duties by offering higher-cost investment options and charging excessive recordkeeping fees. Those alleged breaches do not impact the Plaintiffs specifically; the harm (and the recovery) is to the Plan.

Cintas's other examples supposedly demonstrating that Plaintiffs "understood" they were filing individual claims fare similarly. For example, Cintas notes that Plaintiffs brought a putative class action, contending that if they were truly representing the Plan, and not individuals, this would be unnecessary. It also notes that Plaintiffs seek attorney's fees for their own attorneys, though these attorneys do not represent the Plan.

Those arguments are unpersuasive. The fact that Plaintiffs are seeking certain relief, some of which they may ultimately not be entitled to, does not bear on the legal status of their claims. And Plaintiffs do not concede that their action requires an ultimate grant of class certification. Instead, they argue, they proceeded as a class because some courts have held "that the representative nature of the section 502(a)(2) right of action implies that plan participants

must employ some procedures to protect effectively the interests they purport to represent." *Coan v. Kaufman*, 457 F.3d 250, 259 (2d Cir. 2006). Although Cintas cites a Seventh Circuit case, *Spano v. The Boeing Co.*, 633 F.3d 574 (7th Cir. 2011), to suggest that the class-action context implies individual claims, that case in fact cuts against its argument. In *Spano*, the court evaluated whether *LaRue* permitted class actions for participants in defined-contribution plans. *See id.* at 579–85. It distinguished "between an injury to one person's retirement account that affects only that person, and an injury to one account that qualifies as a plan injury. The latter kind of injury potentially would be appropriate for class treatment, while the former would not." *Id.* at 581. The Plaintiffs' injuries here are, as discussed above, injuries to the Plan as a whole. If, for instance, the named Plaintiffs were to be swapped out with two other employees, nothing material in the complaint would need to be changed. Plaintiffs' class-action posture does not suggest that they are bringing individual, as opposed to Plan, claims.

A different sort of claim might change the analysis. In *LaRue*, for example, Chief Justice Roberts suggested that some suits masquerading as § 502(a)(2) claims should instead be brought pursuant to § 503(a)(1)(B). *See LaRue*, 552 U.S. at 257-58 (Roberts, C.J., concurring in part and concurring in the judgment). "That provision allows a plan participant or beneficiary 'to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.'" *Id.* at 257 (quoting 29 U.S.C. § 1132(a)(1)(B)). When suits should really be brought under § 503(a)(1)(B), relief under § 502(a)(2) may not be available. *Id.* at 258.

But the claim in *LaRue* had more hallmarks of a § 503(a)(1)(B) claim than does the claim brought by these Plaintiffs. LaRue's claim was "a claim for benefits that turns on the application and interpretation of the plan terms, specifically those governing investment options and how to exercise them." *Id.* at 257. Plaintiffs, on the other hand, allege that the defendants violated fiduciary duties rather than the Plan terms themselves. Had Plaintiffs brought a claim under § 503(a)(1)(B), or a claim that should have been brought under that section, then it might be the kind of individual claim subject to arbitration under an individual participant's employment agreement. And while we need not decide whether a § 502(a)(2) claim could ever be covered by

an individual employment agreement's arbitration provision, we hold that these Plaintiffs' claims are not covered by the employment agreements in this case.

Ultimately, the Plaintiffs are seeking Plan-wide relief through a statutory mechanism that is designed for representative actions on behalf of the Plan. The weight of authority suggests that these claims should be thought of as Plan claims, not Plaintiffs' claims. And because the arbitration provisions only establish the Plaintiffs' consent to arbitration, the employment agreements do not subject these claims to arbitration.

## C

### 1

Even assuming *arguendo* that the claims here are the Plaintiffs' claims, or that it is Plaintiffs' right to bring the claim and that "right" is covered by the arbitration provision, compelling arbitration would still be improper absent Plan consent. First, the "right" to bring the claim is not necessarily exclusive. Section 502(a)(2) claims belong to the Plan as well. *See In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 594 (3d Cir. 2009) ("Section 502(a)(2) claims are, by their nature, plan claims."). Plaintiffs compare this situation to a release of claims, where one party cannot unilaterally waive another's rights. They cite a wide body of case law—albeit none from this court—holding that individuals cannot release a defined-contribution plan's right to recover for breaches of fiduciary duty. *See, e.g.*, *ibid.* ("[A] number of courts have held that, as a matter of law, an individual cannot release the plan's claims . . . ."); *Bowles v. Reade*, 198 F.3d 752, 760 (9th Cir. 1999) ("Because Bowles's claims are not truly individual, it was proper for the district court to conclude that Bowles could not settle them without The Plans' consent."); *Leber v. Citigroup 401(k) Plan Inv. Comm.*, 323 F.R.D. 145, 161 (S.D.N.Y. 2017) ("In cases brought on behalf of a plan, most courts have held that individuals do not have the authority to release a defined contribution plan's right to recover for breaches of fiduciary duty; the consent of the plan is required for a release of 29 U.S.C. § 1132(a)(2) claims.") (quotation marks and citation omitted).

Cintas responds that waivers and releases are the wrong analogy. Instead, it urges, we should think of arbitration provisions as specialized forum-selection clauses: Just as Plaintiffs

chose to bring this case in Ohio federal court, so too they "chose" to arbitrate ERISA claims. Cintas cites *Smith*, 769 F.3d 922, for this proposition. There, this court considered whether ERISA precluded the application of a venue-selection clause in the plan documents. *Id*. at 931-33. To support the conclusion that those clauses were enforceable, we observed that "[w]e have previously upheld the validity of mandatory arbitration clauses in ERISA plans." *Id*. at 932 (citing *Simon v. Pfizer Inc*., 398 F.3d 765, 773 (6th Cir. 2005)). But in *Simon*, the claims subject to arbitration stemmed from the same agreement that contained the arbitration provision. 398 F.3d at 772-73. And, moreover, we held that the plaintiff's statutory ERISA claims were not subject to arbitration because the arbitration provision's scope was limited to disputes concerning termination. *Id.* at 775-76. In both decisions, then, arbitration provisions in the plan documents were dispositive; individual employment agreements did not play a role. *Smith* does not therefore suggest that individuals can consent to arbitration without the consent of the Plan. Nor does Cintas provide any authority suggesting that Plaintiffs can unilaterally bind an ERISA plan to arbitration in the absence of an arbitration provision in the plan documents or some other manifestation of the plan's consent.

2

Finally, Cintas argues in the alternative that even if the Plan's consent is required, it nonetheless should prevail because the Plan *has* consented to arbitration here. Noting that the Plan can only act through its agents, it suggests that a plan sponsor, acting alone, can enter into agreements that bind a plan. It also suggests that because the sponsor has consented to arbitration (including by filing this lawsuit) the Plan has also consented. But Cintas stretches case law too far. True, we have held that non-signatories may be bound to an arbitration agreement through agency principles. *See Crossville Med. Oncology, P.C. v. Glenwood Sys., LLC*, 310 F. App'x 858, 860 (6th Cir. 2009) (quoting *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 629 (6th Cir. 2003)). But *Crossville* bound a non-signatory to an arbitration agreement only because the signatory entity was its alter ego. *Ibid.* The same is true of the entities in *Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110, 1122 (7th Cir. 1993). Cintas does not provide any authority suggesting that the relationship between an ERISA plan and its sponsor is akin to that of alter-ego business entities.

No. 21-3156  *Hawkins, et al. v. Cintas Corp., et al.*  Page 16

Its estoppel theory is similarly underdeveloped.**8**  But neither of the two cited cases involved arbitration.  *Deschamps v. Bridgestone Americas, Inc. Salaried Employees Retirement Plan* discussed equitable estoppel in the ERISA context and listed several elements required for a finding of equitable estoppel.  *See* 840 F.3d 267, 273 (6th Cir. 2016).  The same is true of *Paul v. Detroit Edison Co. & Michigan Consolidated Gas Co. Pension Plan*, 642 F. App'x 588, 593 (6th Cir. 2016).  Cintas does not attempt to explain how those requirements are met here.

The fact that other non-signatories to the employment agreements, such as Cintas's board, investment policy committee, and CEO, are parties to the lawsuit also does not help Cintas's position.  Cintas suggests that including them as defendants constitutes a tacit admission that those parties consented to arbitration, and that the Plan should be treated like these non-signatories.  But Plaintiffs have not suggested that those parties have in fact consented to arbitration.  Instead, the lawsuit alleges that those parties, acting on behalf of Cintas, have breached fiduciary duties owed to the Plan.

Ultimately, Cintas's position dissolves the distinction between the Plan sponsor and the Plan as a legal entity.  Moreover, as the district court observed, Cintas is hinting that it should be able to unilaterally decide it wants to arbitrate claims against itself.  *See Brown ex rel. Henny Penny Corp. Emp. Stock Ownership Plan v. Wilmington Tr., N.A.*, No. 3:17-cv-250, 2018 WL 3546186, at *5 (S.D. Ohio July 24, 2018) ("Allowing the fiduciary to unilaterally require plan participants to arbitrate claims for breach of fiduciary duty would, in a sense, be allowing the fox to guard the henhouse.") (quotation marks and citation omitted).  True, Cintas could amend the plan documents to include an arbitration provision, which might accomplish the same goal.  But we need not, and do not, decide whether an arbitration provision in the plan documents would subject § 502(a)(2) claims to arbitration.

In the absence of a sufficient manifestation of the Plan's consent to arbitrate these claims, we hold that the Plan has not consented to arbitration.  There is, therefore, no basis for the Plaintiffs' claims to be arbitrated.

---

**8**Cintas says that "this Court has even held that a plan sponsor's actions can bind a plan under an estoppel theory, *without* the formation of an enforceable agreement entered into by either the plan sponsor or the plan." Appellant Br. at 32.  It then cites *Deschamps* and *Paul*. *Ibid.*

No. 21-3156                  *Hawkins, et al. v. Cintas Corp., et al.*                  Page 17

### III.  CONCLUSION

For the reasons given above, we **AFFIRM** the district court's conclusion that the § 502(a)(2) claims are not covered by the arbitration provisions in the Plaintiffs' respective employment agreements and that the Plan's consent is required for arbitration.  We further **AFFIRM** the district court's ruling that the Plan has not in fact consented to arbitration.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 21-3156

RAYMOND HAWKINS and ROBIN LUNG, individually and on behalf of all others similarly situated,

    Plaintiffs - Appellees,

    v.

CINTAS CORPORATION; INVESTMENT POLICY COMMITTEE; SCOTT D. FARMER, BOARD OF DIRECTORS OF CINTAS CORPORATION,

    Defendants - Appellants.

**FILED**
Apr 27, 2022
DEBORAH S. HUNT, Clerk

Before: BOGGS, GIBBONS, and NALBANDIAN, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.

THIS CAUSE was heard on the record from the district court and was argued by counsel.

IN CONSIDERATION THEREOF, it is ORDERED that the judgment of the district court is AFFIRMED.

**ENTERED BY ORDER OF THE COURT**

Deborah S. Hunt, Clerk