**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

RAYMOND HAWKINS, ROBIN LUNG,
NEEDY KRISINA BAJAO-WIRTJES,
RACHEAL LOVELL NEELY, SOMMER
MOORE, ADAM DIPZINSKI, JONATHAN
WILSON, ISMAEL ATAYDE-
GONZALES, CARLOS CANO, CAROLA
SPURLOCK, LEIGHA AYRES, and
ALVARO CRUZADO, individually and on
behalf of all others similarly situated,

      Plaintiffs,

  v.

CINTAS CORPORATION, BOARD OF
DIRECTORS OF CINTAS
CORPORATION, SCOTT D. FARMER,
INVESTMENT POLICY COMMITTEE,
and JOHN DOES 1-30.

      Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**CIVIL ACTION NO**.: 1:19-cv-01062-JPH

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT, CERTIFICATION OF
SETTLEMENT CLASS, AND APPROVAL OF PLAN OF ALLOCATION**

# TABLE OF CONTENTS

I.      INTRODUCTION ...........................................................................................1

II.     BACKGROUND ............................................................................................2

III.    SETTLEMENT NEGOTIATIONS ................................................................4

IV.     THE PROPOSED SETTLEMENT .................................................................5

V.      THE NOTICE PLAN HAS BEEN EFFECTIVELY IMPLEMENTED ............5

VI.     THE PROPOSED SETTLEMENT SHOULD BE APPROVED ........................7

        A.      Legal Standards...............................................................................7

        B.      The Settlement Satisfied the Sixth Circuit's Factors Underscoring Its
                Fairness, Reasonableness, and Adequacy ..............................................8

                1.      The risk of fraud or collusion....................................................8

                2.      The complexity, expense, and likely duration of the litigation ..................9

                3.      The amount of discovery engaged in by the parties  .................................10

                4.      The likelihood of success on the merits....................................11

                5.      The opinions of class counsel and class representatives............................13

                6.      The reaction of absent class members .......................................14

                7.      The public interest.............................................................14

VII.    THE REQUIREMENTS OF FED. R. CIV. P. 23(e)(2) ARE SATISFIED......................15

                (1)     Effectiveness of Plan Distribution .............................................15

                (2)     Terms of Proposed Attorneys' Fees.........................................16

                (3)     Equitable Treatment of Class Members.....................................16

VIII.   THE PLAN OF ALLOCATION SHOULD BE FINALLY APPROVED........................17

IX.     FINAL CERTIFICATION OF THE SETTLEMENT CLASS IS WARRANTED ..........18

A.      The Proposed Class Meets the Requirements of Rule 23(b)(1) of the
        Federal Rules of Civil Procedure ........................................................................18

B.      Adequacy of Named Plaintiffs and Class Counsel ................................................19

X.      CONCLUSION ................................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Beach v. JPMorgan Chase Bank, N.A.*,
2019 WL 2428631 (S.D.N.Y. June 11, 2019) ...............................................................19

*Bekker v. Neuberger Berman Grp. 401(k) Plan Inv. Comm.*,
504 F. Supp. 3d 265 (S.D.N.Y. 2020).........................................................................16

*Boley v. Universal Health Servs., Inc.*,
36 F.4th 124 (3d Cir. 2022) ........................................................................................18

*Borders v. Alternate Sol. Health Network, LLC*,
2021 WL 4868512 (S.D. Ohio May 17, 2021) .....................................................13, 16

*Brent v. Midland Funding, LLC*,
2011 WL 3862363 (N.D. Ohio Sept. 1, 2011 ...............................................................9

*In re Broadwing, Inc. ERISA Litig.*,
252 F.R.D. 369 (S.D. Ohio 2006) ...............................................................................15

*In re Cardizem CD Antitrust Litig.*,
218 F.R.D. 508 (E.D. Mich. 2003) ..............................................................................14

*Carr v. Guardian Healthcare Holdings, Inc.*,
2022 WL 501206 (S.D. Ohio Jan. 19, 2022) ...........................................................8, 14

*Cassell v. Vanderbilt Univ.*,
2018 WL 5264640 (M.D. Tenn. Oct. 23, 2018) ..........................................................19

*Cates v. Trustees of Columbia Univ.*,
2021 WL 4847890 (S.D.N.Y. Oct. 18, 2021) ..............................................................16

*Cunningham et al. v. Cornell Univ.*, ......................................................................19
2019 WL 275827 (S.D.N.Y. Jan. 22, 2019)

*Déjà Vu Servs.*,
925 F.3d at 895 (6th Cir. 2003)....................................................................................*11*

*In re Delphi Corp. Securities, Derivative*,
248 F.R.D. 483 (E.D. Mich. 2008) ...................................................................10, 14, 17

*Diaz v. BTG Int'l Inc*
2021 WL 2414580 (E.D. Pa. June 14, 2021) ..................................................11, 12, 13
*Doe v. Ohio*,

2020 WL 728276 (S.D. Ohio Feb. 12, 2020) ................................................................8

*Does 1–2 v. Déjà Vu Servs., Inc.*,
925 F.3d 886 (6th Cir. 2019) ......................................................................................7

*Dover Glen Condo. Ass'n v. Oakland County*,
No. 22-11468 2022 WL 17337815 (E.D. Mich. Nov. 30, 2022)............................9, 10

*In re Dry Max Pampers Litig.*,
724 F.3d 713 (6th Cir. 2013) ....................................................................................19

*Fastener Dimensions, Inc. v. Mass. Mut. Life Ins. Co.*,
No. 12cv8918 (DLC), 2014 WL 5455473 (S.D.N.Y. Oct. 28, 2014)..........................15

*Fernandez v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*
2017 WL 7798110 (S.D. Fla. Dec. 18, 2017 ..............................................................16

*Ganci v. MBF Inspection Services, Inc.,, 15*
2019 WL 6485159, S.D. Ohio Dec. 3, 2019 ....................................................9, 14, 16

*Garner Props. & Mgmt., LLC v. City of Inkster*,
333 F.R.D. 614 (E.D. Mich. 2020) ......................................................................11, 14

*Granada Investments, Inc. v. DWG Corp.*,
962 F. 2d 1203 (6th Cir. 1992) ..................................................................................8

*Griffin v. Flagstar Bancorp, Inc.*,
2013 WL 6511860 (E. D. Mich. Dec. 12, 2013) ........................................10, 14, 16, 17

*Iannone et al., v. Autozone, Inc., et al.*,
No. 2:19-cv-02779-MSN-tmp (W.D. Tenn. Dec. 07, 2022)........................................18

*In re Ikon Office Solutions, Inc., Securities Litig.*,
194 F.R.D. 166 (E.D. Pa. 2000)..................................................................................17

*Jacobs v. Verizon Communications, Inc. et al.*,
2020 WL 5796165 (S.D.N.Y. Sept. 29, 2020)............................................................18

*Johnson v. Fujitsu Tech. & Business of America, Inc.*,
2018 WL 2183253 (N.D. Cal. May 11, 2018) ............................................................12

*Jones v. H&J Restaurants, LLC*,
2020 WL 6877577 (W.D. Ky. Nov. 23, 2020) ............................................................8

*Karg v. Transamerica Corp.*,
2020 WL 3400199 (N.D. Iowa Mar. 25, 2020) ..........................................................18

*Karpik v. Huntington Bancshares Inc.,*
No. 2:17-cv-1153, 2021 WL 757123 (S.D. Ohio Feb. 18, 2021) ..........................................*Passim*

*Kruger v. Novant Health, Inc.,*
2016 WL 6769066 (M.D.N.C. Sept. 29, 2016)......................................................................10, 16

*Law v. National Collegiate Athletic Ass'n,*
108 F.Supp.2d 1193 (D. Kan. 2000) ............................................................................................18

*McDonald v. Edward Jones,*
791 Fed.Appx. 638 (8th Cir. 2020)..............................................................................................16

*Millstein v. Holtz,*
2022 WL 18024840 (S.D. Fla. Dec. 30, 2022) ............................................................................17

*Mullins v. Data Mgmt. Co.,*
2021 WL 2820560 (S.D. Ohio June 21, 2021) ........................................................................15, 16

*Nunez, et al., v. B. Braun Medical, Inc., et al.,*
No. 5:20-cv-04195 (E.D. Pa. June 30, 2022)...............................................................................18

*In re Packaged Ice Antitrust Litig.,*
2011 U.S. Dist. LEXIS 150427 (E.D.Mich. Dec. 13, 2011)........................................................16

*Peck v. Air Evac EMS, Inc.,*
2019 WL 3219150 (E.D. Ky.  July 17, 2019).................................................................................8

*Pizarro v. Home Depot, Inc.,*
2020 WL 6939810 (N.D. Ga. Sept. 21, 2020) .............................................................................18

*Pledger v. Reliance Trust Co.,*
2021 WL 2253497 (N.D. Ga. Mar. 8, 2021)............................................................................9, 16

*Poplar Creek Dev. Co. v. Chesapeake Appalachia, LLC,*
636 F.3d 2354 (6th Cir. 2011) .....................................................................................................11

*In re Prandin Direct Purchaser Antitrust Litigation,*
2015 WL 1396473 (E.D. Mich. Jan. 20, 2015)............................................................................16

*Sacerdote v. New York Univ.,*
2018 WL 840364 (S.D.N.Y. Feb. 13, 2018)  ..............................................................................18

*Shy v. Navistar Int'l Corp.,*
2022 WL 2125574 (S.D. Ohio 2022).............................................................................................13

*Shy v. Navistar Int'l Corp.*,
2022 WL 2125574 (S.D. Ohio June 13, 2022) ....................................................7, 8, 9

*In re Skelaxin,*
2014 WL 2946459 (E.D. Tenn. June 30, 2014)..............................................................16

*Stengl et al. v. L3Harris Technologies, et al.*,
No. 6:22-cv-572 (M.D. Fla. June 5, 2023).....................................................................18

*In re Suntrust Banks, Inc. ERISA Litig.*,
2016 WL 4377131 (N.D. Ga. Aug. 17, 2016) ...............................................................18

*Swigart v. Fifth Third Bank,*
No. 1:11-cv-88, 2014 WL 3447947 (S.D. Ohio July 11, 2014) ...............................15, 16

*UAW v. General Motors Corp.*,
No. 05-cv-73991, 2006 WL 891151 (E.D. Mich. Mar. 31, 2006).......................8, 11, 15

*Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*,
No. 8:15-cv-01614 (C.D. Cal. July 30, 2018).................................................................12

*Vassalle v. Midland Funding LLC*,
708 F.3d 747, 759 (6th Cir. 2013) ...............................................................................7, 19

*Velazquez v. Mass. Fin. Servs. Co.*,
No. 1:17-cv-11249-RWZ (D. Mass. June 25, 2019)......................................................12

*Vellali v. Yale Univ.*,
33 F.R.D. 10 (D. Conn. 2019).........................................................................................18

*Wachala et al. v. Astella US LLC et al.*,
2022 WL 408108 (N.D. Ill. Feb. 10, 2022) ...................................................................18

*Williams v. Vukovich*,
720 F.2d 909 (6th Cir. 1983) ..........................................................................................13

**STATUTES**

29 U.S.C. § 1104(a) ...........................................................................................................1

FED. R. CIV. P. 23 ............................................................................................................20

FED. R. CIV. P.  23(b)(1) .................................................................................................18

FED. R. Civ. P. 23(e) .......................................................................................................20

FED. R. Civ. P. 23(e)(2) .............................................................................................15, 17

FED. R. CIV. P. 23(e)(2)(C)(ii),  (C)(iii), (C)(iv) and (D) ............................................................16

FED. R. CIV. P. 23(g) ......................................................................................................20

**Other Sources**

1 Herbert B. Newberg & Alba Conte, Newberg on Class Actions § 11.41 at 90 (4th Ed. 2002)... 8

Employee Retirement Income Security Act of 1974 ............................................................*Passim*

Restatement (Third) of Trusts § 100 ...........................................................................12

## I. INTRODUCTION

On April 19, 2024, the Court preliminarily approved the Settlement in this Action (ECF No. 74), which provides for the creation of a $4,000,000.00 Settlement Fund. On May 17, 2024, the Court granted Defendants' Unopposed Motion to Advance Fairness Hearing and Enter Amended Preliminary Approval Order (ECF No. 76). The Court issued an amended Order that changed the date of the Final Approval Hearing to July 17, 2024 (hereinafter "Preliminary Approval Order"). The Court's Preliminary Approval Order also, *inter alia*, conditionally certified a Settlement Class and appointed Plaintiffs as class representatives and Capozzi Adler, P.C ("Capozzi Adler") as Class Counsel. *Id*. Plaintiffs and Class Counsel believe each of these findings in the Preliminary Approval Order should be made final because the proposed Settlement represents an outstanding recovery. Class Counsel achieved this Settlement only after several months of extended arms' length negotiations by experienced counsel on both sides.

The Settlement Class has received full and fair notice of the terms of the Settlement through individualized direct mail and e-mail communication, along with a dedicated internet Settlement website, and toll-free number in accordance with the Preliminary Approval Order. After mailing the approved form of Notice of Class Action Settlement to the approximately 116,089 potential Settlement Class members, there have thus far been no objections.[1] Plaintiffs respectfully request this Court to enter the proposed Final Approval Order and Judgment approving the Settlement.

---

[1] Per the Preliminary Approval Order, the objection deadline has not yet elapsed. *See* ECF No. 76, ¶ 11 (setting July 3, 2024, as the objection deadline). To the extent any objections are filed regarding any aspect of the Settlement, Class Counsel will address the objection(s) in a supplemental filing to this Court in advance of the Final Approval Hearing no later than July 10, 2024. *Id*. at ¶ 12.

While Defendants do not agree with all averments and statements made in the instant memorandum, Defendants do not oppose the ultimate relief sought by Plaintiffs and submit that the Court should approve the settlement in this matter.

## II.     BACKGROUND[2]

Plaintiffs commenced this action by filing a complaint on December 13, 2019. (ECF No. 1).  The Complaint alleged violations of fiduciary duties of prudence, care, and loyalty imposed by ERISA § 404(a), 29 U.S.C. § 1104(a). Defendants filed a Motion to Compel Arbitration and Stay the Proceedings (ECF 15) on March 10, 2020.  The Court denied Defendants' motion to compel arbitration on January 27, 2021 (ECF 20). On February 10, 2021, Defendants filed a Notice of Appeal to the United States Circuit Court of Appeals for the Sixth Circuit (ECF 21). On February 10, 2021, Defendants simultaneously filed a Motion to Stay All Proceedings Pending Appeal (ECF 22).  Plaintiffs filed their Memorandum in Opposition to Defendants' Motion to Stay All Proceedings Pending Appeal (ECF 25) on March 3, 2021. On March 17, 2021, Defendants filed their Reply in Support of Motion to Stay All Proceedings Pending Appeal (ECF 28). The Court granted Defendants' motion to stay on April 15, 2021 (ECF 29).

Defendants filed their Brief in the United States Court of Appeals for the Sixth Circuit (ECF 24) on June 14, 2021. Plaintiffs filed their Brief (ECF 27) on July 28, 2021.  Defendants filed their Reply Brief (ECF 34) on September 1, 2021.  Argument was held on December 9, 2021. The Sixth Circuit issued its Opinion (ECF 30) on April 27, 2022, affirming the District Court 's decision denying Defendants' motion to compel arbitration. Defendants filed a Petition for a Writ of Certiorari with the Supreme Court of the United States (ECF 34) on September 8, 2022.  The

---

[2] The full procedural history of this matter is recounted in the Gyandoh Decl. at ¶¶ 3-28.

Supreme Court entered an order denying the Petition for a Writ of Certiorari (ECF 36) on January 9, 2023.

Defendants filed a Motion to Dismiss the Complaint (ECF 39) on February 28, 2023. On April 10, 2023, Plaintiffs filed a First Amended Class Action Complaint (ECF 43). The Court issued an Order Denying Without Prejudice Defendants' Motion to Dismiss on April 17, 2023 (ECF 44). Defendants filed their Motion to Dismiss the Amended Complaint (ECF 47) on April 21, 2023. Plaintiffs filed a Memorandum of Law in Support of their Opposition to Defendants' Motion to Dismiss the Amended Complaint (ECF 49) on May 22, 2023. While the Motion to Dismiss was pending Defendants submitted two notices of Supplemental Authority (ECF 52), and Plaintiffs submitted a response and five notices of Supplemental Authorities (ECFs 51, 53, 54, 62, 63, 65).

Before filing the Complaint, Plaintiffs conducted informal discovery by investigating publicly filed Plan documents, reviewing the Plan information of the named Plaintiffs, and consulting with experts. Gyandoh Decl., ¶ 4. On October 4, 2019, before filing suit, Plaintiffs requested numerous documents and information from Defendants pursuant to Section 104(b)(4) of ERISA. *Id.* at ¶ 3. Defendants responded by providing numerous documents on May 23, 2020, which Plaintiffs reviewed. *Id.* On January 31, 2023, Plaintiffs served their First Set of Interrogatories and First Request for Production of Documents on Defendants. *Id.* at ¶ 16. On July 28, 2023, Defendants and Plaintiffs served Initial Disclosures. *Id.* at ¶ 21. On August 21, 2023, Defendants served their First Set of Interrogatories and Requests for Production of Documents on Plaintiffs. *Id.* at ¶ 22. On September 21, 2023, Defendants served their Responses and Objections to Plaintiffs' First Interrogatories and Requests for Production of Documents. *Id.* at ¶ 23. On

October 4, 2023, Plaintiffs served their Responses to Defendants' First Requests for Interrogatories and Requests for Production of Documents. *Id*. at ¶ 24.

## III.    SETTLEMENT NEGOTIATIONS

On April 20, 2021, Plaintiffs sent Defendants their initial settlement demand. Gyandoh Decl., ¶ 25. The demand was withdrawn upon the Parties' failure to resolve the dispute. *Id*. On June 27, 2023, Plaintiffs sent Defendants their updated settlement demand with supporting documents. *Id*. at ¶ 26. While the Motion to Dismiss was still pending, the Parties voluntarily attended a mediation session with Robert A. Meyer of JAMS, who is well-versed and experienced in mediating ERISA matters. Gyandoh Decl., ¶ 27; *see also* curriculum vitae of Mr. Meyer at https://www.jamsadr.com/meyer/. The session took place on October 11, 2023.  *Id.*  On November 3, 2023, the Parties filed a Joint Motion to Stay proceedings and informed the Court they reached a settlement in principle (ECF 66).

Although formal expert discovery did not commence, throughout this process, Plaintiffs' counsel consulted with experts regarding the extent of damages the Plan sustained as a result of Defendants' alleged breaches of fiduciary duty. The Parties reached a settlement after reviewing all of the relevant information, including documents produced by Defendants, and both Parties evaluated numerous damages scenarios. Plaintiffs claimed maximum potential damages to the Plan to be in the range of $11.6 million to $13.3 million before calculation of prejudgment interest. This amount reflected claimed damages based on Plaintiffs' theory that Defendants failed to obtain cheaper bundled recordkeeping and administrative services between $23 to $28 per participant as early as the start of the Class Period. Gyandoh Decl., ¶ 29.

Based on the aforementioned negotiations and exchange of information, the Parties were able to negotiate a fair settlement Plaintiffs believe to be in the Settlement Class's best interests. Indeed, the Court preliminarily found that "[t]he Settlement was negotiated vigorously and at

arm's length by Defense Counsel, on the one hand, and Plaintiffs and Class Counsel on behalf of the Settlement Class, on the other hand" and "Plaintiffs and Class Counsel had sufficient information to evaluate the settlement value of the Action and have concluded that the Settlement is fair, reasonable, and adequate." Preliminary Approval Order, ¶ 4. It is Plaintiffs' counsel's opinion that the proposed settlement is fair and reasonable. Gyandoh Decl. ¶75.

## IV.     THE PROPOSED SETTLEMENT

The Settlement provides that Cintas (or its insurers) will pay $4,000,000.00 – the Gross Settlement Amount – to be allocated to participants on a *pro-rata* basis pursuant to the proposed Plan of Allocation (see Exhibit B to Settlement Agreement) in exchange for releases and dismissal of this action (described in Article 7 of the Settlement Agreement). The Gross Settlement Amount will be used to pay the participants' recoveries, administrative expenses to facilitate the Settlement, and Plaintiffs' counsel's attorneys' fees and costs, and Class Representatives' Case Contribution Awards if awarded by the Court. Gyandoh Decl., ¶ 30. The Settlement Agreement also provides for non-monetary relief, providing that: "Within three years, but no later than five years, after the Settlement Effective Date, if the Plan's fiduciaries have not already done so, the Plan's fiduciaries will conduct or cause to be conducted a request for proposal relating to the Plan's recordkeeping services." *See* Gyandoh Decl., ¶31 (citing Settlement Agreement, Article 12.1). The Settlement Class is defined as:

> All persons who participated in the Cintas Partners' Plan ("Plan") at any time from December 13, 2013, through April 19, 2024, including any Beneficiary of a deceased Person who participated in the Plan at any time during the Class Period, and any Alternate Payee of a Person subject to a QDRO who participated in the Plan at any time during the Class Period. Excluded from the Settlement Class are Defendants and their Beneficiaries.

Preliminary Approval Order, ¶ 1.

## V.     THE NOTICE PLAN HAS BEEN EFFECTIVELY IMPLEMENTED

Pursuant to the Preliminary Approval Order, Class Counsel has overseen the issuance of the Court-approved Class Notice. Class Counsel retained Analytics Consulting, LLC ("Analytics") to serve as settlement and notice administrator. *See* Declaration of Settlement Administrator in Support of Plaintiffs' Motion for Final Approval signed by Jeffrey Mitchell ("Mitchell Decl.") (attached as Exhibit 2 to the Gyandoh Declaration). On May 16, 2024, pursuant to the terms of the Settlement Agreement, Defendants provided Analytics with secured data from the Plan's recordkeeper containing, among other information, the names, mailing addresses, and other information for a total of 116,089 unique Settlement Class members. Mitchell Decl., ¶¶ 7,8. After receiving the class list, Analytics cross-referenced the Class Member addresses with the United States Postal Service National Change of Address database. Analytics also ran a skip trace on all records to locate additional address updates. *Id*.

Notice was posted to the settlement website by May 24, 2024. Given the high volume of Settlement Class members, Analytics was instructed by Class Counsel to mail all Notices that could be feasibly mailed by May 24, 2024, and mail the rest as soon as possible after that date. The first installment of Notice was mailed on May 24, 2024, and included 71,739 of the 116,089 Class Members. Mitchell Decl., at ¶ 10. The remaining Notices were mailed on the next available business day, May 28, 2024. *Id*. Additionally, On May 24, 2024, Analytics emailed the Notice to 107,237 Class Members that had an email address available in the Class Data. *Id.*, at ¶ 11. As of June 3, 2024, no Notices have been returned undelivered. Before the Final Approval Hearing, Analytics will furnish a supplemental declaration with delivery success rates and any objections received.

The notice program apprised Settlement Class members of the terms of the Settlement, and of their right to object to any or all of the terms of the Settlement, Plan of Allocation, Case

Contribution Awards, or to Class Counsel's motion for award of attorneys' fees and reimbursement of litigation expenses. As noted above, the Class Notice was also posted on a dedicated website – www.retirementplansettlement.com – through which the public, and the Plan's current and former participants could view: (1) the Notice, (2) the Settlement Agreement, (3) the Amended Complaint, and (4) and email, phone, and U.S. mail contact information for Analytics. *See* Mitchell Decl., ¶ 13. Analytics also established a case-specific toll-free number for Settlement Class members to call to obtain information regarding the Settlement. Mitchell Decl., ¶ 14.

As the Sixth Circuit has noted:

> Additionally, we have held that "due process requires that notice to the class be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."

*Does 1–2 v. Déjà Vu Servs., Inc.*, 925 F.3d 886, 900 (6th Cir. 2019) (quoting *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 759 (6th Cir. 2013)).

Here the notice program includes direct mail and e-mail notice to absent class members and is supplemented by a settlement website and a toll-free telephone number, thus constituting the "best notice practicable." *See Shy v. Navistar Int'l Corp.*, 2022 WL 2125574, at *5 (S.D. Ohio June 13, 2022) ("The notice program provided Class Members with a clear and concise statement of their rights. The notices directed Class Members to the settlement website or a toll-free number for additional information regarding how they could object to the settlement. The notice program more than met the requirements of Rule 23 and due process.") (citations omitted). Indeed, the Court previously found the combination of the direct-mail and e-mail Class Notice and dedicated Settlement website and phone number was adequate to inform Settlement Class members of the terms of the proposed Settlement, how to lodge an objection, and how to obtain additional information. *See* Preliminary Approval Order., ¶¶ 7-8.

## VI.  THE PROPOSED SETTLEMENT SHOULD BE APPROVED
### A.  Legal Standards

When assessing whether a proposed settlement "is fair, reasonable, and adequate", Courts

within the Sixth Circuit evaluate seven "*UAW* Factors":

(1) the risk of fraud or collusion;

(2) the complexity, expense and likely duration of the litigation;

(3) the amount of discovery engaged in by the parties;

(4) the likelihood of success on the merits;

(5) the opinions of class counsel and class representatives;

(6) the reaction of absent class members; and

(7) the public interest

*Peck v. Air Evac EMS, Inc.*, 2019 WL 3219150, *7 (E.D. Ky.  July 17, 2019) (Citing *UAW v.

GMC*, 497 F.3d 615, 641 (6th Cir. 2007)). "The Court 'enjoys wide discretion in assessing the

weight and applicability of these factors.'" *Doe v. Ohio*, 2020 WL 728276, at * 3 (S.D. Ohio Feb.

12, 2020) (citing *Granada Investments, Inc. v. DWG Corp.*, 962 F. 2d 1203, 1205-06 (6th Cir.

1992)). Finally, "[c]ourts in this Circuit reason that settlement is often in the public interest because

it puts an end to what are sometimes complex and unpredictable cases and because settlement

promotes judicial economy." *Jones v. H&J Restaurants, LLC*, 2020 WL 6877577, at *3 (W.D. Ky.

Nov. 23, 2020).

### B.  The Settlement Satisfies the Sixth Circuit's Factors  Underscoring Its Fairness, Reasonableness, and Adequacy

#### 1.  The risk of fraud or collusion

In the Sixth Circuit, settlements are presumed fair unless evidence proves otherwise.

"Settlements resulting from arm's length negotiations conducted by competent counsel are *prima

facie* fair." *Shy*, 2022 WL 2125574, *6 (citing 1 Herbert B. Newberg & Alba Conte, Newberg on

Class Actions § 11.41 at 90 (4th Ed. 2002)); *see also Carr v. Guardian Healthcare Holdings, Inc.*,

2022 WL 501206, at *5 (S.D. Ohio Jan. 19, 2022) ("Courts presume the absence of fraud or collusion unless there is evidence to the contrary."); *Karpik v. Huntington Bancshares Inc.*, 2021 WL 757123 at * 4 (S.D. Ohio Feb. 18, 2021) (same). Here, the proposed Settlement was only achieved after contentious motion practice, including an appeal, multiple rounds of settlement demands, and arms-length negotiations under the auspices of a neutral mediator. Gyandoh Decl. ¶¶ 3-29. This settlement is not the result of fraud or collusion.

### 2. The complexity, expense, and likely duration of the litigation

"Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them." *Shy*, 2022 WL 2125574, *6 (Quoting *Brent v. Midland Funding, LLC*, 2011 WL 3862363, at *16 (N.D. Ohio Sept. 1, 2011). Moreover, courts within this Circuit and around the country have recognized "[t]he complexity inherent in class actions is amplified in ERISA class actions." *Karpik*, 2021 WL 757123, at *4; *see also Dover v. Yanfeng US Automotive Interior Systems I LLC,* 2023 WL 2309762, at *5 (E.D. Mich. Mar. 1, 2023) ("ERISA class actions are complex, and the record shows that counsel fought ably to vindicate their clients' interests in the face of rapidly evolving law regarding fiduciary duties under ERISA."); *Pledger v. Reliance Trust Co.*, 2021 WL 2253497, at *7 (N.D. Ga. Mar. 8, 2021) (same); ("ERISA litigation of the type presented here is a rapidly evolving and demanding area of the law. New precedents are frequently issued, and the demands on counsel and the Court are complex and require the devotion of significant resources.").

Approving this Settlement will "result in the saving of time and money to the Parties and serve judicial economy." *Ganci v. MBF Inspection Services, Inc.,* 2019 WL 6485159, at *4 (S.D. Ohio Dec. 3, 2019). This Action has already been litigated for over four years, including an in-depth pretrial investigation, an appellate stage, motions to dismiss, and discovery. Further proceedings would require expert testimony from both sides, with the Court and Parties expending

significant time and resources. Full fact discovery has hardly begun, and therefore "conducting merits and expert discovery in this ERISA action would be time consuming and costly and would be followed by expensive and burdensome dispositive motions, trial and appeals" *Griffin v. Flagstar Bancorp, Inc.,* 2013 WL 6511860, at *3 (E. D. Mich. Dec. 12, 2013). Indeed "trials on the ERISA issues presented have been few and far between and the few decisions on summary judgment and adjudications on the merits in this area demonstrate the heavy burdens that Plaintiffs might ultimately have to face if the case were not resolved by settlement." *In re Delphi Corp. Securities, Derivative*, 248 F.R.D. 483, 497 (E.D. Mich. 2008). Accordingly, this stage of settlement is ideal because it "allows a class to achieve substantial savings and be able to invest those savings immediately – enjoying years' worth of returns that would not otherwise be available." *Kruger v. Novant Health, Inc.*, 2016 WL 6769066, *3 (M.D.N.C. Sept. 29, 2016).

This factor weighs in favor of approval because the Settlement Agreement guarantees immediate relief for the Class and avoids serious risks of further proceedings shrinking, eliminating, or prolonging relief.

### 3. The amount of discovery engaged in by the parties

The relevant inquiry with respect to this factor is whether the plaintiff has obtained a sufficient understanding of the case to gauge the strengths and weaknesses of the claims and the adequacy of the settlement." *Dover Glen Condo. Ass'n v. Oakland Cnty.*, 2022 WL 17337815, at *3 (E.D. Mich. Nov. 30, 2022). Formal discovery hardly began before settlement; however, Plaintiffs gathered ample information from Defendants before filing the Complaint and during settlement negotiations, and Class Counsel consulted with in house experts throughout the process. In *Kruger*, another ERISA breach of fiduciary duty case, the court granted final approval in a case that settled before entering formal discovery. The court lauded the amount of informal discovery work that ERISA class counsel undertakes in cases such as this, "Class Counsel worked for over

six months before filing suit […] Class Counsel's work included meeting with the Plans' participants, obtaining documents from public sources and the Retirement Plus Plan administrator, reviewing and analyzing plan documents and financial statements, building on expertise regarding industry practices, conducting extensive legal research, and fashioning the causes of action." 2016 WL 6769066, at *3. The same is true here. Indeed, the Court preliminarily found that "Plaintiffs and Class Counsel had sufficient information to evaluate the settlement value of the Action…" Preliminary Approval Order, ¶ 4. In sum, Plaintiffs conducted ample informal discovery to understand the strengths and weaknesses of their case, thereby ensuring the Settlement is fair, reasonable, and adequate.

### 4. The likelihood of success on the merits

"Of the UAW factors, '[t]he most important of the factors to be considered in reviewing a settlement is the probability of success on the merits.'" *Déjà Vu Servs*., 925 F.3d at 895 (quoting *Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.,* 636 F.3d 235, 245 (6th Cir. 2011)). However, "The court 'is not to decide whether one side is right or even whether one side has a better of these arguments..... The question rather is whether the parties are using settlement to resolve a legitimate legal and factual dispute.'" *Garner Prop. & Mgmt., LLC v. City of Inkster,* 2020 WL 4726938, at *9 (E.D. Mich. Aug. 14, 2020) (quoting *UAW*, 497 F.3d at 632.)

In *Diaz v. BTG Int'l Inc.*, another ERISA excessive recordkeeping fee case, the court aptly explained the innate risks of ERISA trials:

> Plaintiffs allege breach of fiduciary duties under ERISA in the context of a complex investment arrangement between themselves and the Plan. Litigating this matter to verdict would have required a finder of fact to make credibility determinations on testimony offered by both fact and expert witnesses. If tried to final judgment, this action would have required expert testimony including expert testimony on damages that would have involved complex mathematical calculations and projections. Plaintiffs faced the risk of an adverse verdict if this action had been

litigated to conclusion. Plaintiffs also faced the risk of a low damage award after substantial investment of both time and money.

2021 WL 2414580, at *6 (E.D. Pa. June 14, 2021); *see also In re Delphi Corp. Sec.*, *Derivative & ERISA Litig.*, 248 F.R.D. 483, 496-97 (although "risk is inherent in any litigation, particularly class actions[,] [t]he risk is even more acute in the complex areas of ERISA law."); *Karpik*, 2021 WL 757123, at *5. ("Even if Plaintiffs established a fiduciary breach, it is 'difficult' to measure damages in cases alleging imprudent or otherwise improper investments.") (*Quoting* Restatement (Third) of Trusts § 100 cmt. b(1)).

Here, Defendants vigorously denied all of Plaintiffs' claims and vigorously refuted Plaintiffs' damages scenarios during mediation. If any of Defendants' arguments were credited by the Court, it would reduce Plaintiffs' damages considerably, if not totally. In that light, the proposed Settlement Amount of $4,000,000.00 is an appropriate discount to avoid the costs of continued litigation and potential risk for Plaintiffs to receive less or no damages after a trial. It amounts to roughly 30% to 34% (using Plaintiffs' calculations) or more than 100% (if Defendants were successful) of Plaintiffs' estimated $11.6 million to $13.3 million of potential best-case damages. Gyandoh Decl. ¶ 29. This percentage of recovery is in accord with the typical percentage courts in ERISA cases have found reasonable; *see e.g. Urakhchin v. Allianz Asset Mgmt. of Am., L.P.*, No. 8:15-cv-01614 (ECF No. 185) (C.D. Cal. July 30, 2018) (approving $12 million ERISA 401(k) settlement that represented approximately 25% of estimated total damages of $47 million); *Johnson v. Fujitsu Tech. & Business of America, Inc.*, 2018 WL 2183253, at *6-7 (N.D. Cal. May 11, 2018) (approving $14 million ERISA 401(k) settlement that represented "just under 10% of the Plaintiffs' most aggressive 'all in' measure of damages"); *Velazquez v. Mass. Fin. Servs. Co.*, No. 1:17-cv-11249-RWZ (ECF No. 95) (D. Mass. June 25, 2019) (granting preliminary approval

in ERISA class action where $6.875 million recovery represented approximately 30% of estimated damages).

Also, Defendants agreed to conduct a request for proposal of recordkeeping service providers within three years of the settlement date. Gyandoh Decl. ¶ 31. Although not technically monetary at this point in time, the request for proposal ensures cost-effective recordkeeping services in the future, which benefits the Plan and participants. In short, the settlement fund, and accompanying promise of prudent future conduct, is reasonable, fair, and adequate when considering all the attendant risks of a judgement on the merits.

### 5. The opinions of class counsel and class representatives

"The Sixth Circuit has observed that when experienced counsel immersed in the legal and factual issues comprising a class action recommend approval of their class settlement, their recommendations are entitled to deference." *Shy*, 2022 WL 2125574, *7 (quoting *Williams v. Vukovich*, 720 F.2d 909, 922 (6th Cir. 1983)). Both Plaintiffs' counsel and Defendants' counsel are experienced in ERISA class actions of this type and approve of the Settlement. As discussed in greater detail in the Gyandoh Declaration, the vast experience of Class Counsel in analogous actions weighs strongly in favor of the fairness of the proposed Settlement, a Settlement which Class Counsel firmly stands behind. Gyandoh Decl., ¶¶ 65-75. As other courts have expressly found, the undersigned is "well-qualified to weigh the risks and benefits of continued litigation as compared to the relief provided by the Settlement." *Diaz*, 2021 WL 2414580, at *8.

Counsel for Defendants, Sidley Austin LLP, are one of the preeminent firms in the country defending analogous ERISA class actions. *See* https://www.sidley.com/en/services/erisa-litigation. Courts within the Sixth Circuit have similarly found this factor met when counsel on both sides are experienced and agree on the settlement. *See e.g. Borders v. Alternate Sol. Health Network, LLC*, 2021 WL 4868512, at *3 (S.D. Ohio May 17, 2021) ("By agreeing to this

settlement, counsel for both parties have indicated their shared belief that the Settlement Agreement is fair, reasonable, and adequate" and "[t]he Court gives great weight to the beliefs of experienced counsel"); *Griffin*, 2013 WL 6511860, at *5 ("Class counsel in this case have extensive experience in handling complex ERISA claims, and other complex class action litigation… Class counsel's recommendation of this settlement is entitled to significant weight.")

The Class Representatives who have dedicated time and energy to this matter also find that the Settlement is fair, reasonable, and adequate. This weighs in favor of approval. *See e.g. Karpik*, 2021 WL 757123, at *6 ("Moreover, the Class Representatives previously submitted declarations in support of the Settlement. *See* ECF Nos. 67-07 to 67-13. Their support also favors approval."); *Ganci*, 2019 WL 6485159, at * 5 ("Class Plaintiff also approves of the settlement, as indicated by his executing the settlement agreement."). Thus, this factor is satisfied because counsel for both Parties and the class representatives support this Settlement Agreement.

### 6. The reaction of absent class members

Class Notice was mailed to over 116,089 potential Settlement Class Members and has not received any objections to date.[3] "A certain number of opt-outs and objections are to be expected in a class action. If only a small number are received, that fact can be viewed as indicative of the adequacy of the settlement.'" *Garner Prop. & Mgmt.*, 2020 WL 4726938, at *10 (quoting *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 527 (E.D. Mich. 2003)). *See also Carr*, 2022 WL 501206, at *7 ("the Class Members' reactions strongly support approval. No Class Member requested exclusion from the settlement or objected to the settlement."); *In re Delphi Corp.,* 248 F.R.D. at 501 (same). Thus, the absence of objections weighs in favor of approving the Settlement.

### 7. The public interest

---

[3] As noted above, the deadline to object to the Settlement is July 3, 2024. *See* Preliminary Approval Order, ¶ 11.

Courts within this Circuit find this factor satisfied when "the Agreement provides class members immediate relief, avoids further litigation, and frees the Court's judicial resources" *In Re Broadwing*, *Inc. ERISA Litig.,* 252 F.R.D. 369, 381-82 (S.D. Ohio 2006). In general, "[p]ublic policy favors settlement of class action lawsuits." *Mullins v. Data Mgmt. Co.*, 2021 WL 2820560, at \*6 (S.D. Ohio June 21, 2021) (quoting *Swigart v. Fifth Third Bank*, No. 1:11-cv-88, 2014 WL 3447947, at \*4 (S.D. Ohio July 11, 2014)). *See also, Ganci*, 2019 WL 6485159, at \*5 ("In this case, the Settlement confers immediate benefits on the Settlement Class, avoids the risks and expense in further litigation, and conserves judicial resources.").

"Additionally, this ERISA Settlement confers broader public benefits, as 'the protection of retirement funds is a great public interest.'" *Karpik*, 2021 WL 757123 at \*6 (quoting, *Fastener Dimensions, Inc. v. Mass. Mut. Life Ins. Co.*, 2014 WL 5455473, at \*9 (S.D.N.Y. Oct. 28, 2014)); *see also In Re Broadwing*, 252 F.R.D. at 381-8 ("[p]rotecting retirement funds of workers is of genuine public interest."). As mentioned above, this case involves complex issues and without a settlement would remain in the judicial system for a lengthy duration at the risk of lesser or no relief to Plan Participants. Thus, the public benefit of settling this case, as well as all of the other *UAW* factors, weighs in favor of finding the settlement fair, reasonable, and adequate.

## VII. THE REQUIREMENTS OF FED. R. CIV. P. 23(e)(2) ARE SATISFIED

Under FED.R.CIV.P. 23(e)(2), the Court is to consider the following factors when determining whether to grant final approval: (1) "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims"; (2) "the terms of any proposed award of attorney's fees, including timing of payment"; and (3) whether

"the proposal treats class members equitably relative to each other." FED. R. CIV. P. 23(e)(2)(C)(ii), (C)(iii) and (D)[4].

### (1) Effectiveness of Plan Distribution

The proposed Plan of Allocation, described *infra* in Section VIII, describes a plan of allocating the Net Settlement Amount to Class Members utilized in other analogous ERISA matters and is highly effective. Current Plan participants – those who still maintain accounts in the Plan – will have payments made directly into their accounts. Former participants – those who no longer maintain a Plan account – shall be paid directly by the Settlement Administrator.

### (2) Terms of Proposed Attorneys' Fees

The Settlement does not excessively compensate Class Counsel. The Settlement is not contingent on Class Counsel receiving a specific amount of fees and any fees they receive will be determined by the Court. The amount of fees Class Counsel is requesting, a third of the monetary portion of the Settlement, is reasonable and consistent with the awards in other ERISA cases. This amount is in line with analogous awards in ERISA class actions within this Circuit and across the Country, so the requirement of Rule 23(e)(2)(C)(ii) will likely be met.[5] *See, e.g., Griffin,* 2013 WL

---

[4]There are no agreements other than the Settlement Agreement, thus FED. R. CIV. P. 23(e)(2)(c)(iv) is irrelevant.

[5] *See also Ganci,* 2019 WL 6485159, at *6 (awarding one third of the common fund); *In re Packaged Ice Antitrust Litig.,* 2011 U.S. Dist. LEXIS 150427, at *76–77 (E.D.Mich. Dec. 13, 2011) (same); *In re Prandin Direct Purchaser Antitrust Litigation,* 2015 WL 1396473, *4 (E.D. Mich. Jan. 20, 2015) (same); *Swigart v. Fifth Third Bank,* 2014 WL 3447947, at *7 (S.D. Ohio July 11, 2014); *In re Skelaxin,* 2014 WL 2946459, at *1-3 (E.D. Tenn. June 30, 2014) (same); *Borders,* 2021 WL 4868512 at *4 (same); *Karpik,* 2021 WL 757123, at *7 (same); *Mullins,* 2021 WL 2820560, at *6 (same); *Pledger,* 2021 WL 2253497 (same); *Fernandez,* 2017 WL 7798110, at *4 (same); *McDonald v. Edward Jones,* 791 Fed.Appx. 638, 640 (8th Cir. 2020) (affirming judgment awarding the class counsel attorneys' fees of 1/3 of the settlement fund); *Kruger,* 2016 WL 6769066, at *6 (M.D.N.C. Sept. 29, 2016); *Cates v. Trustees of Columbia Univ.*, 2021 WL 4847890 (S.D.N.Y. Oct. 18, 2021); *Bekker v. Neuberger Berman Grp. 401(k) Plan Inv. Comm.*, 504 F. Supp. 3d 265, 270 (S.D.N.Y. 2020) (listing ERISA cases awarding one-third of settlement fund). *See also* Plaintiffs' Motion for An Award of Attorney's Fees and Reimbursement of

6511860, at *8 ("This requested fee is consistent with standard fee awards as a percentage of the fund in ERISA actions which typically award between 30% and 33% on a percentage of the fund fee calculation.")

### (3) Equitable Treatment of Class Members

The Settlement does not unduly favor the Plaintiffs. Plaintiffs' shares of the Settlement will be based on the Plan of Allocation, a formula based on the losses to their Plan account. Further, the Plan of Allocation agreed to by the Parties clearly treats Settlement Class members equitably relative to each other because each member is entitled to their *pro rata* share of losses and all Settlement Class members will receive at least $10.00. This *pro rata* allocation method is commonly deemed equitable in ERISA cases. *See, e.g. Karpik,* 2021 WL 757123 at *13;  *In re Delphi Corp.*, 248 F.R.D. at 491–93; *Millstein v. Holtz*, 2022 WL 18024840, at*7 (S.D. Fla. Dec. 30, 2022). While Plaintiffs also intend to request Case Contribution Awards, the Settlement is not contingent on Plaintiffs receiving an award in a specified amount and the amount Plaintiffs intend to request is in line with the awards in other cases as explained in the Fee Motion.

Given the above, Rule 23(e)(2) is satisfied.

### VIII.   THE PLAN OF ALLOCATION SHOULD BE FINALLY APPROVED

"Approval of a plan of allocation of a settlement fund in a class action is 'governed by the same standards of review applicable to approval of the settlement as a whole: the distribution plan must be fair, reasonable and adequate.'" *Griffin,* 2013 WL 6511860, at *7 (quoting *In re Ikon Office Solutions, Inc., Securities Litig.*, 194 F.R.D. 166, 184 (E.D. Pa. 2000)). "In general, a plan of allocation that reimburses class members based on the type and extent of their injuries is

---

Expenses and Case Contribution Awards and supporting Memorandum of Law being filed contemporaneously herewith ("Fee Motion").

reasonable." *Law v. National Collegiate Athletic Ass'n*, 108 F.Supp.2d 1193, 1195 (D. Kan. 2000). The proposed Plan of Allocation here, attached to the Settlement Agreement as Exhibit B, is premised on calculating a Settlement Class member's distribution on a *pro rata* basis based on account balances, a proxy for the alleged losses. No payment to any Settlement Class member shall be smaller than ten dollars ($10.00). Any Settlement Class member whose payment pursuant to Section D of the Plan of Allocation is less than ten dollars ($10.00) shall receive a distribution of ten dollars ($10.00). *See* Plan of Allocation at Section D. Further, current participants will receive their share of the Settlement Fund through a distribution to their Plan account. *Id.* at Section E.

## IX.   FINAL CERTIFICATION OF THE SETTLEMENT CLASS IS WARRANTED

### A.   The Proposed Class Meets the Requirements of Rule 23(b)(1) of the Federal Rules of Civil Procedure

Before entering the Preliminary Approval Order, this Court examined the record and conditionally certified the Settlement Class pursuant to FED. R. CIV. P. 23(b)(1). *See* Preliminary Approval Order. Nothing has changed in the record to compel the Court to now reach a different conclusion with respect to the final approval of the Settlement Class. Indeed, courts across the country have determined breach of fiduciary duty claims under ERISA analogous to those at issue in this action are uniquely appropriate for class treatment.[6] To avoid unnecessary repetition,

---

[6] *See, e.g., Sacerdote v. New York Univ.*, 2018 WL 840364, *6 (S.D.N.Y. Feb. 13, 2018) ("Most ERISA class action cases are certified under Rule 23(b)(1)."); *Wachala et al. v. Astella US LLC et al.*, 2022 WL 408108, at * 1 (N.D. Ill. Feb. 10, 2022) (certifying claims brought pursuant to ERISA § 502(a)(2); *Nunez, et al., v. B. Braun Medical, Inc., et al.*, No. 5:20-cv-04195 (E.D. Pa. June 30, 2022) (same); *Stengl et al. v. L3Harris Technologies, et al.*, No. 6:22-cv-572 (M.D. Fla. June 5, 2023) (same); *Pizarro v. Home Depot, Inc.*, 2020 WL 6939810 (N.D. Ga. Sept. 21, 2020) (same); *Boley v. Universal Health Servs., Inc.*, 36 F.4th 124 (3d Cir. 2022) (same); *In re Suntrust Banks, Inc. ERISA Litig.*, 2016 WL 4377131, at *8 (N.D. Ga. Aug. 17, 2016) (same); *Iannone et al., v. Autozone, Inc., et al.*, No. 2:19-cv-02779-MSN-tmp (W.D. Tenn. Dec. 07, 2022) (same); *Jacobs v. Verizon Communications, Inc. et al.*, 2020 WL 5796165 (S.D.N.Y. Sept. 29, 2020) (same); *Karg v. Transamerica Corp.*, 2020 WL 3400199 (N.D. Iowa Mar. 25, 2020) (certifying class alleging defendants breached fiduciary duties by selecting poorly performing investment options); *Vellali v. Yale Univ.*, 33 F.R.D. 10 (D. Conn. 2019) (certifying class in case alleging fiduciaries saddled

Plaintiffs incorporate their arguments from their memorandum in support of preliminary approval (ECF 70; pp. 6-10) and request the Court make the same findings it did in preliminarily certifying a settlement class and certify the following Class for settlement purposes only:

> All persons who participated in the Cintas Partners' Plan ("Plan") at any time from December 13, 2013, through April 19, 2024, including any Beneficiary of a deceased Person who participated in the Plan at any time during the Class Period, and any Alternate Payee of a Person subject to a QDRO who participated in the Plan at any time during the Class Period. Excluded from the Settlement Class are Defendants and their Beneficiaries.

### B. Adequacy of Named Plaintiffs and Class Counsel

Under Rule 23, certification of a class requires the Court determine both Plaintiffs and Class Counsel's adequacy. Courts in the Sixth Circuit "measure the adequacy of the class members' representation based upon two factors: '1) the representatives must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel.'" *In re Dry Max Pampers Litig.*, 724 F.3d 713, 721 (6th Cir. 2013) (quoting *Vassalle*, 708 F.3d at 757. Here both prongs of the adequacy test are met. In its Preliminary Approval Order, the Court found Plaintiffs and Capozzi Adler to be adequate. *See* Preliminary Approval Order, ¶ 2. In connection with the instant motion for final approval, each of the Plaintiffs have submitted declarations and Class Counsel has also submitted a declaration to attest to their adequacy. Plaintiffs dedicated a lot of their time to the prosecution of this action and have no interests antagonistic to the Class. *See* Declarations of Plaintiffs Raymond Hawkins, Robin Lung, Needy Krisina Bajao-Wirtjes, Racheal Lovell Neely, Sommer Moore, Adam Dipzinski, Jonathan Wilson, Ismael Atayde-Gonzales, Carlos Cano, Carola

---

retirement plan with investment options that charged excessive management fees); *Cunningham et al. v. Cornell Univ*., 2019 WL 275827 (S.D.N.Y. Jan. 22, 2019) (same*); Beach v. JPMorgan Chase Bank, N.A.*, 2019 WL 2428631 (S.D.N.Y. June 11, 2019) (same); *Cassell v. Vanderbilt Univ*., 2018 WL 5264640 (M.D. Tenn. Oct. 23, 2018) (same).

Spurlock, Leigha Ayres and Alvaro Cruzado (attached as Exhibits 8 through 19, respectively, to the Gyandoh Declaration).

Plaintiffs also retained attorneys who are highly qualified, experienced, and able to litigate this matter. Mark K. Gyandoh, Partner and Chair of the Fiduciary Practice Group at Capozzi Adler and his team are highly qualified ERISA class action attorneys. Mark K. Gyandoh is currently serving as Lead or Co-Lead Counsel in numerous breach of fiduciary duty class actions in this District and across the nation. Gyandoh Decl., ¶¶ 68-69. Throughout the litigation, Class Counsel has used its experience and access to resources to investigate and litigate Plaintiffs' underlying allegations, which ultimately led to the Settlement in this Action. Class Counsel, with its expansive experience in complex class actions, recommend this Settlement as the best resolution for Settlement Class members. The retention of highly qualified counsel, coupled with the alignment of interests between Plaintiffs and the Settlement Class Members, satisfies the requirements of Rules 23(a)(4) and 23(g).

## X.     CONCLUSION

For the reasons set forth above, the Settlement meets the standard for final approval under Rule 23. Accordingly, Plaintiffs seek an Order: (1) approving the Class Action Settlement Agreement under FED. R. CIV. P. 23(e); (2) certifying the above-defined Settlement Class; (3) appointing Plaintiffs as Class Representatives and Plaintiffs' Counsel as Class Counsel under FED. R. CIV. P. 23(g); (4) finding the manner in which the Settlement Class was notified of the Settlement was the best practicable under the circumstances and fair and adequate; and (5) approving the Plan of Allocation.

Dated: June 3, 2024                                        Respectfully submitted,

                                                          **CAPOZZI ADLER, P.C.**

                                                          */s/ Mark K. Gyandoh*

Mark K. Gyandoh
*Designated Trial Attorney*
312 Old Lancaster Road
Merion Station, PA 19066
Telephone: (610) 890-0200
Facsimile: (717) 233-4103
Email: markg@capozziadler.com

Donald R. Reavey
2933 North Front Street
Harrisburg, PA 17110
Telephone: (717) 233-4101
Facsimile: (717) 233-4103
Email: donr@capozziadler.com

**CONNICK LAW, LLC**

Michael J. Connick, Esquire
(Trial Attorney)
Ohio Attorney ID # 46624
45 N. 4th Street
Zanesville, OH  43701
Email: mconnick@mjconnick.com
Tel: (216-) 924-2010

*Attorneys for Plaintiffs, the Plan
and the Proposed Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 3, 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send notification of the filing to all attorneys of record.

/s/Mark K. Gyandoh