# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

| | | |
|---|---|---|
| RAYMOND HAWKINS, *et al.*, | : | Case No. 1:19-cv-1062 |
| *Plaintiffs*, | : | |
| | : | |
| vs. | : | |
| | : | |
| CINTAS CORPORATION, *et al.*, | : | Judge Jeffery P. Hopkins |
| *Defendants*. | : | |
| | : | |

## OPINION AND ORDER

Plaintiffs Raymond Hawkins, Robin Lung, Needy Krisina Bajao-Wirtjes, Racheal Lovell Neely, Sommer Moore, Adam Dipzinski, Jonathan Wilson, Ismael Atayde-Gonzales, Carlos Cano, Carola Spurlock, Leigha Ayres, and Alvaro Cruzado, hereinafter referred to collectively as "Plaintiffs," seek to have this lawsuit certified as a class action. Defendants Cintas Corporation, hereinafter referred to as "Cintas" or the "Company," the Board of Directors of Cintas and its current and former members who held office during the proposed class period, along with Scott D. Farmer, and the Cintas Investment Policy Committee are collectively referred to as "Defendants."

After litigating for almost five years—including appeals to the Sixth Circuit and an unsuccessful attempt to have the matter heard by the United States Supreme Court—the parties in this pre-certification class action seek to end this dispute. The parties have agreed to a proposed global class settlement that creates a $4,000,000 fund for distribution to all

potential class members to settle all claims. Plaintiffs now move to have the Court approve that settlement under Federal Rule of Civil Procedure 23(e). Doc. 77.

As more fully discussed below, the Court **CERTIFIES** the nationwide class—as defined in the Settlement Agreement (Doc.78-2, PageID 1371)—and **APPOINTS** the attorneys listed as class counsel. The Court also **GRANTS** Plaintiffs' Motion for Final Approval of Class Action Settlement, Certification of Settlement Class, and Approval of Plan of Allocation (Doc. 77) and **ACCEPTS** the proposed settlement as currently structured. And because the Court accepts the settlement, the Court also **DENIES** Defendants' Motion to Dismiss (Doc. 47) as **MOOT**. Plaintiffs' Motion for an Award of Attorneys' Fees and Reimbursement of Expense and Named Plaintiffs Case Contribution Awards (Doc. 79) remains under advisement.

## I.     BACKGROUND

### A.     Nature of the Suit and Procedural Background.

This case is about the alleged acts and omissions of a retirement plan's administrators. Plaintiffs initiated this suit against Defendants pursuant to §§ 409 and 502 of the Employee Retirement Income Security Act of 1974 ("ERISA"), and 29 U.S.C. §§ 1109 and 1132, alleging that Defendants breached their fiduciary duties to Plaintiffs in their management of the Cintas Partners' Plan ("Plan"). Specifically, Plaintiffs contend that Defendants breached their fiduciary duties to adequately review the Plan's investment portfolio with due care to ensure that each investment option was prudent in terms of cost; and (2) to control the Plan's recordkeeping administrative costs.

As noted, the dispute between Plaintiffs and Defendants dates back over five years. Before initiating the case *sub judice*, Plaintiffs conducted informal discovery by investigating

publicly filed Plan documents, reviewing the named Plaintiffs Plan information, and consulting with experts regarding topics such as potential damages. Doc. 78-1, at ¶ 4. After conducting this investigation, Plaintiffs felt they uncovered facts showing that Defendants had broken ERISA law and breached their fiduciary duties by failing to review the Plan's investment portfolio and controlling the Plan's recordkeeping administrative costs. Doc. 43, PageID 563–64.

Thereafter, Plaintiffs commenced this action by filing the Complaint on December 13, 2019. Doc. 1. The Complaint alleged violations of fiduciary duties of prudence, care, and loyalty imposed by ERISA § 404(a), or 29 U.S.C. § 1104(a).[1] Doc. 1. Before responding to the Complaint, Defendants filed a Motion to Compel Arbitration and Stay the Proceedings (Doc. 15) on March 10, 2020. The Court denied that motion on January 27, 2021. Doc. 20. Defendants filed a Notice of Appeal to the Sixth Circuit on February 10, 2021. Doc. 21. That same day, Defendants filed a Motion to Stay All Proceedings Pending Appeal. Doc. 22. The Court granted Defendants' Motion to Stay All Proceedings Pending Appeal on April 15, 2021. Doc. 29.

Appellate litigation then ensued. After briefing, the Sixth Circuit issued its Opinion (Doc. 30) on April 27, 2022, affirming this Court's decision denying Defendants' Motion to Compel Arbitration. Defendants filed a Petition for a Writ of Certiorari with the Supreme

---

[1] When ERISA became law in 1974, most of its provisions were codified into Title 29 of the United States Code. By that time Title 29 already contained the codified version of many other labor laws, Title 29 section 1 was already "taken," for example, so the Title 29 section numbers assigned to the provisions of ERISA do not line up with the section numbering in ERISA.

For example, the fiduciary duty provisions of ERISA § 404 are found in Title 29 U.S.C. § 1104. Unfortunately, the mismatch cannot be translated by simply adding 700 to the ERISA section number, though that's true for the fiduciary duty provisions.

Court of the United States (Doc. 34) on September 8, 2022; The Supreme Court denied certiorari on January 9, 2023. Doc. 36.

After the case was remanded back to this Court, Defendants filed a Motion to Dismiss the Complaint on February 28, 2023. Doc. 39. Plaintiffs responded by filing their First Amended Class Action Complaint (the "Amended Complaint"), mooting Defendants' motion. Docs. 43, 44. Shortly afterwards, Defendants again filed a Motion to Dismiss (Doc. 47) on April 21, 2023. That Motion to Dismiss is still pending.

**B.      Terms of the Proposed Class Action Settlement.**

The parties began negotiating a settlement more than three years ago. On April 20, 2021, Plaintiffs sent Defendants their initial settlement demand. Doc. 78-1, at ¶ 25. The demand was withdrawn upon the parties' failure to resolve the dispute. *Id.* On June 27, 2023, Plaintiffs sent Defendants an updated settlement demand with supporting documents. *Id.* at ¶ 26. While the Motion to Dismiss (Doc. 47) was still pending, the parties voluntarily attended a mediation session. Doc. 78-1, at ¶ 27. The session took place on October 11, 2023. *Id.* On November 3, 2023, the parties filed a Joint Motion to Stay proceedings and informed the Court they reached a settlement in principle. Doc. 66. Plaintiffs then filed an Unopposed Motion for Preliminary Approval of Class Action Settlement on February 9, 2024. Docs. 69, 70. The Court approved that motion, which preliminarily approved settlement, on April 19, 2024. Doc. 74.

Although at the time the parties agreed on settlement terms formal expert discovery had not yet started, throughout this process Plaintiffs' counsel consulted with experts regarding the extent of potential damages sustained because of Defendants' alleged breaches of fiduciary duty. Doc. 78, PageID 1327–28. As such, the parties reached a settlement

4

("Settlement Agreement") (Doc. 78-2) after reviewing all the relevant information, including documents produced by Defendants, and both parties evaluated numerous damages scenarios. *Id.* Plaintiffs claimed maximum potential damages to be in the range of $11.6 million to $13.3 million before calculation of prejudgment interest. *Id.* This amount reflected claimed damages based on Plaintiffs' theory that Defendants failed to obtain cheaper bundled recordkeeping and administrative services between $23 to $28 per participant as early as the start of the class period (or December 13, 2013). Doc. 78-1, at ¶ 29; Doc. 78-2, PageID 1367.

The proposed Settlement Agreement provides that Defendants (or their insurers) will pay $4,000,000—the Gross Settlement Amount—to be allocated to participants on a pro-rata basis pursuant to the proposed plan of allocation in exchange for releases and dismissal of this action. Doc. 78-2. The Gross Settlement Amount will be used to pay the participants' recoveries, administrative expenses to facilitate the settlement, and Plaintiffs' counsel's attorneys' fees and costs, and Class Representatives' Case Contribution Awards if awarded by the Court. Doc. 78-1, at ¶ 30. The Settlement Agreement also provides for non-monetary relief, providing that: "Within three years, but no later than five years, after the Settlement Effective Date, if the Plan's fiduciaries have not already done so, the Plan's fiduciaries will conduct or cause to be conducted a request for proposal relating to the Plan's recordkeeping services." Doc. 78-1, at ¶ 31. The Settlement Class is defined as:

> All persons who participated in the Cintas Partners' Plan ("Plan") at any time from December 13, 2013, through April 19, 2024, including any Beneficiary of a deceased Person who participated in the Plan at any time during the Class Period, and any Alternate Payee of a Person subject to a QDRO who participated in the Plan at any time during the Class Period. Excluded from the Settlement Class are Defendants and their Beneficiaries.

Doc. 78-21, PageID 1540.

5

### C. Notice Results and Final Approval.

Pursuant to this Court's order (Doc. 74), Plaintiffs, through their settlement administrator, Analytics, LLC, mailed notice to over 116,089 class members, emailed notice to 107,237 class members, and posted the notice to the settlement website. Doc. 86, PageID 1615. Only four individuals, meaning less than 0.003% of Class members, objected to the settlement (with one objecting past the deadline). *Id.*; *see also* Docs. 81–83. And only 3,537 of the class notices mailed, or about 3%, have been designated as undeliverable. Doc. 86, PageID 1605.

Since issuing notice, Plaintiffs have filed a Motion for Final Approval of Class Action Settlement, Certification of Settlement Class, and Approval of Plan Allocation (Docs. 77, 86), now pending before the Court.

## II. LAW AND ANALYSIS

Plaintiffs' Motion for Final Approval of Class Action Settlement, Certification of Settlement Class, and Approval of Plan Allocation requests the Court to determine: (1) whether the proposed Settlement Class should be certified; (2) whether the way the Settlement Class was notified is adequate; and (3) whether the settlement is fair, reasonable, and adequate under Rule 23(e) of the Federal Rules of Civil Procedure. The Court will address each of these questions in turn.

### A. Final Class Action Certification Is Appropriate.

Before the Court can evaluate the fairness of the proposed settlement, it must certify the settlement class. *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). For settlement purposes, the parties agreed class consists of all people who participated in the Plan, including beneficiaries of deceased participants, at any time from December 13, 2013, through April 19,

2024. Doc. 78-2, PageID 1367, 1371. The Court provisionally certified that class when it preliminarily approved the settlement. Doc. 74.

Under *Amchem*, the Court must ensure that the proposed settlement class meets the requirements of Rule 23 (other than manageability concerns of subsection (b)(3)(D) of Rule 23). 521 U.S. at 620; *see also Whitlock v. FSL Mgmt., LLC*, 843 F.3d 1084, 1091 (6th Cir. 2016). Rule 23 allows a class to be certified only if:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). On top of the Rule 23(a) requirements, a class must satisfy one of the conditions of Rule 23(b). In this case, Plaintiffs point to Rule 23(b)(1)(A) and (B), which are met when prosecuting separate actions by or against individual class members would create the risk of "inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class" or "adjudications with respect to individual class members that . . . would be dispositive of the interests of [non-parties] or would substantially impair or impede [a non-party's] ability to protect their interests." Fed. R. Civ. P. 23(b)(1)(A)–(B).

The Court will address the Rule 23(a) requirements followed by Rule 23(b).

### i.    The Settlement Class Meets the Rule 23(a) Factors of Numerosity, Commonality, Typicality, and Adequacy.

Numerosity is easily satisfied. The class consists of at least 52,027 members, which makes joinder impracticable. Doc. 70, PageID 1094. This satisfies numerosity under Rule 23. *See, e.g., Hunter v. Booz Allen Hamilton Inc.*, No. 2:19-cv-00411, 2023 WL 3204684, *3 (S.D. Ohio May 2, 2023) (647 class members meets numerosity requirement); *Bailey v. Verso*

*Corporation*, 337 F.R.D. 500, 507 (S.D. Ohio 2021) (finding 152 members satisfied numerosity in an ERISA retiree-benefit class action case).

Commonality is also satisfied. To demonstrate the existence of questions of law or fact common to the class, Plaintiffs must show that the claims of the class "depend upon a common contention" that is "of such a nature that it is capable of classwide resolution" such that determination of the contention's "truth or falsity" will resolve a central issue to the claims "in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). Here, Plaintiffs argue that several questions of law and fact are common to the Settlement Class members as participants of the Plan because the Amended Complaint raises the following common questions: (1) whether Defendants are or were fiduciaries of the Plan; (2) whether Defendants breached their fiduciary duties of prudence by engaging in the conduct described therein; (3) whether the Company failed to adequately monitor fiduciaries to ensure the Plan was being managed in compliance with ERISA; (4) the proper form of equitable and injunctive relief; and (5) the proper measure of monetary relief. Doc. 43, at ¶ 54. Based on the record before the Court, the second prong of the Rule 23(a) four-part test has also been met. *See Karpik v. Huntington Bancshares Inc.*, No. 2:17-cv-1153, 2021 WL 757123, at *10 (S.D. Ohio Feb. 18, 2021) (collecting approved ERISA class certifications pursuing answers to the same or similar common questions).

The class also satisfies typicality because the named Plaintiffs' claims "arise[] from the same event or practice or course of conduct that gives rise to the claims of other class members." *Miller v. Charter Nex Films–Delaware, OH, Inc.*, No. 2:18-cv-1341, 2020 WL 2896913, at *4 (S.D. Ohio June 2, 2020) (cleaned up). The named Plaintiffs' theory of the case is virtually identical to that of every other class member—they were subject to the same

treatment by Defendants and advance the same legal theories regarding Defendants' failure to adequately monitor the Plan's fees, investments, and fiduciaries. Doc. 43, at ¶ 63. Plaintiffs and Plan members seek the same damages, meaning restoration of damages to the Plan and participant accounts. "Indeed, the fact that Plaintiffs brought the claims on behalf of the Plan 'weigh[s] heavily in a Rule 23(a)(3) analysis of the parties' claims and defenses.'" *Karpik*, 2021 WL 757123 at *11 (quoting *In re Nortel Networks Corp. ERISA Litig.*, No. 3:03-md-01537, 2009 WL 3294827, at * 8 (M.D. Tenn. Sept. 2, 2009)); *see also Sims v. BB&T Corp.*, Nos. 1:15-CV-732, 1:15-CV-841, 2017 WL 3730552, at*4 (M.D.N.C. Aug. 28, 2017) (finding typicality where "each named plaintiff's claim and each class member's claim is based on the same events and legal theory—a breach of fiduciary duty stemming from the defendants' alleged disloyal and imprudent process for selecting, administering, and monitoring the [p]lan's investments" and where "the remedial theory . . . is identical for the named plaintiffs and the class members.") (citations omitted). Typicality has been satisfied.

Lastly, the named Plaintiffs "fairly and adequately protect[ed] the interests of the class." Fed. R. Civ. P. 23(a)(4). Courts in the Sixth Circuit "measure the adequacy of the class members' representation based upon two factors: 1) the representatives must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *In re Dry Max Pampers Litig.*, 724 F.3d 713, 721 (6th Cir. 2013) (quotations omitted).

At first glance, the Court had some misgivings about whether the interests of the class representatives adequately align with the rest of the class when a proposed settlement agreement, like this one, handsomely rewards the representatives far more than the rest of the other class members. However, those fears fade after reconciling that the Settlement

Agreement makes class representative's contributions *mutually exclusive* from approval of the Settlement Agreement. *See* Doc. 78-2 ("It shall not be deemed a failure to approve the Settlement Agreement if the Court denies . . . Class Representatives' Case Contribution Awards . . . ."). Further, the award sought for the named Plaintiffs did not impair the class's interests in this case. Plaintiffs prosecuted this case for over five years to obtain relief for the rest of the class. Class counsel have "extensive experience in ERISA class action litigation involving defined contribution plans." Doc. 78-1, at ¶¶ 46–54. And Counsel have shown their adequacy through "conduct[ing] an extensive pretrial investigation, litigat[ing] this case through an appeal, and attend[ing] a mediation session and court conferences." Doc. 70 (citing Doc. 78-1, at ¶¶ 46–54). The Court finds that Plaintiffs, through their counsel, have adequately protected the interests of the Settlement Class. Thus, the Court finds that all Rule 23(a) factors have been satisfied.

### ii. Rule 23(b) Conditions Are Met.

In this case, Plaintiffs assert that Rule 23(b)(1) has also been satisfied. Doc. 78, PageID 1343–44. That Rule is satisfied if:

> (1) prosecuting separate actions by or against individual class members would create a risk of:
>
>> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or
>>
>> (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

Fed. R. Civ. P. 23(b)(1)(A)–(B). Plaintiffs argue that the class can be certified under both Rule 23(b)(1)(A) and (B).

First, Plaintiffs argue that the class may be approved under Rule 23(b)(1)(A) because "[t]he fiduciary duties imposed by ERISA are 'duties with respect to a plan' that are intended to protect the 'interest of the participants and beneficiaries' collectively." Doc. 70, PageID 1097 (quoting *Karpik*, 2021 WL 757123, at *12). Thus, separate lawsuits by various Plan participants "would create incompatible standards of conduct for Defendants," such as by requiring "differing prudent alternatives" for each case against which to "measure the proprietary investments," by Defendants, "or an order that Defendants be removed as fiduciaries" for each participant. *Id.* Accordingly, these risks meet Rule 23(b)(1)(A). *Id.*

Second, Plaintiffs argue that the Class may also be certified under Rule 23(b)(1)(B) "because an adjudication on behalf of one participant of the Plan would effectively be dispositive of the claims of the other class members." Doc. 70, PageID 1097. The Advisory Committee Notes to Rule 23 expressly recognize that class certification is appropriate under Rule 23(b)(1)(B) in "an action which charges a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class of security holders or other beneficiaries, and which requires an accounting or like measures to restore the subject of the trust." Fed. R. Civ. P. 23, Advisory Committee Note (1966). This Court concludes as others have when faced with similar facts that "[t]his case falls squarely within the meaning articulated by the Advisory Committee as Plaintiffs allege breaches of fiduciary duties affecting the Plan[] and the thousands of participants in the Plan[]." *Karpik*, 2021 WL 757123 at *12.

As such, the requirements of both Rule 23(b)(1)(A) and (B) have both been met. Coupled with the earlier finding that the requirements of Rule 23(a) have been satisfied, the

Court hereby **CERTIFIES** the Settlement Class—as defined in the Settlement Agreement (Doc.78-2, PageID 1371)—and **APPOINTS** Capozzi Adler, P.C., as class counsel.

### B.  The Settlement Class Received Adequate Notice.

The Sixth Circuit instructs that "due process requires that notice to the class be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Vassalle v. Midland Funding LLC*, 708 F.3d 747, 759 (6th Cir. 2013). Further, "[a]ll that the notice must do is fairly apprise the prospective members of the class of the terms of the proposed settlement so that class members may come to their own conclusions about whether the settlement serves their interests." *Id.* (internal quotation marks and citations omitted).

As stated, the Court approved the notice submitted by Plaintiffs on April 19, 2024. Doc. 74. The notice describes the nature of the class action, the proposed settlement terms, the proposed plan of allocation, and the requested attorney's fees and expenses in detail. Doc. 70-2, PageID 1153–60. The notice is written to be understood by non-attorneys. *See id.* The Court approved the proposed methods of disseminating the notice. Doc. 74. As of the fairness hearing, the settlement administrator had mailed notices to over 116,089 class members, emailed 107,237 notices to class members, and posted the notice to the settlement website. Doc. 86, PageID 1615. Only four individuals, meaning less than 0.003% of Class members, objected to the settlement—three filing timely and one filing an untimely objection.[2] *Id.*; *see*

---

[2] "The small number of objections received can be viewed as indicative of the adequacy of the settlement." *In re Se. Milk Antitrust Litig.*, No. 2:07-CV-208, 2012 WL 2236692, at *4 (E.D. Tenn. June 15, 2012) (citing *In re Cardizem*, 218 F.R.D. at 527); *Rikos v. Proctor & Gamble Co.*, No. 1:11-CV-226, 2018 WL 2009681, at *9 (S.D. Ohio Apr. 30, 2018) ("[O]nly a handful of objections demonstrates that Class Members recognize the substantial benefit of the Settlement."); *N.Y. State Teachers' Ret. Sys. v. Gen. Motors Co.*, 315 F.R.D. 226, 238 (E.D. Mich. 2016) (similar).

*also* Docs. 81–83. Among those, only 3,537 of the class notices mailed, or about 3%, were designated as undeliverable. Doc. 86, PageID 1605.

On this record, the Court readily finds that the notice fairly apprised the class members of the terms of the proposed settlement, and all due process requirements have been met.

### C.   The Proposed Settlement Is Fair.

The Court now turns to the proposed settlement. Unlike most settlements, class action settlements require court approval under Federal Rule of Civil Procedure 23(e). Before a district court approves a settlement, it must find that the settlement is "fair, reasonable, and adequate." *Vassalle*, 708 F.3d at 754 (quoting *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)). In making this assessment, district courts in our circuit look to the seven *UAW* factors for determining whether a class action settlement meets that standard:

> (1) the risk of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest. *Id.* (citing *UAW*, 497 F.3d at 631).

*Id.* (quoting *UAW*, 497 F.3d at 631). In reviewing a proposed class action settlement, the district court has "wide discretion in assessing the weight and applicability" of the relevant factors. *Id.*

As described more fully below, after analyzing the *UAW* factors, the Court finds that the class action settlement is "fair, reasonable, and adequate" under Rule 23(e)(2).

### i.   The Risk of Fraud or Collusion.

In the Sixth Circuit, settlements are presumed fair unless evidence proves otherwise. "Settlements resulting from arm's length negotiations conducted by competent counsel are *prima facie* fair." *Shy v. Navistar, Int. Corp.*, No. 3:92-CV-00333, 2022 WL 2125574, at *6 (S.D.

Ohio June 13, 2022); *see also Carr v. Guardian Healthcare Holdings*, Inc., 2022 WL 501206, at *5 (S.D. Ohio Jan. 19, 2022) ("Courts presume the absence of fraud or collusion unless there is evidence to the contrary."); *Karpik*, 2021 WL 757123 at * 4 (similar).

Plaintiffs argue that the proposed Settlement Agreement was only achieved after contentious motion practice, including an appeal, multiple rounds of settlement demands, and arms-length negotiations under the auspices of a neutral mediator. Doc. 78, PageID 1333. Counsel for the respective parties each have extensive experience with complex litigation, including litigating ERISA class actions. *Id.* at PageID 1337. And there is no evidence of fraud or collusion. As such, the Court is left to presume that the settlement reached is not the result of fraud or collusion with no other evidence to the contrary. This factor weighs in favor of approval.

### ii. The Complexity, Expense, and Likely Duration of Continued Litigation.

Courts within this Circuit and around the country have recognized that "[t]he complexity inherent in class actions is amplified in ERISA class actions." *Karpik*, 2021 WL 757123, at *4; *see also Dover v. Yanfeng US Automotive Int. Sys. I LLC*, 2023 WL 2309762, at *5 (E.D. Mich. Mar. 1, 2023) ("ERISA class actions are complex, and the record shows that counsel fought ably to vindicate their clients' interests in the face of rapidly evolving law regarding fiduciary duties under ERISA."); *Pledger v. Reliance Trust Co.*, 2021 WL 2253497, at *7 (N.D. Ga. Mar. 8, 2021) ("ERISA litigation of this type is a rapidly evolving, complex, and demanding area of the law."). "Settlement avoids the costs, delays, and multitude of other problems associated with" complex class action lawsuits. *Clark v. Miller Valentine Partners LTD II*, No. 1:20-cv-295, 2023 WL 5087233, at *5 (S.D. Ohio Aug. 8, 2023).

14

From very beginning of litigation, more than five years ago, the case has been extensive, complex, and filled with many twists and turns. It has included appeals to the Sixth Circuit and an unsuccessful petition for certiorari in the Supreme Court of the United States. If continued, the Court would need to resolve the pending Motion to Dismiss (Doc. 47), which would likely be followed by the parties taking more depositions, retaining experts, and filing more pre-trial pleadings. Given the attorney's fees up to this point (calculated by the Plaintiffs' counsel using the lodestar method—totaling over $541,737), this factor weighs strongly in favor of approval.

### iii. The Amount of Discovery the Parties Undertook.

In determining whether a class action settlement is "fair, reasonable, and adequate" under Rule 23(e)(2), the third prong under *UAW* concerns whether the parties have engaged in sufficient discovery. "The relevant inquiry with respect to this factor is whether the plaintiff has obtained a sufficient understanding of the case to gauge the strengths and weaknesses of the claims and the adequacy of the settlement." *Dover Glen Condo. Ass'n v. Oakland Cnty.*, 2022 WL 17337815, at *3 (E.D. Mich. Nov. 30, 2022) (citing *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1015 (S.D. Ohio 2001). "[C]ourts do not require formal discovery so long as the parties have adequate information in order to evaluate the relative positions." *Id.*

Here, formal discovery did not officially begin before settlement. But it is apparent from the record before the Court that Plaintiffs "gathered ample information from Defendants before filing the Complaint and during settlement negotiations, and Class Counsel consulted with in house experts throughout the process." Doc. 78, PageID 1334. This informal discovery also included "investigating public filed Plan documents," and "reviewing the plan information of the named Plaintiffs." Doc. 70, PageID 1091. Before filing suit, Plaintiffs also

requested documents from Defendants pursuant to Section 104(b)(4) of ERISA, which Defendants responded to by providing documents on May 23, 2020. *Id.* Moreover, Plaintiffs' counsel has spent over 800 hours developing this case. Doc. 78-1, PageID 1354–55. Taken together, these facts all support the conclusion that enough has been done to satisfy this prong of the *UAW* test. *See Kruger v. Novant Health, Inc.*, No. 1:14CV208, 2016 WL 6769066, at *3 (M.D.N.C. Sept. 29, 2016) (finding that class counsel engaged in adequate discovery where before filing suit, they spent "hundreds of hours of attorney time investigating and developing" the case).

### iv.   The Likelihood of Success on the Merits.

Finally, the Sixth Circuit has held that "[o]f the *UAW* factors, '[t]he most important of the factors to be considered in reviewing a settlement is the probability of success on the merits.'" *Doe v. Déjà Vu Consulting, Inc.*, 925 F.3d 886, 895 (6th Cir. 2019) (quoting *Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235, 245 (6th Cir. 2011)). However, when considering this factor "[t]he court 'is not to decide whether one side is right or even whether one side has a better of these arguments. . . . The question rather is whether the parties are using settlement to resolve a legitimate legal and factual dispute.'" *Garner Prop. & Mgmt v. City of Inkster*, No. 17-CV-13960, 2020 WL 4726938, at *9 (E.D. Mich. Aug. 14, 2020) (quoting *UAW*, 497 F.3d at 632).

From the extensive record presented, the Court observes that both sides believe sincerely in their respective positions and their chances of prevailing on the merits. At the same time, however, both parties have acknowledged that excessive recordkeeping fee cases under ERISA, similar to this, have inherent risks that support settlement as a mechanism to resolve a legitimate legal and factual dispute. *In re Delphi Corp. Sec., Derivative & ERISA Litig.*,

248 F.R.D. 483, 496–97 (E.D. Mich. 2008) (although "risk is inherent in any litigation, particularly class actions[,] [t]he risk is even more acute in the complex areas of ERISA law."); *Karpik*, 2021 WL 757123, at \*5 ("Even if Plaintiffs established a fiduciary breach, it is 'difficult' to measure damages in cases alleging imprudent or otherwise improper investments.") (quoting Restatement (Third) of Trusts § 100 cmt. (b)(1)). This is especially true here, where "Defendants vigorously denied all Plaintiffs' claims and vigorously refuted Plaintiffs' damages scenarios during mediation." Doc. 78, PageID 1336. Further, the legitimacy of the suit is bolstered by Defendants' arguments, which have the potential to reduce Plaintiffs' damages considerably or all even all together. *Id.* Thus, the parties have come to agreement on the proposed Settlement Amount of $4,000,000.00 and submit jointly that that amount:

> [I]s an appropriate discount to avoid the costs of continued litigation and potential risk for Plaintiffs to receive less or no damages after a trial. It amounts to roughly 30% to 34% (using Plaintiffs' calculations) or more than 100% (if Defendants were successful) of Plaintiffs estimated $11.6 million to $13.3 million of potential best-case damages.

*Id.* at 1336.

But the Court's analysis does not stop there. The Court also "must specifically examine what the unnamed class members would give up in the proposed settlement, and then explain why—given their likelihood of success on the merits—the trade-off embodied in the settlement is fair to unnamed members of the class." *Déjà Vu*, 925 F.3d at 896.

Here, the maximum potential damages that Plaintiffs aspire for is between $11.6 and $13.3 million (sans prejudgment interest). Doc. 78, PageID 1328. This amounts to the *potential* distribution of between $23 and $28, per class member plaintiff, if Plaintiffs are fully successful in securing the maximum amount of damages. *Id.* On the other hand, the settlement as proposed by the parties *ensures* a total damages amount of $4.0 million (or 30% to 34% of the

17

total potential award), with each class member being awarded *at least* $10 (members may be entitled to more based on their *pro rata* share of losses). *Id.* at PageID 1336, 1441. The amount of the proposed Settlement Agreement becomes even more palatable and meaningful, given Plaintiffs' concession at the fairness hearing that Count II (the investment options claim) may be less viable in the wake of recent Sixth Circuit precedent. *See, e.g., Smith v. CommonSpirit Health*, 37 F.4th 1160 (6th Cir. 2022); *Forman v. TriHealth, Inc.*, 40 F.4th 443 (6th Cir. 2022). In proposing the Settlement Agreement, both parties have weighed the strengths and weaknesses of their own cases and their opponents and found compromise to be the better, more reasoned path. The Court finds that the benefits of settlement outweigh the risks associated with further litigation and the uncertainty that unnamed class plaintiffs might obtain, under a best-case scenario, the full value of their claims if the lawsuit continued and came to a successful resolution on the merits.

In sum, extending the litigation beyond the proposed settlement imposes inherent risks for both sides, further complicated by the parties having to incur more litigation costs associated with motion practice and the development of fact and expert witness testimony (including expert testimony on damages which would require complex and difficult to convey mathematical projections). Under the circumstances, the Court finds that the parties appropriately have proposed a settlement to resolve their legitimate legal and factual disputes. *See, e.g., Diaz v. BTG Int'l Inc.*, No. 19-cv-1664, 2021 WL 2414580, at *6 (E.D. Penn. June 14, 2021) (finding that due to the risk of adverse verdict and low damage award after substantial investment of time and money supports settlement). Based on the likelihood of success on the merits, the Court finds a settlement of 30% to 34% of Plaintiffs' own calculations is fair and adequate.

18

v.        Opinions of Class Counsel and the Class Representatives.

Another important prong a court evaluating the fairness of a proposed settlement must consider concerns the opinions expressed by the class representatives and their attorneys. "The Sixth Circuit has observed that when experienced counsel immersed in the legal and factual issues comprising a class action recommend approval of their class settlement, their recommendations are entitled to deference." *Shy*, 2022 WL 2125574, at *7 (quoting *Williams v. Vukovich*, 720 F.2d 909, 922 (6th Cir. 1983)). Likewise, courts in the Sixth Circuit also tend to defer to the recommendations made by class representatives who support the settlement. *Gascho v. Global Fitness Holdings*, LLC, No. 2:11-cv-436, 2014 WL 1350509, at *18 (S.D. Ohio Apr. 4, 2014) ("Not insignificantly, the Class Representatives have also approved the Settlement Agreement.").

Both Plaintiffs' counsel and Defendants' counsel are experienced ERISA attorneys and represent that they have been involved in numerous actions like this one. Doc. 78, PageID 338. At the fairness hearing, they also indicated that they are opponents in another significant class action where the stakes may be even higher. Importantly, both sets of attorneys have recommended settlement in this case and in briefing and at the fairness hearing strongly urged the Court to approve it. *Id.* The Class Representatives who have dedicated time and energy to this matter also find that the Settlement Agreement is fair, reasonable, and adequate. *See* Docs 78-9–78-20 (all supporting the Settlement Agreement). This weighs in favor of approval. *See, e.g., Karpik*, 2021 WL 757123, at *6 ("Moreover, the Class Representatives previously submitted declarations in support of the Settlement. . . . Their support also favors approval."); *Ganci v. MBF Inspection Servs.*, No. 2:15-cv-2959, 2019 WL 6485159, at * 5 (S.D. Ohio

19

December 3, 2019) ("Class Plaintiff also approves of the settlement, as indicated by his executing the settlement agreement.").

### vi. The Reaction of Absent Class Members.

The Court also needs to take into consideration the views expressed by absent class members who are not named plaintiffs in the class action. In this context, courts have stated that "[a] certain number of opt-outs and objections are to be expected in a class action. If only a small number are received, that fact can be viewed as indicative of the adequacy of the settlement.'" *Garner*, 2020 WL 4726938, at *10 (quoting *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 527 (E.D. Mich. 2003)). In this case, only 3 potential class members out of 116,089 have objected to the Settlement Agreement. Docs. 81–83.[3]

The fact that only three valid objections were filed weighs in favor of approving the Settlement Agreement. *See Olden*, 294 F. App'x at 217 (6th Cir. 2008) (finding this factor weighs in favor of settlement where there were only 79 objectors out of an 11,000-member class). Even after considering the substance of those objections, the Court finds that all factors still weigh in favor of approval of the Settlement Agreement. The objectors make three central arguments regarding the Settlement Agreement none of which are meritorious. *See* Docs. 81–83.

One objector argues in conclusory fashion that the Settlement Agreement is insufficient. Doc. 81. The objector makes no specific argument concerning *why* the Agreement is insufficient. *Id.* As this Court earlier found, settlement is warranted here because continuing litigation imposes inherent risks for both sides. *See supra*, Section (II)(C)(iv). Moreover, this

---

[3] The Court notes that Plaintiffs' counsel indicated at the fairness hearing that there was a fourth objector that filed their objection with the parties. However, their objection was sent five days late, thus is deemed waived under the preliminary approval order. Doc. 74, PageID 1267–68.

objector has stated nothing to undercut the Court's finding that a settlement of 30% to 34% of Plaintiffs' own high-end calculations is fair and adequate.

A second objector contends that Plaintiffs did not engage in enough discovery before settlement. Doc. 83, PageID 1585–87. That objector declares that the third *UAW* factor (i.e., the amount of discovery engaged in by the parties) cannot be met. The objector contends that the discovery is insufficient because "Plaintiffs have not ascertained information or data as to identify the damages to the class, nor can they verify that the estimated damages [of $11.6 million to $13.3 million] are accurate at this stage of litigation." *Id.* at PageID 1587. However, as earlier discussed, Plaintiffs have clearly shown that they have engaged in enough discovery to understand the strengths and weaknesses of their position, considering their attorneys have expended over 800 hours developing this case. *See supra*, Section (II)(C)(iii). Before filing the Complaint, Plaintiffs engaged in informal discovery and consulted experts concerning damages. Doc. 78, PageID 1327–28. The parties then reached settlement after reviewing all relevant information, including the evaluation of numerous damages scenarios. *Id.* at PageID 1328. Accordingly, the Court finds that the objection related to discovery is unfounded.

Last, two objectors argue that the attorney fees are too high. *See* Docs. 82, 83, 89. However, the Settlement Agreement makes clear that approval of attorney fees and other awards are mutually exclusive from approval of the settlement. *See* Doc. 78-2 ("It shall not be to request for Attorneys' Fees and Costs and/or Class Representatives' Case Contribution Awards . . . ."); Docs. 79–80.[4] This objection therefore bears no weight on the settlement and the Court's responsibility for approving or disapproving the Settlement Agreement.

---

[4] Plaintiffs' Motion for an Award of Attorneys' Fees and Reimbursement of Expense and Named Plaintiffs Case Contribution Awards (*see* Docs. 79, 80) will be addressed via a separate order.

For the reasons expressed, the Court **OVERRULES** the objections (Docs. 81–83) and finds that the reaction of absent class members—or their silence tantamount to acceptance—favors approval of the Settlement Agreement. *See IUE-CWA v. GMC*, 238 F.R.D. 583, 600 (E.D. Mich. 2006) ("In the class action context, silence may be construed as assent.") (citation omitted).

### vii.    The Public Interest.

The public interest is furthered by an efficient resolution of a class-wide controversy and the conservation of judicial resources. In a similar case, this Court has found that this factor was satisfied when "the Agreement provides class members immediate relief, avoids further litigation, and frees the Court's judicial resources." *Borders v. Alternate Sol. Health Network, LLC*, No. 2:20-CV-1273, 2021 WL 4868512, at *4 (S.D. Ohio May 17, 2021); *see also Myers v. Meml. Health System Marietta Meml. Hosp.*, No. 15-CV-2956, 2022 WL 4079559, at *5 (S.D. Ohio Sept. 6, 2022); *Owner-Operator Indep. Drivers Assn., Inc. v. Arctic Express, Inc.*, No. 97-CV-750, 2016 WL 5122565, at *6 (S.D. Ohio Sept. 21, 2016). And, in general, "[p]ublic policy favors settlement of class action lawsuits." *Mullins v. Data Mgmt. Co.*, No. 1:20-cv-214, 2021 WL 2820560, at *6 (S.D. Ohio June 21, 2021); *see also, Ganci*, 2019 WL 6485159, at *5 ("[S]ettlement confers immediate benefits on the Settlement Class, avoids the risks and expense in further litigation, and conserves judicial resources."). Importantly, it has been determined that an "ERISA Settlement [in particular] confers broader public benefits, as the protection of retirement funds is a great public interest." *Karpik*, 2021 WL 757123 at *6 (quotations omitted); *see also In re Broadwing, Inc. ERISA Litig.*, 252 F.R.D. 369, 381 (S.D. Ohio 2006) ("Protecting retirement funds of workers is of genuine public interest.").

22

At bottom, this class action involves complex facts and an application of sophisticated, evolving ERISA laws where the probability of success on the merits in the litigation for either side is, at best, uncertain. Without a settlement, the case would remain in the judicial system indefinitely at the risk of class members obtaining little or no relief. The public benefit of settling this case is evident—class members will receive immediate relief, avoid further litigation, and the Court's judicial resources will be preserved—all factors weighing heavily in favor of finding the settlement arrived at by the parties fair, reasonable, and adequate. After considering each of the *UAW* factors and based on the totality of circumstances, the Court approves the Settlement Agreement under Rule 23(e)(2).

## III.   CONCLUSION

For the above reasons, the Court **CERTIFIES** the nationwide class—as defined in the Settlement Agreement (Doc.78-2, PageID 1371)—and **APPOINTS** the attorneys listed as class counsel. The Court also **GRANTS** Plaintiffs' Motion for Final Approval of Class Action Settlement, Certification of Settlement Class, and Approval of Plan of Allocation (Doc. 77) and **ACCEPTS** the proposed settlement as currently structured. And because the Court accepts the settlement, the Court also **DENIES** Defendants' Motion to Dismiss (Doc. 47) as **MOOT**.

Plaintiffs' Motion for an Award of Attorneys' Fees and Reimbursement of Expense and Named Plaintiffs Case Contribution Awards (Doc. 79) remains under advisement.

**SO ORDERED**

August 27, 2024

Jeffery P. Hopkins
United States District Judge

23